## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AU NEW HAVEN, LLC, and : Civil Action No.
TRELLEBORG COATED SYSTEMS US, INC., : 15-CV-03411-GHW
:
Plaintiffs, :
:
: **AMENDED COMPLAINT**
v. :
:
YKK CORPORATION, :
YKK HONG KONG LTD., :
YKK FASTENING PRODUCTS SALES INC., :
SHANGHAI YKK ZIPPER CO., LTD., :
SHANGHAI YKK TRADING CO., LTD., :
YKK CANADA INC., :
YKK TAIWAN CO., LTD., :
P.T. YKK ZIPPER INDONESIA, :
YKK BANGLADESH PTE. LTD., :
YKK KOREA CO., LTD., :
YKK FRANCE SARL, :
DALIAN YKK ZIPPER CO., LTD., :
YKK VIETNAM CO., LTD., :
YKK DEUTSCHLAND GMBH, :
YKK (THAILAND) CO., LTD., :
YKK (U.K.) LTD., :
YKK ZIPPER (SHENZHEN) CO., LTD., :
YKK AUSTRIA GMBH, :
YKK ITALIA S.P.A., :
OOO YKK a/k/a YKK RUSSIA, :
YKK METAL VE PLASTIK URUNLERI :
 SANAYI VE TICARET A.S., and :
YKK (U.S.A.) INC., :
:
Defendants. : February 22, 2016
------------------------------------------------------------

Plaintiffs AU NEW HAVEN, LLC formerly known as Uretek LLC ("Uretek") and

TRELLEBORG COATED SYSTEMS US, INC. ("Trelleborg") (collectively, "Plaintiffs"), for

their complaint against Defendant YKK CORPORATION ("YKK"), YKK HONG KONG LTD.

("YKK-Hong Kong"), YKK FASTENING PRODUCTS SALES INC. ("YKK-Japan"),

SHANGHAI YKK ZIPPER CO., LTD. ("YKK-Shanghai Zipper"), SHANGHAI YKK

TRADING CO., LTD. ("YKK-Shanghai Trading"), YKK CANADA INC. ("YKK-Canada"), YKK TAIWAN CO., LTD. ("YKK-Taiwan"), P.T. YKK ZIPPER INDONESIA ("YKK-Indonesia"), YKK BANGLADESH PTE. LTD. ("YKK-Bangladesh"), YKK KOREA CO., LTD. ("YKK-Korea"), YKK FRANCE SARL ("YKK-France"), DALIAN YKK ZIPPER CO., LTD. ("YKK-Dalian"), YKK VIETNAM CO., LTD. ("YKK-Vietnam"), YKK DEUTSCHLAND GMBH ("YKK-Germany"), YKK (THAILAND) CO., LTD. ("YKK-Thailand"), YKK (U.K.) LTD. ("YKK-UK"), YKK ZIPPER (SHENZHEN) CO., LTD. ("YKK-Shenzhen"), YKK AUSTRIA GMBH ("YKK-Austria"), YKK ITALIA S.P.A. ("YKK-Italy"), OOO YKK a/k/a YKK RUSSIA ("YKK-Russia"), YKK METAL VE PLASTIK URUNLERI SANAYI VE TICARET A.S. ("YKK-Turkey"), and YKK (U.S.A.) INC. ("YKK-USA"), (collectively, "Defendants"), through their attorneys, allege as follows:

## NATURE OF THE ACTION AND THE PARTIES

1.      In this action, Plaintiffs seek relief for acts of patent infringement, breach of contract, false and deceptive advertising, and unfair and/or deceptive trade practices.  This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the laws of the States of New York and Connecticut.

2.      Uretek is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business in New Haven, Connecticut.

3.      Trelleborg is a corporation organized and existing under the laws of the State of Delaware and has an address at 715 Railroad Avenue, Rutherfordton, North Carolina.

4.      Upon information and belief, YKK is a corporation organized and existing under the laws of Japan, with its principal place of business located at 1, Kanda Izumi-cho, Chiyoda-ku, Tokyo, Japan and with approximately 175 affiliates operating in approximately 70 countries around the world.  At all pertinent times hereto, YKK and its affiliates (collectively, the "YKK

Group"), including the affiliates named as defendants herein (the "Affiliate Defendants"), were in the business of, *inter alia*, manufacturing and/or selling zippers and other closure related products (such as buttons and snaps), including within the United States.

5.      Upon information and belief, each of the Affiliate Defendants is a wholly-owned subsidiary or other corporate affiliate of YKK and each other.

6.      Upon information and belief, YKK-Hong Kong is a corporation organized and existing under the laws of Hong Kong, with its principal place of business located at 14th Floor, Tower 2, Silvercord, 30 Canton Road, Tsimshatsui, Kowloon, Hong Kong.

7.      Upon information and belief, YKK-Japan is a corporation organized and existing under the laws of Japan, with its principal place of business located at 1-28-2, Taito, Taito-ku, Tokyo, 110-8582, Japan.

8.      Upon information and belief, YKK-Shanghai Zipper is a limited company organized and existing under the laws of China, with its principal place of business located at 23rd Floor, Ka Wah Centre, 1010 Huai Hai Road (M), Shanghai 200031, China.

9.      Upon information and belief, YKK-Shanghai Trading is a limited company organized and existing under the laws of China, with its principal place of business located at 23rd Floor, Ka Wah Centre, 1010 Huai Hai Road (M), Shanghai 200031, China.

10.     Upon information and belief, YKK-Canada is a corporation organized and existing under the laws of Canada, with its principal place of business located at 3939 Thimens Blvd., Ville Saint-Laurent, Quebec H4R 1X3, Canada.

11.     Upon information and belief, YKK-Taiwan is a limited company organized and existing under the laws of Taiwan, with its principal place of business located at 7th Floor, No.40, Sec.2, Min-Chuan E. Road, Taipei 10469, Taiwan.

12.     Upon information and belief, YKK-Indonesia is a limited liability company organized and existing under the laws of Indonesia, with its principal place of business located at Jl. R.P. Soeroso No. 7, Jakarta Pusat 10330, Indonesia.

13.     Upon information and belief, YKK-Bangladesh is a limited company organized and existing under the laws of Bangladesh, with its principal place of business located at House No.23, Road No.28, Block-K, Banani, Dhaka-1213, Bangladesh.

14.     Upon information and belief, YKK-Korea is a limited company organized and existing under the laws of Korea, with its principal place of business located at Danam Bldg., 20th Floor, 10, Sowol-ro, Jung-gu, Seoul, 100-704, Korea.

15.     Upon information and belief, YKK-France is a limited liability company organized and existing under the laws of France, with its principal place of business located at 1 Bis Rue Collange, 92300 Levallois-Perret, France.

16.     Upon information and belief, YKK-Dalian is a limited company organized and existing under the laws of China, with its principal place of business located at 50 Tieshan West Road, Dalian Economic & Technical Development Zone, Dalian, 116600, China.

17.     Upon information and belief, YKK-Vietnam is a limited company organized and existing under the laws of Vietnam, with its principal place of business located at 4th Floor, AB Tower, 76 Le Lai St., Ben Thanh Ward, Dist. 1, Ho Chi Minh City, Vietnam.

18.     Upon information and belief, YKK-Germany is a limited liability company organized and existing under the laws of Germany, with its principal place of business located at Ostring 33, D-63533, Mainhausen, Germany.

19.     Upon information and belief, YKK-Thailand is a limited company organized and existing under the laws of Thailand, with its principal place of business located at 9th Floor,

Manoonpol Bldg. 2, 2884/1 New Petchburi Rd., Bangkapi, Huaykwang, Bangkok 10310, Thailand.

20.     Upon information and belief, YKK-UK is a limited company organized and existing under the laws of the United Kingdom, with its principal place of business located at Whitehouse Industrial Estate, Runcorn, Cheshire WA7 3BW, United Kingdom.

21.     Upon information and belief, YKK-Shenzhen is a limited company organized and existing under the laws of China, with its principal place of business located at Room 1, 34th Floor, China Shine Plaza, No. 3-15, Linhexi Road, Tianhe District, Guangzhou, Guangdong, China.

22.     Upon information and belief, YKK-Austria is a limited liability company organized and existing under the laws of Austria, with its principal place of business located at Industriestr. 2, A-7221, Marz, Austria.

23.     Upon information and belief, YKK-Italy is a joint stock company organized and existing under the laws of Italy, with its principal place of business located at Via Pitagora, 1, 20016 Pero (Milano), Italy.

24.     Upon information and belief, YKK-Russia is a limited company organized and existing under the laws of Russia, with its principal place of business located at 58, Kantemirovskaya str., Moscow 115477, Russia.

25.     Upon information and belief, YKK-Turkey is a joint stock company organized and existing under the laws of Turkey, with a principal place of business located at Maslak Mahallesi Eski, Büyükdere Cad., No: 27 Orjin Maslak Plaza, Kat: 8, 34398 Sariyer/Istanbul, Turkey.

26.     Upon information and belief, YKK-USA is a corporation organized and existing under the laws of New York with its principal place of business located at 1300 Cobb Industrial Drive, Marietta, Georgia.

## JURISDICTION AND VENUE

27.     This civil action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, Section 43 of the Lanham Act, 15 U.S.C. § 1125, the laws of the State of New York, and the laws of the State of Connecticut.   This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332(a), 1338(a) and (b), and/or 1367(a).   The amount in controversy with respect to each Defendant exceeds the sum or value of $75,000, exclusive of interest and costs.

28.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because Defendants are subject to personal jurisdiction in this judicial district and, upon information and belief, have committed, and/or are jointly and severally liable for, acts of infringement and unfair competition in this district.

29.     On August 22, 2000, United States Patent No. 6,105,214 (the "'214 Patent") was duly and lawfully issued to Stuart Press ("Press") for an invention entitled "Water Resistant Slide Fastener and Process for Preparing Same."

30.     On or about August 10, 2001, Press assigned the '214 Patent to himself and Harold E. Hoder ("Hoder").

31.     As more fully set forth below, patents covering the invention claimed in the '214 Patent were issued to Press and Hoder by the Republic of China ("Taiwan"), Hong Kong Special Administrative Region ("Hong Kong"), Canada, the Empire of Japan ("Japan"), and the European Patent Office (collectively, the "Foreign Patents").   The '214 Patent and the Foreign Patents collectively are referred to herein as the "Zipper Patents."

32.     On or about February 13, 2002, Press and Hoder, on the one hand, and the YKK
Group, on the other hand, entered into an Exclusive License Agreement (the "License
Agreement") as more specifically described below.

33.     Pursuant to Paragraph 13 of the License Agreement, Press and Hoder, on the one
hand, and the YKK Group, on the other hand, agreed as follows:  "This Agreement shall be
construed, interpreted and applied in accordance with, and shall be governed by the laws of the
State of New York.  The parties hereto select and submit themselves to the jurisdiction and
competence of the courts within the State of New York for purposes of resolving any dispute,
controversy or claim arising out of or relating to this Agreement, or the breach, termination or
invalidity thereof, waiving any venue privilege to which the parties may be entitled because of
their domiciles or for any other reason."

### THE PATENT-IN-SUIT AND
### CORRESPONDING FOREIGN PATENTS

34.     On August 22, 2000, the '214 Patent was duly and lawfully issued to Press, and
on or about August 10, 2001, Press assigned the '214 Patent to himself and Hoder.

35.     As more fully set forth below, corresponding patents covering the invention
claimed in the '214 Patent were issued to Press and Hoder by Taiwan, Hong Kong, Canada,
Japan, and the European Patent Office.

36.     On May 10, 2005, Patent No. 2,345,310 was duly and lawfully issued in Canada
to Press and Hoder for an invention entitled "Water Resistant Slide Fastener and Process for
Preparing Same" (the "Canadian Patent"). The independent claims of the Canadian Patent are
substantially similar to the independent claims of the '214 Patent.

37.     On April 18, 2007, Patent No. 1150586 was duly and lawfully granted in the
European Patent Office to Press and Hoder for an invention entitled "Water Resistant Slide
Fastener and Process for Preparing Same"  (the "European Patent"). The European Patent was

validated to become national patents of France (the "French Patent"), the United Kingdom (the "U.K. Patent") and Sweden (the "Sweden Patent"), among other countries.  In addition, the European Patent was validated to become a national patent of Germany under number DE 69935870T2 on January 10, 2008 (the "German Patent").  The independent claim of each of the European, French, U.K., Sweden, and German Patents is substantially similar to independent Claim 1 of the '214 Patent.

38.     On September 14, 2007, Patent No. HK1041423 was duly and lawfully validated in Hong Kong to Press and Hoder for an invention entitled "Water Resistant Slide Fastener and Process for Preparing Same" (the "Hong Kong Patent").  At least independent Claim 1 of the Hong Kong Patent is substantially similar to independent Claim 1 of the '214 Patent.

39.     On March 8, 2013, Patent No. 5213523 was duly and lawfully issued in Japan to Press and Hoder for an invention entitled "Water Resistant Slide Fastener and Process for Preparing Same" (the "Japan Patent").  At least independent Claim 1 of the Japan Patent is substantially similar to independent Claim 1 of the '214 Patent.

40.     On September 21, 2005, Patent No. I239820 was duly and lawfully issued in Taiwan to Press and Hoder for an invention entitled "Water Resistant Slide Fastener and Process for Preparing Same" (the "Taiwan Patent").  The independent claims of the Taiwan Patent are substantially similar to independent claims of the '214 Patent.

41.     Hoder died on or about January 2, 2006, with Hoder's interests in the '214 Patent, the Foreign Patents and the License Agreement thereby becoming assets of the Estate of Harold E. Hoder (the "Hoder Estate").

42.     In or about June 2006, the Hoder Estate and Press assigned the '214 Patent and the Foreign Patents and any corresponding pending applications to Uretek.

43.     In or about October 2014, Uretek assigned the '214 Patent and the Foreign Patents to Trelleborg.

## ADDITIONAL FACTS COMMON TO ALL CLAIMS FOR RELIEF

44.     At all times pertinent hereto, Uretek and/or Trelleborg were engaged in the business of, *inter alia*, manufacturing coated zippers, including manufacturing coated zippers according to the '214 Patent and the Foreign Patents.

45.     The Zipper Patents relate to a water resistant slide fastener (*i.e.*, a water resistant zipper), and the Zipper Patents remain in full force and effect.    As described more fully in the '214 Patent, the subject water resistant slide fastener is comprised of a pair of stringer tapes each having first and second opposed surfaces and each having a series of gripper elements positioned along edges of said first surface.  The second surface is coated with a water resistant layer, such as polyurethane.  The stringer tapes are arranged substantially parallel such that the edges of the stringer tapes with the zipper coil teeth are adjacent to each other, and the stringer tapes overlie the zipper coil teeth attached to the opposing edges of the stringer tapes when the zipper coil teeth are engaged with each other.  The invention described in the '214 Patent functions as a highly effective mechanism to repel water from a zipper and underneath a zipper without cumbersome flaps or non-malleable materials that hamper the appearance or function of the finished goods into which a zipper is placed.

46.     On or about February 13, 2002, Press and Hoder, on the one hand, and the YKK Group, on the other hand, entered into the License Agreement whereby said parties agreed, in pertinent part, to the following: (i) Press and Hoder granted the YKK Group "an exclusive, worldwide right to manufacture, use, sell, offer for sale and otherwise use and practice the invention contained in [the Zipper Patents], except for zippers placed in finished goods in the high end outerwear, marine, military and luggage (excluding sports and cosmetic bags) markets

(collectively hereafter 'Zippers');" (ii) "The [YKK Group] shall pay [Press and Hoder] a royalty of US$.03 per meter for Zippers sold by the [YKK Group];" (iii) "The term of this Agreement is from [February 13, 2002] through and until expiration of the last of The [Zipper] Patents to expire;" (iv) "Neither party hereto shall assign, subcontract, sublicense or otherwise transfer this Agreement or any interest hereunder, or assign or delegate any of its rights or obligations hereunder, without the prior written consent of the other party[, and any] such attempted assignment, subcontract, sublicense or transfer thereof shall be void and have no force or effect;" and (v) "The Agreement may not be modified or amended in any respect except in writing signed by both parties."

47.    YKK negotiated and executed the License Agreement on behalf of the entire YKK Group, expressly confirming in the License Agreement, "The parties affirm that they are acting on behalf of, and that this Agreement shall bind and benefit the parties and their respective successors, assigns, parents, subsidiaries and affiliates throughout the world."  Moreover, the YKK Group's annual reports indicate that a central "Board of Directors" exerts global control over the operations of the entire YKK Group (including the Affiliate Defendants) through a consolidated management structure.

48.    The YKK Group entered the License Agreement in the course of conducting its trade or business, thereby beginning a long-standing licensee-licensor relationship with Plaintiffs and their predecessors-in-interest.

49.    Effective no later than February 5, 2007, Press and the Hoder Estate assigned their interests in the License Agreement to Uretek.

50.    In or about February 2007, YKK, *inter alia*, began paying (and has continued through the date hereof to pay) royalties under the License Agreement directly to Uretek.  By a

separate document executed by YKK no later than April 2013, YKK also consented, effective July 1, 2006, to the assignment of the License Agreement to Uretek.

51.     Neither Plaintiffs nor their predecessors-in-interest have licensed any rights in the invention claimed in the Zipper Patents to any party other than the YKK Group, and, therefore, Plaintiffs retain all of such rights excluded from the License Agreement.  At all relevant times, Plaintiffs have been the sole parties authorized to manufacture the subject zippers to be placed in finished goods in one or more of the "high end outerwear, marine, military and luggage (excluding sports and cosmetic bags) markets" as such terms are used in the License Agreement (collectively, the "Excluded Markets").

52.     At all relevant times during the term of the License Agreement, Plaintiffs' operations relative to the License Agreement have been based in New Haven, Connecticut, and the YKK Group's dealings with Plaintiffs have been intimately associated with the State of Connecticut.

53.     To the extent the YKK Group manufactures (or outsources the manufacture of) zippers containing the invention claimed in the Zipper Patents, including for unauthorized sale in the Excluded Markets, the YKK Group engages in the same business as, and is in competition with, Plaintiffs.

54.     Upon information and belief, the YKK Group, without authority and sometime after February 2002 through the present, has imported, made, used, offered for sale, and sold within or into the United States the invention contained in the '214 Patent with respect to zippers placed in finished goods in one or more of the Excluded Markets.

55.     Upon information and belief, the YKK Group, without authority and sometime after February 2002 to the present, has imported, made, used, offered for sale, and sold, within or

into one or more countries in which the Foreign Patents claiming the invention were in force, zippers placed in finished goods in one or more of the Excluded Markets.

56.     Upon information and belief, and by way of example only, Defendants willfully and deliberately have infringed, and/or induced infringement of, one or more of the Foreign Patents by the following conduct:

a.     Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the Japan Patent and/or the published application for the Japan Patent, YKK directly and/or through YKK-Japan manufactured zippers within the scope of the claims of the Japan Patent.  In Japan, YKK and YKK-Japan are liable for infringement after the date of publication of the Japan Patent application even though the Japan Patent was not granted until a later date.  YKK and/or YKK-Japan sold the zippers to brand companies located in Japan and elsewhere for use in making "high end outerwear" and/or to contractors within or outside Japan known to be making "high end outerwear" for sale to the Japanese brand companies and brand companies located elsewhere as that term is used in the License Agreement.  YKK and/or YKK-Japan also caused the Japanese brand companies to import, make, sell, and/or use the infringing zippers, and without YKK's and/or YKK-Japan's influence, such infringement would not have taken place.  YKK and/or YKK-Japan knew that their influence on the brand companies would result in the infringing actions by the directly infringing brand companies.  The above acts constitute a violation of Article 101 of the Japan Patent Act.

b.     Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the Canadian Patent, YKK directly and/or through YKK-Hong Kong, YKK-Japan and/or YKK-Taiwan manufactured zippers within the scope of the claims of the Canadian Patent.  YKK and/or YKK-Shanghai Zipper and/or YKK-Shanghai Trading sold the zippers to YKK-Canada which resold the zippers to brand companies located in Canada for use

in making "high end outerwear" and/or "luggage" or to contractors outside Canada known to be making "high end outerwear" and/or "luggage" for sale to the Canadian brand companies as those terms are used in the License Agreement.  YKK, YKK-Shanghai Zipper and/or YKK-Shanghai Trading also made such sales directly to said brand companies or contractors.  YKK, YKK-Canada, YKK-Shanghai Zipper, and/or YKK-Shanghai Trading caused the Canadian brand companies to make, use and sell the infringing zippers, and without YKK's, YKK-Canada's, YKK-Shanghai Zipper's, and/or YKK-Shanghai Trading's influence, such infringement would not otherwise have taken place.  YKK, YKK-Canada, YKK-Shanghai Zipper, and/or YKK-Shanghai Trading knew that their influence on the brand companies would result in the infringing actions by the directly infringing brand companies.  The above acts constitute a violation of Section 42 of the Canadian Patents Act.

c.      Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the Hong Kong Patent, YKK directly and/or through YKK-Hong Kong made and sold zippers within the scope of the claims of the Hong Kong Patent to customers in Hong Kong and elsewhere (including the United States) for use in making "high end outerwear" and/or "luggage" and/or to contractors known to be making "high end outerwear" and/or "luggage" for sale to brand companies in Hong Kong and brand companies located elsewhere as those terms are used in the License Agreement.  The above acts constitute a violation of Cap 514 of the Hong Kong Patents Ordinance.

d.      Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the Taiwan Patent and without the written consent by Uretek required by the License Agreement, YKK and/or its affiliates (including YKK-Taiwan) sublicensed or subcontracted with WCT to manufacture coated zippers in Taiwan which came within the scope of the claims of the Taiwan Patent and to sell the zippers directly and/or indirectly to YKK-

Taiwan, other YKK affiliates and/or to customers (brand companies and/or contractors known to be making finished goods for brand companies) in Taiwan and elsewhere (including the United States).   As an example, and not as a limitation, YKK, YKK-Taiwan and/or WCT, directly or indirectly sold such infringing zippers for use by various United States companies.   The above acts constitute a violation of Articles 58 and 59 of the Taiwan Patent Act.

    e. Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the French Patent, YKK directly and/or through YKK-Hong Kong and/or YKK-Taiwan has manufactured zippers within the scope of the French Patent.   YKK, YKK-Indonesia, YKK-Bangladesh, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Korea sold the zippers to YKK-France, which offered to supply and resell the zippers to brand companies located in France for use in making "high end outerwear" and "luggage" or to contactors outside France known to be making "high end outerwear" and "luggage" for sale to brand companies located in France as those terms are used in the License Agreement.   YKK, YKK-Indonesia, YKK-Bangladesh, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Korea also made such sales directly to said brand companies or contractors.   YKK, YKK-France, YKK-Indonesia, YKK-Bangladesh, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Korea caused the French brand companies to import, make, sell, and use the infringing zippers, and without YKK's, YKK-France's YKK-Indonesia's, YKK-Bangladesh's, YKK-Hong Kong's, YKK-Shanghai Zipper's, and/or YKK-Korea's influence, such infringement would not have taken place.   YKK, YKK-France, YKK-Indonesia, YKK-Bangladesh, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Korea knew or it was obvious from the circumstances and should have known that their influence on the brand companies would result in the infringing actions by the directly infringing brand companies.   The above actions constitute a violation of Articles L613-3 and L613-4 of the French Intellectual Property Code.

14

f.      Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the German Patent, YKK directly and/or through YKK-Hong Kong manufactured zippers within the scope of the claims of the German Patent.  YKK, YKK-Hong Kong, YKK-Dalian, YKK-Korea, YKK-Vietnam, and/or YKK-Bangladesh sold the zippers to YKK-Germany, which offered to supply and sell the zippers to brand companies located in Germany for use in making "high end outerwear", and/or to contractors outside Germany known to be making "high end outerwear" for sale to brand companies located in Germany as that term is used in the License Agreement.  YKK, YKK-Hong Kong, YKK-Dalian, YKK-Korea, YKK-Vietnam, and/or YKK-Bangladesh also made such sales directly to said brand companies or contractors.   YKK,  YKK-Germany,  YKK-Hong  Kong,  YKK-Dalian,  YKK-Korea,  YKK-Vietnam, and/or YKK-Bangladesh caused the German based companies to import, make, sell, and use the infringing zippers, and without YKK's, YKK-Germany's, YKK-Hong Kong's, YKK-Dalian's, YKK-Korea's, YKK-Vietnam's, and/or YKK-Bangladesh's influence, such infringement would not have taken place.  YKK, YKK-Germany, YKK-Hong Kong, YKK-Dalian, YKK-Korea, YKK-Vietnam, and/or YKK-Bangladesh knew that their influence on the brand companies would result in the infringing actions by the directly infringing based companies.  The above acts are in violation of Sections 9 and 10 of the German Patent Act.

g.      Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the Sweden Patent, YKK directly and/or through YKK-Hong Kong manufactured zippers with the scope of the claims of the Sweden Patent.  YKK, YKK-Hong Kong, YKK-Shanghai Zipper and/or YKK-Shanghai Trading sold the zippers to YKK-UK, which offered to supply and resold the zippers to brand companies located in Sweden for use in making "high end outerwear" or to contractors outside Sweden known to be making "high end outerwear" for sale to brand companies located in Sweden as that term is used in the License

Agreement.   YKK, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Shanghai Trading also made such sales directly to said brand companies or contractors.   YKK, YKK-UK, YKK-Hong Kong, YKK-Shanghai Zipper, and/or YKK-Shanghai Trading caused the Swedish brand companies to import, make, use, and sell the infringing zippers, and without YKK's, YKK-UK's, YKK-Hong Kong's, YKK-Shanghai Zipper's, and/or YKK-Shanghai Trading's influence, such infringement would not have taken place.   YKK, YKK-UK, YKK-Hong Kong, YKK-Shanghai Zipper, and YKK-Shanghai Trading knew that their influence on the brand companies would result in the infringing actions by the directly infringing brand companies.   The above acts constitute a violation of Section 3 of the Swedish Patent Act.

      h.      Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of the U.K. Patent, YKK directly and/or through YKK-Hong Kong manufactured zippers within the scope of the claim of the U.K. Patent.   YKK, YKK-Hong Kong, YKK-Indonesia, and/or YKK-Thailand sold the zippers to YKK-UK, which resold the zippers to brand companies located in the United Kingdom for use in making "high end outerwear" and/or to contractors outside the United Kingdom known to be making "high end outerwear" for sale to brand companies located in the United Kingdom.   YKK, YKK-Hong Kong, YKK-Indonesia, and/or YKK-Thailand also made such sales directly to said brand companies or contractors. YKK, YKK-UK, YKK-Hong Kong, YKK-Indonesia, and/or YKK-Thailand caused the United Kingdom brand companies to import, make, sell, and use the infringing zippers, and without YKK's, YKK-UK's, YKK-Hong Kong's, YKK-Indonesia's, and/or YKK-Thailand's influence, such infringement would not have taken place.   YKK, YKK-UK, YKK-Hong Kong, YKK-Indonesia, and/or YKK-Thailand knew that their influence on the brand companies would result in the infringing actions by the directly infringing brand companies.   The above acts are a violation of Section 60 of the United Kingdom Patents Act of 1977 (as amended).

i. Since at least as early as January 1, 2009, and at all times relevant herein, with full knowledge of Plaintiffs' European Patents, YKK, YKK-Shenzhen, YKK-Thailand, YKK-Austria, YKK-Italy, YKK-Russia, and/or YKK-Turkey sold directly and/or indirectly zippers to brand companies located in Europe which come within the scope of one or more of the claims of one or more of the European, French, U.K., Sweden, and German Patents for use in making "high end outerwear" and/or to contactors known to be used in making "high end outerwear" as that term is used in the License Agreement for sale in Europe. The above acts are in violation of the aforesaid foreign laws.

57. Upon information and belief, the YKK Group has imported, made, used, offered for sale, and sold, within or into the United States and/or one or more countries in which the Foreign Patents claiming the invention were in force (including, but not limited to, through the channels of commerce described above), millions of meters of zipper products which would have been permitted by the License Agreement but as to which the YKK Group did not pay Uretek royalties as required by the License Agreement and thereby infringed the '214 Patent and the Foreign Patents.

58. Upon information and belief, the YKK Group, without prior written consent and through the present, has assigned, subcontracted, sublicensed and/or otherwise transferred the License Agreement or some interest thereunder and/or has assigned or delegated some or all of their rights or obligations thereunder, including by the unauthorized outsourcing of manufacturing coated zippers to third parties such as the Taiwanese company Win Chain Technology ("WCT").

59. The YKK Group has expressly advertised (and continues to advertise) on its websites (generally, www.ykkfastening.com) and in printed materials concerning some of the zippers at issue (i) the scope and validity of the Zipper Patents (including warning third parties

that the manufacture, sale, import or export of such products may infringe the Zipper Patents) and (ii) the alleged fact that the YKK Group is either a licensee or the exclusive licensee of Uretek or has the exclusive right  to manufacture, use, sell, and import zippers incorporating the technology protected by the Zipper Patents.  Upon information and belief, the YKK Group, however, failed to disclose to its customers (i) that the YKK Group is not licensed, and never has been licensed, to manufacture, use, sell, or import such zippers placed in finished goods in the Excluded Markets or (ii) that the YKK Group is not an exclusive licensee under any of the Zipper Patents and, therefore, that the YKK Group is not the sole source for the subject zippers.

60.     Notwithstanding the foregoing emphasis on the importance of Plaintiffs' patented technology, upon information and belief, the YKK Group itself made (and continues to make) little to no effort to confirm (i) that its zippers were being manufactured and sold for use only in markets other than the Excluded Markets, (ii) that all royalties required by the License Agreement were timely being paid, and (iii) that the YKK Group was in compliance with all applicable United States and foreign patent laws.

61.     Given the identity of many of the brand companies into whose finished goods the subject zippers were being incorporated (*e.g.*, Patagonia, The North Face, Arc'teryx, and Spyder) and given the manufacturing specifications the YKK Group employed to itself manufacture (or to improperly outsource the manufacturing of) the subject zippers, upon information and belief, the YKK Group had full knowledge and intent that its manufacture and sale of such zippers breached the core terms of the License Agreement and/or infringed one or more of the Zipper Patents, all on a massive, global scale.

## FIRST CLAIM FOR RELIEF

### Patent Infringement, 35 U.S.C. § 271

62.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 61.

63.     Upon information and belief, Defendants (possibly other than YKK-USA) have committed acts of infringement of the '214 Patent, and continue to commit such acts of infringement, by importing, making, using, offering to sell, and/or selling within or into the United States zippers containing the invention claimed in the '214 Patent, including, but not necessarily limited to, the following zippers to the extent not manufactured by Plaintiffs: all AquaGuard® and AquaGuard® Conceal® zippers (other than AquaGuard® Vislon® zippers) including any of the following zippers; all AquaCheat® zippers (other than 5 VS/VZ PU, 5 SG/SGW PU, 3 CF/CM PU, and 5 CNF/CNM PU) including any of the following zippers; and all zipper types including any of the CNFMR, CFT, CNT, CCT, CND, CFD, RCPU, CFDG, CNDG, and CHT designations.

64.     At all times relevant hereto, such Defendants had actual knowledge of the '214 Patent, but such Defendants nonetheless have infringed and continue to infringe that patent in willful and deliberate disregard of Plaintiffs' respective rights therein and with the intent to infringe those rights.

65.     Upon information and belief, such Defendants, with actual knowledge of the '214 Patent and with the intent to infringe that patent, induced each other, unnamed affiliates and/or other parties to infringe the '214 Patent by inducing such parties to import, make, use, offer to sell, and/or sell within or into the United States zippers containing the invention claimed in the '214 Patent knowing that the zippers would be sold in the United States market.

66.     As a direct and proximate cause of such Defendants' direct and/or induced infringement, as alleged above, Plaintiffs have suffered damages in the form of lost profits, lost sales and/or lost opportunities.

67.     Such Defendants are liable to Plaintiffs for the amount of any such damages, and YKK is jointly and severally liable for all such damages, and for any such damages caused by

unnamed members of the YKK Group, due to YKK's control of the Affiliate Defendants and the other members of the YKK Group in this regard.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

68.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 61.

69.     Upon information and belief, Defendants (possibly other than YKK-USA) have breached the License Agreement by selling zippers using and practicing the invention contained in one or more of the Zipper Patents in markets other than the Excluded Markets, within or into the United States and elsewhere, without paying Uretek a royalty of US$.03 per meter as required by the License Agreement, including, but not necessarily limited to, the following zippers to the extent not manufactured by Plaintiffs: all AquaGuard® and AquaGuard® Conceal® zippers (other than AquaGuard® Vislon® zippers) including any of the following zippers; all AquaCheat® zippers (other than 5 VS/VZ PU, 5 SG/SGW PU, 3 CF/CM PU, and 5 CNF/CNM PU) including any of the following zippers; and all zipper types including any of the CNFMR, CFT, CNT, CCT, CND, CFD, RCPU, CFDG, CNDG, and CHT designations.

70.     Upon information and belief, such Defendants have breached the License Agreement (*i.e.*, the express terms thereof and/or the implied covenant of good faith and fair dealing contained therein) by manufacturing, using, selling, and/or offering for sale, without written consent and without purchasing from Plaintiffs zippers containing the invention claimed in one or more of the Zipper Patents, zippers in the Excluded Markets within or into the United States and in one or more countries in which the Foreign Patents claiming the invention were in force, including, but not necessarily limited to, the following zippers to the extent not manufactured by Plaintiffs: all AquaGuard® and AquaGuard® Conceal® zippers (other than AquaGuard® Vislon® zippers) including any of the following zippers; all AquaCheat® zippers

20

(other than 5 VS/VZ PU, 5 SG/SGW PU, 3 CF/CM PU, and 5 CNF/CNM PU) including any of the following zippers; and all zipper types including any of the CNFMR, CFT, CNT, CCT, CND, CFD, RCPU, CFDG, CNDG, and CHT designations.

71.     Upon information and belief, such Defendants have breached the License Agreement (*i.e.*, the express terms thereof and/or the implied covenant of good faith and fair dealing contained therein) by assigning, subcontracting, sublicensing and/or otherwise transferring without prior written consent the License Agreement or some interest thereunder and/or assigning or delegating without prior written consent some or all of Defendants' rights or obligations thereunder.

72.     Notice of such breaches of the License Agreement has been provided to Defendants, and Defendants have failed to cure such breach of the License Agreement.

73.     As a result of Defendants' breaches of the License Agreement as alleged above, Plaintiffs have lost sales and suffered damages.

74.     Upon information and belief, each Defendant is jointly and severally liable for the actions of each other Defendant as well as each of Defendants' affiliates not named herein as a defendant.   YKK also is jointly and severally liable for all such damages, and for any such damages caused by unnamed members of the YKK Group, due to YKK's control of the Affiliate Defendants and the other members of the YKK Group, in this regard.

**THIRD CLAIM FOR RELIEF**

<u>Violation of the Lanham Act, 15 U.S.C § 1125(a)</u>

75.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 61.

76.     The YKK Group, including Defendants, displays marketing information concerning AquaGuard® water repellant zippers on its website, specifically at the URL address <u>http://www.ykkfastening.com/products/zipper/coil_zipper/aquaguard_coil.html</u>.

77.    The foregoing YKK Group webpage displays the following image, which image contains a link to "'Intellectual Property' details":



78.    When the foregoing link to "'Intellectual Property' details" is followed, or the viewer scrolls down to the end of the webpage, the webpage displays the following information:

**Water Repellant Slide Fastener Patent Family**

**The Patent**
Uretek, U.S. company, is the owner of US Patent No. 6,105,214, EP1150586B1, EP1629740B1, and a number of other patents around the world. These patents relate to water repellant slide fasteners. YKK Corporation is a licensee to manufacture and sell products protected by these patents. Anyone who manufactures, sells, imports or exports products of this type in countries where the patents are valid is in danger of infringing a patent.

**Countries where these or similar patents are valid**
USA, Canada, Germany, Spain, Finland, France, UK, Hong Kong, Ireland, Italy, Sweden, Switzerland, Japan, Taiwan.

**Brief Summary of Protected Rights**
USP6,105,214
1.Reversed coil chain with water resistant layer
2.Lamination treatment
3.Adhesion of water resistant layer to stringer tapes of at least 6lbs per inch

EP1150586B1 (valid in Germany, Spain, Finland, France, UK, Ireland, Italy, Sweden)
1.A Reverse Coil Product
2.With PU or similar laminate
3.The adhesion between the laminate and the tape is at least 0.107kp/mm
4.The laminate attached to the zipper was slit to allow opening during manufacture

EP1629740B1 (valid in Germany, Spain, Finland, France, UK, Ireland, Italy, Sweden, Switzerland)
1.A Reverse Coil Product
2.With PU laminate
3. The Shore hardness of the outside of the laminate is greater than the Shore hardness on the side of the laminate in contact with the tape

The contents of patents in other countries may vary.

This notice is not a guide to patent infringement. Decisions about infringement should always be made by reference to the entire patent and with the advice of a qualified expert.

The information at this URL was last confirmed on [2013/07/08]

79.     The foregoing advertising stating that "YKK Corporation is a licensee to manufacture and sell products protected by [the Zipper Patents]," coupled with the YKK Group's unconditional sales to third parties for use in Excluded Markets of zippers containing the invention claimed in the Zipper Patents, falsely and/or deceptively represents to such third parties that the license granted to the YKK Group is unrestricted as to such markets and, conversely, that the sales of such zippers for use in Excluded Markets is with Plaintiffs' consent and does not expose the third party manufacturers and/or brand companies to claims of domestic and/or foreign patent infringement.  As such, upon information and belief, the YKK Group's false and/or misleading representations are material to customers deciding to purchase zippers containing the invention claimed in the Zipper Patents.

80.     The foregoing online advertising is in addition to other similar advertising by the YKK Group having the same effect on the YKK Group's customers, such as advertising for the "AquaGuard® Water Repellent Zipper" wherein the YKK Group unconditionally, and thus falsely and/or deceptively, represents, "YKK is the exclusive licensee of the water repellent slide fastener technology embodied in U.S. Patent No. 6,105,214 and its corresponding foreign patent. YKK has the exclusive right to manufacture, use, sell and import zippers incorporating this water repellent technology."

81.     Upon information and belief, such false and/or deceptive advertising materially misleads the YKK Group's customers into purchasing, for use in Excluded Markets, zippers containing the invention claimed in the Zipper Patents manufactured by parties other than Plaintiffs (*i.e.*, by the YKK Group itself or by third parties such as WCT); conversely, such false and/or deceptive advertising materially deprives such customers of the informed ability (i) to insist that any YKK Group zippers containing the invention claimed in the Zipper Patents to be used in the Excluded Markets be manufactured by Plaintiffs so that such customers would not be

exposed to claims of domestic and/or foreign patent infringement and/or (ii) to purchase from a zipper manufacturer other than the YKK Group zippers containing the invention claimed in the Zipper Patents manufactured by Plaintiffs (or manufactured with Plaintiffs' authority) to be used in the Excluded Markets.

82.    Plaintiffs are harmed by Defendants' false and/or misleading statements in that Plaintiffs are the sole parties authorized to manufacture zippers containing the invention claimed in the Zipper Patents to be used in the Excluded Markets, and, upon information and belief, absent such false and/or misleading statements by Defendants, the subject customers of the YKK Group necessarily would insist upon purchasing, from the YKK Group or another zipper manufacturer, only such zippers as are manufactured by Plaintiffs.

83.    Defendants' false and/or deceptive advertising thereby interferes with Plaintiffs' business expectancies in that customers purchasing zippers containing the invention claimed in the Zipper Patents to be used in the Excluded Markets are diverted from such zippers manufactured by Plaintiffs and to such zippers manufactured by parties other than Plaintiffs (*i.e.*, by the YKK Group itself or by third parties such as WCT as to which the YKK Group engages in unauthorized outsourcing).

84.    Defendants' aforesaid false and/or deceptive statements constitute false representations that are likely to cause confusion, mistake and/or deceive the consuming public as to the nature of the zippers sold by the YKK Group containing the invention claimed in the Zipper Patents to be used in the Excluded Markets.

85.    Defendants' complained-of acts are willful violations of the Lanham Act, 15 U.S.C. 1125(a), and have damaged Plaintiffs.

## FOURTH CLAIM FOR RELIEF

<u>Violation of the Connecticut Unfair Trade Practices Act,</u>
<u>Conn. Gen. Stat. §§ 42-110a *et seq.*</u>

86.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 61, 69 through 74, and 76 through 85.

87.    Defendants, within their own trade or commerce, have taken the aforesaid actions that are deceptive or unfair in that such unfair actions offend public policy, are immoral, unethical, oppressive, or unscrupulous, and have caused substantial injury to Plaintiffs.

88.    Defendants' false and/or misleading advertisements described herein are deceptive acts or practices in Defendants' trade or business in violation of the Connecticut Unfair Trade Practices Act.

89.    Defendants' false and/or misleading advertisements described herein violate the public policy expressed in Section 43(a) of the Lanham Act and/or common law unfair competition.

90.    Defendants' conduct constitutes a willful and wanton breach of the License Agreement which, when coupled with Defendants' other aggravating conduct, violates the public policy expressed in the common law of unfair competition.

91.    Defendants' conduct described herein unnecessarily or recklessly imposes substantial hardship and loss on Plaintiffs and/or was undertaken with complete disregard or indifference to the rights and interests of Plaintiffs who are certain to be affected by that conduct.

92.    As a result of Defendants' conduct as described herein, Plaintiffs suffered a loss, including but not limited to lost sales, which loss was substantial, not outweighed by countervailing benefits to consumers or competition, and one that Plaintiffs could not reasonably have avoided.

93.     As a result of Defendants' conduct described herein, Plaintiffs have suffered a deprivation, detriment, and/or injury in the loss of business opportunities and/or other ascertainable loss.

94.     Such conduct is an unfair act or practice and/or a deceptive act or practice in the Defendants' trade or business under the Connecticut Unfair Trade Practices Act.

95.     Defendants acted as aforesaid in reckless indifference to, and/or wanton disregard of, the rights of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.      Adjudging that Defendants have infringed United States Patent No. 6,105,214;

B.      Awarding Plaintiffs their damages and lost profits arising out of Defendants' activities which infringe United States Patent No. 6,105,214, and that such damages and lost profits be trebled by reason of Defendants' willful and deliberate infringement, together with interest from the date of infringement;

C.      Awarding Plaintiffs their costs and attorneys' fees pursuant to 35 U.S.C. § 285;

D.      Awarding Plaintiffs their damages arising out of Defendants' breaches of contract and interest thereon;

E.      Permanently enjoining Defendants from further infringing United States Patent No. 6,105,214 and from further breaching the License Agreement under 35 U.S.C. § 283;

F.      Awarding Plaintiffs their damages arising out of Defendants' acts of false or misleading representation and unfair competition under 15 U.S.C. § 1117;

G.      Awarding Plaintiffs their costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a);

H.      Awarding Plaintiffs three times the amount of Plaintiffs' damages or Defendants' profits, whichever is greater, under 15 U.S.C. § 1117;

I.      Permanently enjoining Defendants from further acts of false or misleading representation and unfair competition under 15 U.S.C. § 1116;

J.      Awarding Plaintiffs punitive damages under Conn. Gen. Stat. § 42-110g(a);

K.      Permanently enjoining Defendants from further acts of false and/or deceptive conduct and/or unfair trade practices and from continuing to breach the License Agreement under Conn. Gen. Stat. § 42-110g(d);

L.      Awarding Plaintiffs their costs and reasonable attorneys' fees under Conn. Gen.

Stat. § 42-110g(d); and

M.      Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

trial by jury on all issues so triable.

 

PLAINTIFFS AU NEW HAVEN, LLC, and
TRELLEBORG COATED SYSTEMS US, INC.


By: _/s/Brian P. Daniels_____
Brian P. Daniels (pro hac vice)
David R. Schaefer (pro hac vice)
Sean M. Fisher (SF0251)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: bpdaniels@bswlaw.com
Email: dschaefer@bswlaw.com
Email: sfisher@bswlaw.com

Norman H. Zivin (NZ-6053)
Tonia A. Sayour (TS-7208)
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525
Email: nzivin@cooperdunham.com
Email: tsayour@cooperdunham.com

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2016, a copy of foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Brian P. Daniels*
Brian P. Daniels

D64703.doc