**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | | |
|---|---|---|
| AU NEW HAVEN, LLC, and | : | Civil Action No. |
| TRELLEBORG COATED SYSTEMS US, INC., | : | 15-CV-03411-GHW |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| YKK CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | September 9, 2016 |

---------------------------------------------------------------

**PLAINTIFFS' MEMORANDUM IN SUPPORT**
**OF PLAINTIFFS' PRIVILEGE LOG DESIGNATIONS**

Plaintiffs AU New Haven, LLC f/k/a Uretek LLC ("Uretek") and Trelleborg Coated Systems US, Inc. ("Trelleborg") (collectively, "Plaintiffs") hereby submit this memorandum of law in support of their privilege designations of documents numbered 130, 178, 191, 196, 198, 222, 257, 296, 310, and 322 from Plaintiffs' April 1, 2016 privilege log (collectively, the "Challenged Documents"). For the following reasons, the designations are warranted under governing law, and the Challenged Documents should not be disclosed to Defendants YKK Corporation et al. (collectively, "YKK").

## I.     INTRODUCTION

The Challenged Documents largely reflect confidential, internal communications among representatives of Uretek concerning the unsuccessful negotiations with YKK with respect to the dispute now before this Court, Plaintiffs' common interest in that dispute, and this legal action itself. Those negotiations began in earnest in 2006 and continued until early 2015 when this

action was filed.  During that time, Uretek, through its highest level executives Stuart Press (President) and Milton Berlinski (CEO and Board of Directors Chairman), sought and obtained the benefit of legal advice from Uretek's outside legal counsel -- George Coury, Esq. of the law firm of Bachman & LaPointe, P.C., Doug Wolfe, Esq. of the law firm of Wolf, Greenfield & Sacks, P.C., and Wayne Martino, Esq., of the law firm of Brenner, Saltzman & Wallman LLP (which firm also serves as Plaintiffs' co-trial counsel).  Those attorneys provided legal advice concerning, *inter alia*, the prosecution and maintenance of Uretek's patents, potential claims against YKK, the legal consequences of taking certain positions in negotiations with YKK, potential claims against third-party infringers of Uretek's '214 Patent, and litigation strategies against YKK.[1]

## II.    <u>LEGAL STANDARDS</u>

The Challenged Documents were withheld from production on the basis of the attorney-client privilege and work product privilege due to the involvement of the foregoing attorneys who provided legal advice to Uretek.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance ...."  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 90 F. Supp. 3d 201, 213–14 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1295 (Fed. Cir. 2016) (stating that the attorney-client privilege "attaches to a communication made for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal

---

[1] The parties to this action, in anticipation of the sheer volume of such communications between outside counsel and their respective clients during the long pre-filing period, stipulated that confidential communications solely between a party's outside attorneys and that party need not be produced and need not be listed on a privilege log.

proceeding") (internal quotation marks omitted).[2]   In recognition of "the necessity of corporate employees discussing advice received by one agent of the corporation," the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.  *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015).

Work product immunity, as codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, "shields materials prepared in anticipation of litigation or for trial by or for a party or by or for that party's representative (including the party's attorney, consultant, or agent)."  *Am. Civil Liberties Union*, 90 F. Supp. 3d at 213 (internal quotation marks omitted).  "The Second Circuit has interpreted the 'in anticipation of litigation' requirement broadly" such that a document is "deemed prepared 'in anticipation of litigation' if  in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (internal quotation marks omitted).

The common interest rule, in turn, permits a party to share privileged communications with third parties without affecting the confidentiality of the communication and without waiving the privilege.  *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 2016 WL 4154274, at *3 (S.D.N.Y. 2016) (common interest doctrine applied where the defendants and third party banks

---

[2] Because Plaintiffs bring claims under both federal and state law, and the information at issue is relevant to both claims, federal law governs any claim of privilege.  *See, e.g., von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Fitzpatrick v. Am. Int'l Grp., Inc.*, 272 F.R.D. 100, 104 (S.D.N.Y. 2010).  With respect to the issue of which circuit's precedent governs, the law of the Federal Circuit applies to discovery matters that affect substantive patent law, and the law of the Second Circuit applies generally to all other discovery matters.  *See In re Queen's Univ. at Kingston*, 820 F.3d at 1290.   For the purposes of this Memorandum, Plaintiffs are not aware of any outcome-determinative differences between the law of the Second Circuit and the law of the Federal Circuit concerning privilege.

shared a common legal interest in enforcing contractual rights and the communications at issue evince a joint legal strategy undertaken by the parties and their respective counsel).  To establish the applicability of the common interest doctrine, a party must show: "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest." *Id.* (citing *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009)).

### III.   **CHALLENGED DOCUMENTS**

Pursuant to the foregoing principles, and as discussed in detail below, Plaintiffs' designations concerning the Challenged Documents are proper.  The Challenged Documents are contained in Plaintiffs' Appendix of documents to be reviewed *in camera*, referenced below by both (i) the corresponding Tab # in said Appendix where each such document is located and also (ii) the Document # assigned to each such document in Plaintiffs' privilege log.[3]

**Tab 1 (Document 130):**  Document 130 is the July 31, 2014 Asset Purchase Agreement (the "APA") between Plaintiffs pursuant to which Trelleborg purchased the assets of Uretek.[4] The redacted portion of Document 130 is within the section entitled "YKK License Agreement," which section of the APA contains attorney-client information regarding this then anticipated

---

[3] Also for the Court's convenience, references to Uretek's above-identified legal counsel (as well as to Uretek's then in-house counsel, Attorney Sarah McGuire) have been highlighted in the Challenged Documents.

[4] Despite the fact that only one stand-alone passage, and a definition pertaining to such redacted passage only, was redacted by Plaintiffs, YKK insisted that the entire APA be submitted to this Court for *in camera* review.  The passage at issue appears at Pages 48 through 50 of the APA, and the definition appears at the first page of Exhibit A to the APA, and are highlighted for the Court's convenience.  The transaction closing occurred effective October 31, 2014.

legal action against YKK, including cost sharing between Plaintiffs with respect to any legal action, authority to make decisions regarding the prosecution of any legal action, and the division of any settlement and/or judgment proceeds between Plaintiffs, none of which has any relevance to the underlying merits of this action.  Importantly, YKK does not challenge the attorney-client privilege designation of this redaction except to the extent that YKK incorrectly argues that the common interest doctrine does not apply.

To the contrary, the common interest doctrine clearly applies to the redacted portion of Document 130 because (i) Plaintiffs share a common legal, as opposed to purely commercial, interest as evidenced by, *inter alia*, the face of the redacted language and the fact that Uretek and Trelleborg are co-plaintiffs in this legal action and (ii) the redacted portion of the APA was made in the course of formulating a common legal strategy, as anticipated co-plaintiffs, with respect to their prosecution of this legal action against YKK.  Such common interest also expressly was documented contemporaneously by Plaintiffs in (i) Plaintiffs' February 28, 2014 Second Amendment to their May 18, 2012 Confidentiality Agreement (Tab 2 Section 7, produced to YKK as U_0005841-43), (ii) the Confidentiality Agreement effective as of October 31, 2014 (Tab 3 Section 6, produced to YKK as U_0006027-36), and (iii) Section 6.10 of the APA itself (Page 36 of Tab 1, produced to YKK as U_0005916).

**Tab 4 (Document 257)**[5]**:**  Document 257 is an email from Mr. Berlinski to Mr. Press dated September 28, 2006 commenting on a communication Mr. Press had with representatives of YKK on September 27, 2006.  A draft of that communication was prepared by Attorney Martino on September 27, 2006 for review and comment by Mr. Berlinski and Mr. Press (Tab 5). In Document 257, Mr. Berlinski specifically references the communication between him,

---

[5] The remaining Challenged Documents are addressed in chronological order.

Mr. Press and Attorney Martino concerning the contents of the letter to YKK. Therefore, the document is protected by the attorney-client privilege as well work product immunity.

**Tab 6 (Document 296):** Document 296 is part of an email chain among Mr. Berlinski, Mr. Press, Attorney Coury, and Attorney Wolf dated January 20, 2011 concerning prosecution of a patent application in Japan. Because the email chain reveals confidential communications between representatives of Uretek and its counsel, the document is subject to the attorney-client privilege and work product immunity.

**Tab 7 (Document 310):** Document 310 is an email from Mr. Press to a Uretek employee (Wandaliz Mendez) dated March 16, 2011 forwarding an email from Attorney Coury discussing a Uretek patent application in Japan. Each of the attachments to that email has been produced by Plaintiffs to Defendants in discovery. Therefore, this cover email is subject to the attorney-client privilege and work product immunity.

**Tab 8 (Document 178):** Document 178 (and its attachments Documents 179 and 180, which are also provided in Tab 8) is an email from Mr. Press to Attorney McGuire dated January 25, 2012 forwarding communications from Attorney Coury's law firm regarding an invoice for work on a Japanese patent. Therefore, the communication at issue is protected by the attorney-client privilege and work product immunity.

**Tab 9 (Document 191):** Document 191 is an email chain involving Mr. Press, Mr. Berlinski and Attorney Wolf dated January 17, 2014 concerning select communications between YKK and Uretek. Plaintiffs note that all of the YKK-Uretek communications attached to this email have been produced to YKK in discovery. Therefore, the attorney-client privilege and work product immunity apply to this cover email.

**Tab 10 (Document 196):**  Document 196 (and its attachment Document 197, which is also provided in Tab 10) is an email from Mr. Press to Mr. Berlinski dated March 3, 2014 forwarding an email from Attorney Wolf and Attorney Wolf's summary and legal analysis of a meeting with YKK.  Therefore, the document is protected by the attorney-client privilege and work product immunity.

**Tab 11 (Document 322):**  Document 322 is a May 2014 email chain among Attorney McGuire, Mr. Press, David Sloane (then an employee of Uretek), Attorney Coury, and Randall Hoder (one of the executors of the Estate of Hal Hoder, the former principal owner of Uretek). The email chain discusses execution of a document prepared by Attorney Coury concerning the '214 Patent and the corresponding Japanese patent.  Therefore, the document is subject to the attorney-client privilege and work product immunity.

**Tab 12 (Document 198):**  Document 198 is an email dated January 14, 2015 from Attorney Martino to Attorney David Kaye and Attorney Luc Attlan, who are attorneys for Trelleborg.  Attorney Martino's email concerns a draft joint letter from Uretek and Trelleborg to YKK about YKK's license agreement payments.  The letter is, therefore, subject to the attorney-client privilege and work product immunity through the common interest doctrine (discussed above).

**Tab 13 (Document 222):**  Document 222 is an email chain dated February 28, 2015 among Mr. Berlinski, Mr. Press, Attorney Martino, and Attorney David Schaefer (a member of Plaintiffs' trial team in this action) discussing a draft of the complaint that was filed in this lawsuit and actions taken at the direction of Plaintiffs' attorneys in preparation for filing this action.  Therefore, this communication is protected by the attorney-client privilege and work product immunity.

For the reasons set forth herein, and based upon the face of the Challenged Documents, each of the Challenged Documents is protected by the attorney-client privilege and/or work product immunity, and none of the Challenged Documents should be disclosed to YKK.

PLAINTIFFS AU NEW HAVEN, LLC, and
TRELLEBORG COATED SYSTEMS US, INC.

By:   *s/Brian P. Daniels*
    Brian P. Daniels (pro hac vice)
    Sean M. Fisher (SF0251)
    David R. Schaefer (pro hac vice)
    Michael T. Cretella (pro hac vice)
    BRENNER, SALTZMAN & WALLMAN LLP
    271 Whitney Avenue
    New Haven, CT 06511
    Tel.: (203) 772-2600
    Fax: (203) 562-2098
    Email: bpdaniels@bswlaw.com
    Email: dschaefer@bswlaw.com
    Email: sfisher@bswlaw.com
    Email: mcretella@bswlaw.com

      and

    Norman H. Zivin (NZ-6053)
    Tonia A. Sayour (TS-7208)
    COOPER & DUNHAM LLP
    30 Rockefeller Plaza
    New York, New York 10112
    Tel.: (212) 278-0400
    Fax: (212) 391-0525
    Email: nzivin@cooperdunham.com
    Email: tsayour@cooperdunham.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2016, a copy of foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*s/ Brian P. Daniels*
Brian P. Daniels (pro hac vice)

DE6655.doc

9