USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/28/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
AU NEW HAVEN, LLC and TRELLEBORG
COATED SYSTEMS US, INC.,

                                                        Plaintiffs,

                    -against-

YKK CORPORATION, YKK HONG KONG
LTD., YKK FASTENING PRODUCTS SALES
INC., SHANGHAI YKK ZIPPER CO., LTD.,
SHANGHAI YKK TRADING CO., LTD., YKK
CANADA INC., YKK TAIWAN CO., LTD., P.T.
YKK ZIPPER INDONESIA, YKK
BANGLADESH PTE. LTD., YKK KOREA CO.,
LTD., YKK FRANCE SARL, DALIAN YKK
ZIPPER CO., LTD., YKK VIETNAM CO., LTD.,
YKK DEUTSCHLAND GMBH, YKK
(THAILAND) CO., LTD., YKK (U.K.) LTD.,
YKK ZIPPER (SHENZHEN) CO., LTD., YKK
AUSTRIA GMBH, YKK ITALIA S.P.A., OOO
YKK a/k/a YKK RUSSIA, YKK METAL VE
PLASTIK URUNLERI SANAYI VE TICARET
A.S., and YKK (U.S.A.) INC.

                                                     Defendants.
------------------------------------------------------------------- X

1:15-cv-3411-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Au New Haven, LLC ("Au New Haven") and Trelleborg Coated Systems US, Inc. ("Trelleborg" and, collectively, "Plaintiffs"), filed this action against YKK Corporation ("YKK") and several of its foreign affiliates (collectively, "Defendants"), alleging patent infringement and breach of a patent licensing agreement. The licensing agreement at issue contains an anti-assignment provision, which requires, among other things, that Plaintiff Au New Haven obtain Defendants' consent to assign that agreement—and any interest, obligations, or rights under that agreement—prior to any such assignments. In 2014, Au New Haven assigned the patent at issue to

Trelleborg.  Au New Haven did not request Defendants' consent prior to executing the patent assignment.

Defendants filed a motion to dismiss the complaint against Trelleborg, arguing that Trelleborg lacks standing to bring this action.  Defendants argue that Trelleborg is not a party to the licensing agreement, and therefore lacks standing to sue for a breach of that agreement.  Defendants also maintain that Trelleborg lacks standing to sue for patent infringement because Au New Haven's failure to obtain Defendants' consent rendered the patent assignment void.  Because the Court concludes that the assignment was not, in fact, void *ab initio*, Defendants' motion to dismiss Trelleborg's patent infringement claim is DENIED.[1]

## II. BACKGROUND

On September 25, 1998, Stuart Press filed a patent application with the United States Patent and Trademark Office ("PTO").  Decl. of Stuart Press in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss, Dkt. No. 55-1 ("Press Decl."), Ex. 1 at 1.  Mr. Press sought to improve the water resistance of zippers, having recognized that many common articles such as outerwear, backpacks, and tents are frequently made of water proof materials that require zipper closures and that the zippers are often a source of leakage.  *Id.* col. 1, lns. 5-15.  The PTO granted the application and, on August 22, 2000, issued Mr. Press U.S. Patent No. 6,105,214 entitled "Water Resistant Slide Fastener and Process for Preparing Same" (the "'214 Patent").  Amend. Compl. ¶ 34; *Id.* at 1.  Mr. Press subsequently assigned the '214 Patent to himself and Harold E. Hoder ("Hoder").  Amend. Compl. ¶ 34; Press Decl. ¶ 3 & Ex. 2.

---

[1] In their opposition to Defendants' motion to dismiss, Plaintiffs concede that Trelleborg does not have standing to sue for breach of the licensing agreement and that Trelleborg is only asserting a patent infringement claim in this action.  See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 5 n.2.  Accordingly, Defendants' motion to dismiss Trelleborg's breach of contract claim is denied as moot.

2

On February 13, 2002, Press and Hoder entered into a licensing agreement with YKK. Amend. Compl. ¶¶ 32, 46; Press Decl. ¶ 3 & Ex. 3.  The licensing agreement is at the heart of the dispute between the parties.  Pursuant to the agreement, YKK was granted "an exclusive, worldwide right to manufacture, use, sell, offer for sale and otherwise use and practice the invention contained" in the '214 Patent and corresponding foreign applications, which the agreement defines as "The Patents."  Press Decl. Ex. 3 ¶ 1.  In exchange, YKK agreed to pay royalties for zippers that it sold using the patented invention.  *Id.* ¶ 2.  Press and Hoder agreed to maintain the patents "as necessary to protect [their] interest in such," including by providing YKK with notice should Hoder and Press "make a positive decision to allow any of The Patents to lapse."  *Id.* ¶ 6.  And YKK agreed to inform Hoder and Press of any suspected infringement of the patents.  *Id.* ¶ 7.  In the event of suspected infringement, Hoder and Press retained "the first right to take action against such infringing party."  *Id.*

Critical to Defendants' motion is the anti-assignment provision contained in the licensing agreement, which states:

> Neither party hereto shall assign, subcontract, sublicense or otherwise transfer this Agreement or any interest hereunder, or assign or delegate any of its rights or obligations hereunder, without the prior written consent of the other party.  Any such attempted assignment, subcontract, sublicense or transfer thereof shall be void and have no force or effect.  This Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and heirs.

*Id.* ¶ 9.

In June 2006, Press and Hoder assigned the '214 Patent to Uretek.  Amend. Compl. ¶ 43; Press Decl. ¶ 5 & Ex. 4.  Although Press and Hoder did not seek YKK's prior consent to that assignment of the licensing agreement at that time, they sought, and obtained, YKK's consent after the fact.  Amend. Compl. ¶ 50.

In October 2014, Uretek assigned the '214 Patent to Trelleborg. Amend. Compl. ¶ 43; Press Decl. ¶ 5 & Ex. 5 (the "2014 Assignment"). It is this assignment that gives rise to Defendants' motion to dismiss for lack of standing. In the 2014 Assignment, Uretek agreed to "sell, assign, convey, transfer, and set over unto [Trelleborg], all of [Uretek's] right, title, and interest in and to the Patents," including the '214 Patent, "together with all income, royalties, damages or payments due or payable as of the date [of the assignment] . . . including, without limitation, all claims for damages by reason of past, present or future infringement or other unauthorized use of the Patents, with the right to sue for, and collect the same for its own use and enjoyment." Press Decl., Ex. 5 at 1. In May 2015, Uretek requested Defendants' consent to the 2014 Assignment of the licensing agreement. Press Decl. ¶ 21 & Ex. 10. Defendants refused. Press Decl. ¶ 21 & Ex. 11.

Plaintiffs commenced this action on May 1, 2015. Dkt. No. 1. Before the Court is Defendants' motion to dismiss as against Plaintiff Trelleborg for lack of standing to sue for patent infringement and breach of the licensing agreement.

## III.  LEGAL STANDARD

"Constitutional standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "'If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim,'" and the claim must be dismissed. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

A Rule 12(b)(1) motion for lack of subject matter jurisdiction is the "proper procedural route" for standing challenges. *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006). The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to that governing Rule 12(b)(6). *Kacocha v. Nestle Purina Petcare*

*Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *3 (S.D.N.Y. Aug. 12, 2016) (citations omitted). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* (internal quotation marks and citations omitted). However, the plaintiff bears the burden of establishing jurisdiction in a Rule 12(b)(1) motion, and must meet that burden by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The burden of proof applies "'to each claim and form of relief sought.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman,* 352 F.3d 625, 642 n. 15 (2d Cir. 2003)). "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). Therefore, in resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings. *Id.* at 170; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**IV. DISCUSSION**

    **A. Standing to Sue for Patent Infringement**

To sue for patent infringement, a party must have "'a legally protected interest in the patent . . . so that it can be said to suffer legal injury from [the] act of infringement.'" *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (quoting *Propat Int'l Corp. v. RPost, Inc.,* 473 F.3d 1187, 1193 (Fed. Cir. 2007)). "'Standing to sue for patent infringement derives from the Patent Act, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1031 (Fed. Cir. 2015) (quoting *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000) (quoting 35 U.S.C. § 281)). "As defined in section 100(d) [of the Patent Act], the term 'patentee' includes 'not only the patentee

to whom the patent was issued but also the successors in title to the patentee.'" *Id.* at 1377 (quoting 35 U.S.C. § 100(d)).

> A transfer of 'title' to a patent—also called an assignment—is governed by 35 U.S.C. § 261, which states that: Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

*Id.* (quoting 35 U.S.C. § 261). "When the entity that holds legal title to the patent 'makes an assignment of all substantial rights under the patent,' then that assignee is 'deemed the effective patentee under 35 U.S.C. § 281' with effective title to the patent, and alone has 'standing to maintain an infringement suit in its own name.'" *Keranos*, 797 F.3d at 1031 (quoting *Prima Tek II*, 222 F.3d at 1377) (emphasis removed). Because patent assignees have a legally protected interest in the patent under the Patent Act, assignees have standing to sue for infringement.

### B.  The Licensing Agreement's Anti-Assignment Clause

As a starting point, Trelleborg was assigned the '214 Patent pursuant to the 2014 Assignment. However, Defendants argue that Trelleborg lacks standing to sue because Au New Haven's failure to obtain Defendants' consent to the assignment of the patent rendered the 2014 Assignment void *ab initio*. The Court disagrees.

As noted above, the licensing agreement's anti-assignment clause states as follows:

> Neither party hereto shall assign, subcontract, sublicense or otherwise transfer this Agreement *or any interest hereunder*, or *assign or delegate any of its rights or obligations hereunder*, without the prior consent of the other party. Any such assignment, subcontract, sublicense or transfer thereof shall be void and have no force or effect.

Press Decl., Ex. 3 ¶ 9 (emphasis added). The express language of this provision does not limit transfers of the '214 Patent or render them void. The question then is if the '214 Patent constitutes

an "interest hereunder"—an interest under the licensing agreement—such that the provision could be read to render an assignment void *ab initio*.

The rule adhered to in New York regarding contractual anti-assignment clauses is that, "'[w]ith limited exception, contractual provisions prohibiting assignments are treated as personal covenants. An assignment made in violation of a personal covenant prohibiting assignments is enforceable, although it does give rise to a damages action against the assignor.'" *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 505 (S.D.N.Y. 2012) (quoting *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell,* 863 F. Supp. 135, 137 (S.D.N.Y. 1994)); *see also Citibank, N.A. v. Tele/Resources, Inc.,* 724 F.2d 266, 268 (2d Cir. 1983). "The limited exception is when the relevant provision of the contract contains '*clear, definite, and appropriate*' language declaring an assignment invalid." *Purchase Partners*, 914 F. Supp. 2d at 505 (quoting *Sullivan v. Int'l Fid. Ins. Co.,* 465 N.Y.S.2d 235, 237 (2d Dep't 1983)) (emphasis added); *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) ("Under New York law, an assignment is valid even where an agreement generally prohibits assignment, unless the agreement specifies that an assignment would be invalid or void.") (collecting cases) (internal quotation marks and citations omitted); *MBody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., et. al.*, 14 CIV. 2495 (ER), 2016 WL 4382709, at *7 (S.D.N.Y. Aug. 16, 2016).

As the Second Circuit reasoned when evaluating an anti-assignment clause under New York law, "only *express* limitations on assignability are enforceable." *Pravin Banker Associates, Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original). "'[T]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that *any assignment* shall be void or invalid *if not made in a certain specified way*.'" *Id.* (quoting *University Mews Assocs. v. Jeanmarie,* N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983) (emphasis added)); *see also C.U. Annuity Serv. Corp. v. Young*,

7

722 N.Y.S.2d 236, 236 (2001) ("Whether a non-assignment clause renders a subsequent assignment void or the breach of a personal covenant not to assign depends upon the expressed intent of the parties, namely *whether the language is sufficiently express to bar the assignment*.") (emphasis added); *Allhusen v. Caristo Const. Corp.*, 303 N.Y. 446, 452 (1952) ("We have now before us a clause embodying clear, definite and appropriate language, which may be construed in no other way but that any attempted assignment of either the contract or any rights created thereunder shall be 'void' as against the obligor. . . . We are therefore compelled to conclude that this prohibitory clause is a valid and effective restriction of the right to assign."). "In short, assignments are enforceable unless expressly made void, and not . . . void unless specified otherwise." *Trussell*, 863 F. Supp. at 138 (citing *Belge v. Aetna Casualty & Sur. Co.,* 334 N.Y.S.2d 185, 187 (4th Dept. 1972)).

Here, the anti-assignment provision does not expressly bar transfers of the '214 Patent itself, or render transfers of the '214 Patent void. The parties could have chosen to draft the provision to expressly reference the '214 Patent, but did not do so. Therefore, given the narrow reading applicable to anti-assignment clauses under New York law, the 2014 Assignment would be void *ab initio* only if the '214 Patent is an "interest" under the licensing agreement (*i.e.*, an "interest hereunder").[2] The Court finds that it is not.

"Hereunder" means "under this," "under this written statement," "under this agreement," or "in accordance with the terms of this document." Webster's Third New International Dictionary

---

[2] The Court observes that the New York case law cited above relates to the effect of an anti-assignment provision on the purported assignment of a contract in which the relevant anti-assignment provision appears. The Court has assumed for purposes of this opinion alone that the case law applies with equal force to purported assignments, not only of the contract in which the assignment agreement appears, but also to the assignment of personal property that is the object of a contractual limitation on alienation. The Court has adopted this approach because the parties' arguments are predicated on that mutual understanding, and because the Court concludes that the language as drafted does not render the assignment of the '214 Patent void. The Court does not hold that these cases stand for the proposition that anti-assignment provisions of this type are generally effective under New York law to render void assignments of personal property that are the object of a contract in the same way that they can render void purported assignments of the contract in which the language appears. For the reasons stated, the Court does not reach that question here.

8

1059 (1993); *see also* Black's Law Dictionary 844 (10th ed 2014) (defining "hereunder" to mean "[l]ater in this document" and "[i]n accordance with this document."). Courts have adopted this definition when interpreting contractual provisions that include the term. *See, e.g.*, *Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Local No. 80, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 605 F.2d 1290, 1296 (2d Cir. 1979) (evaluating a contractual mandatory arbitration clause and stating that "[t]he insertion of the word 'hereunder' after the otherwise all-inclusive phrase 'any and all disputes' has the effect of limiting, albeit slightly, the parties' duty to arbitrate. All disputes arising 'under' the agreement are to be arbitrated; those that are collateral to the agreement are not."); *accord Odyssey Reinsurance Co. v. Cal-Regent Ins. Servs. Corp.*, No. 3:14-CV-00458-VAB, 2015 WL 5971580, at *4 (D. Conn. Oct. 14, 2015) (interpreting the "hereunder" as the word appeared in an agreement to mean obligations set forth in that agreement); *Onadeko v. Rainier Credit Co.*, 678 F.2d 113, 115 (9th Cir. 1982) (concluding that the term "hereunder" as it appeared in a loan document "ma[de] it clear that the [loan] collateral secure[d] only indebtedness arising out of the current loan."); *Grizzard Commc'ns Grp. v. Monk*, No. 4:05 CV 3182, 2005 WL 2563046, at *6 (D. Neb. Oct. 11, 2005) (finding that the term "hereunder," as used in an employment agreement meant "under the employment agreement," consistent with term's dictionary definition of "under this written statement . . . under this agreement" or "in accordance with the terms of this document").

Consistent with the plain-language definition of the word, the Court concludes that the '214 Patent is not an interest "under" the licensing agreement. The '214 Patent was the subject of the licensing agreement, but it does not originate from the licensing agreement; it does not arise "under th[e] written statement" contained in the agreement; nor was it created "in accordance with the terms of" the agreement. As a result, construing the anti-assignment provision narrowly as dictated by New York law, the provision does not render the 2014 Assignment void *ab initio*. In reaching this conclusion, the Court does not—and need not—decide whether the 2014 Assignment breached the

9

licensing agreement. Rather, the Court's conclusion is limited to the question of whether Au New Haven's failure to obtain Defendants' consent to the assignment rendered the 2014 Assignment void *ab initio*. The Court concludes that it did not. Accordingly, Plaintiffs have met their burden of proof that Trelleborg has an interest in the '214 Patent as the patent's assignee and that Trelleborg has standing to sue for infringement of the '214 Patent.

## V. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss Trelleborg's patent infringement claim is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 49.

SO ORDERED.

Dated: September 28, 2016  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge