USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/18/2016

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-----------------------------------------------------------------X**

**AU NEW HAVEN, LLC, et al.,**

**Plaintiffs,**

**-against-**

**YKK CORPORATION, et al.,**

**Defendants.**
**-----------------------------------------------------------------X**

**15-CV-03411 (GHW)(SN)**

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Familiarity with the underlying facts in this patent infringement and breach of contract case is assumed. Via joint letter to the Honorable Gregory H. Woods dated August 15, 2016, both parties in this case objected to designations that were made on their adversaries' privilege logs. (ECF No. 154.) On August 22, 2016, this dispute was referred to me for resolution. (ECF No. 156.) On August 29, 2016, the Court issued an order requiring parties to submit a representative sampling of ten documents for which they are asserting privilege for *in camera* review. Both parties have submitted such documents and the Court's review follows.

## ANALYSIS

### I. General Standards for Attorney-Client Privilege and Work Product Immunity

The attorney-client privilege applies only to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). It "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "But the privilege stands in derogation of the public's

right to every man's evidence, and as an obstacle to the investigation of the truth; thus . . . [the privilege] ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (Friendly, J.) (internal citations and quotation marks omitted). Further, the privilege "is triggered only by a client's request for legal, as contrasted with business advice." In re Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984). Courts examine whether the "predominant purpose" of the communication was to render or solicit legal advice, defined as "the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re County of Erie, 473 F.3d at 419–20.

Work product immunity, as codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, "shields materials prepared in anticipation of litigation or for trial . . . ." Am. Civil Liberties Union v. U.S. Dep't of Justice, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Courts have summarized Rule 26(b)(3) as setting forth three requirements for work product protection to apply: "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." SEC. v. Yorkville Advisors, LLC, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). The doctrine protects only documents prepared "because of the prospect of litigation" and does not protect documents that "would have been prepared irrespective of the expected litigation." United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998).

**A. Third Party Waiver and the Common Interest Doctrine**

In addition to the standard inquiry whether a communication qualifies as protected by the attorney-client privilege or work product doctrine in the first place, both parties' submissions

involve issues relating to communications that have been disseminated beyond the attorney-client relationship, either to other non-attorney employees of the same corporation or employees of another entity under common ownership.

With some exceptions, the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary. See, e.g., Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, 03-CV-5560 (RMB)(HBP), 2007 WL 1837133, at *2 (S.D.N.Y. June 27, 2007) ("The attorney-client privilege is not absolute, however, and may be waived through, among other things, the voluntary disclosure of a privileged communication to a third party, especially a litigation adversary.") (collecting cases).

A clear exception to third-party waiver concerns communications between clients and non-lawyer agents or contractors of the attorney. Such communications are also privileged when made "for the purpose of obtaining legal advice." United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.). Confidential information provided by a client to an attorney's agent or contractor "at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). But the extension of the privilege from an attorney to the attorney's agent "has always been a cabined one." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). It applies only to "communications between a client and an attorney" when those communications are mediated through a third party agent. United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). It does not apply to an attorney's communications with its agent or contractor, even those "that prove important to an attorney's legal advice to a client." Id.

As with other aspects of the attorney-client privilege, the third-party waiver doctrine applies differently in the corporate context. The Supreme Court has pointedly rejected the "control group" test for the attorney-client privilege, which extended only to top executives. In doing so, the Court emphasized that "[t]he attorney's advice will also frequently be more significant to noncontrol group members than to those who officially sanction the advice, and the control group test makes it more difficult to convey full and frank legal advice to the employees who will put into effect the client corporation's policy." Upjohn, 449 U.S. at 392.

Lower courts have recognized the necessity of corporate employees discussing advice received by one agent of the corporation. "Therefore, although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege." Strougo v. BEA Associates, 199 F.R.D. 515, 519–20 (S.D.N.Y. 2001). See also Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc., 06-CV-7785 (PKC), 2007 WL 1573913, at *2 (S.D.N.Y. May 24, 2007) ("The distribution of attorney communications between or among senior officers of a corporation who have a need to know the information also does not vitiate the privilege."); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442 (S.D.N.Y. 1995) ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.").

A final exception to third party waiver is the common interest rule. This rule requires a showing that "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest." Lazare Kaplan Int'l, Inc. v. KBC Bank N.V., No. 11-CV-9490 (ALC), 2016 WL 4154274, at *3 (S.D.N.Y. July 22, 2016) (citing

HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 71 (S.D.N.Y. 2009)). "In order for the doctrine to apply, the shared interest must be legal rather than commercial . . . ." In re Rivastigmine Patent Litig., No. 05 MD 1661 (HB)(JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005) (collecting cases). Thus, the doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation," and requires that parties have "demonstrated cooperation in developing a common legal strategy." Id. (citations omitted). Parties may, however, share such an interest even if they are not engaged in ongoing litigation. Schaeffler v. United States, 806 F.3d 34, 40–41 (2d Cir. 2015) (noting that "the dispositive issue is, therefore, whether the . . . common interest . . . was of a sufficient legal character to prevent a waiver . . . ."). The case law in this District differs as to whether the asserted legal interest must be "identical" or merely "common" to the parties. Compare In re Rivastigmine Patent Litig., 2005 WL 2319005, at *4 (stating that common interest rule was applicable "only insofar as [parties'] interests were in fact identical") with Egiazaryan v. Zalmayev, 290 F.R.D. 421, 434 (S.D.N.Y. 2013) ("While some case law has suggested there must be identical legal interests among the parties asserting the common interests, more recent cases have held that the parties need not have total identity of interest as long as a limited common purpose necessitates disclosure to certain parties.").

      The Court finds that an overly stringent standard requiring a total identity of interest would unduly hamper the purpose of the common interest rule, which is to "protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken . . . ." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). It is commonplace that parties may engage in a "common legal strategy" without having an exactly identical interest in the outcome of the

litigation in question, and their interest in maintaining the confidentiality of attorney-client communications and attorney work product in support of their joint endeavor is not diminished solely because, in the final instance, the remedies that they derive from litigation differ. The key question is whether the parties are collaborating on a legal effort that is dependent on the disclosure of otherwise privileged information between the parties or their counsel.

Entities that are under common ownership must still demonstrate that this rule applies, such as by making a showing that a common attorney was representing both corporate entities or that they otherwise shared a common legal interest. Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 473 (S.D.N.Y. 2003) ("Proponent[s] of the privilege may not rely solely on the fact that the entities at issue are affiliated with each other."); but see Music Sales Corp. v. Morris, No. 98-CV-9002 (SAS)(FM), 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999) (finding that communications from "[c]orporations which are related through common ownership or control . . . are treated in the same way as intra-corporate communications" without demonstrating that they have a common legal interest).

**II. Application to Plaintiffs' Privilege Log**

Applying these principles, the Court conducted an *in camera* review of the disputed documents and reaches the following conclusions regarding the documents that Plaintiffs seek to maintain as privileged:

**A. Document 130**

Document 130 is the July 31, 2014 Asset Purchase Agreement ("APA") between Uretek (now AU New Haven LLC) and Trelleborg, the two co-plaintiffs in this proceeding. Plaintiffs have produced the APA with the exception of four sub-paragraphs of Section 8.18, entitled "YKK License Agreement." Plaintiffs allege that this section contains attorney-client

information regarding this then-anticipated legal action, including, *inter alia*, information regarding sharing of settlement/judgment proceeds, allocation of decisional authority, and distribution of costs to be incurred.

Plaintiffs argue that this section of the APA falls within the common interest doctrine because the two companies are now co-plaintiffs in the instant proceeding and the redacted APA was made in the course of formulating a common legal strategy with respect to their prosecution of this action. Defendants contend that the Asset Purchase Agreement, which represents the culmination of an arm's length negotiation between the representatives of the two co-plaintiffs, does not constitute legal advice or further a legal strategy; rather, it reflects commercial decisions regarding rights and obligations that are related to litigation and/or settlement. Defendants further note that at the time the agreement was signed, over a year before the commencement of this suit, plaintiffs were represented by separate counsel and possessed different rights with respect to the License Agreement and patent at issue in this case.

After reviewing the document *in camera*, the Court agrees with Defendants' characterization of the issues. The APA is a commercial agreement negotiated between two parties that memorializes the rights, responsibilities, and obligations of the parties involved in the transaction. The document in question does not primarily refer to a legal strategy vis-à-vis Defendants and simply does not meet the definition of a privileged document. It does not constitute "a communication between client and counsel" and was not made "for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d at 419.

Moreover, even if the document were privileged, Uretek and Trelleborg would fail in their invocation of the common interest rule. Only communications made in the course of an ongoing legal enterprise, and intended to further the enterprise, are protected. See Schwimmer,

892 F.2d at 243. The common interest rule does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation." In re F.T.C., No. M18-304 (RJW), 2001 WL 396522, at *3 (S.D.N.Y. Apr. 19, 2001). At the time the APA was signed, Uretek and Trelleborg were not yet in an ongoing legal enterprise with respect to YKK.

Accordingly, the redacted portions of Document 130 are not privileged and should be produced.

**B. Document 257**

Document 257 is an email from Milton Berlinski (CEO and Chairman of the Board) to Stuart Press (President) of Uretek, commenting on a communication that Mr. Press had with representatives of YKK. A prior draft of the communication had been drafted by Attorney Wayne Martino. The communication itself is non-privileged because it has been directly divulged to Defendants.

After *in camera* review of the document, the Court finds that it does not reference the contents of discussions with Attorney Martino; rather it references a request that Mr. Berlinski, a non-attorney, had made of Mr. Press, also a non-attorney, which was non-legal in nature and did not incorporate Mr. Martino's advice and counsel. Accordingly, the email is subject to neither the attorney-client privilege nor the work product doctrine and should be produced.

**C. Document 296**

Document 296 is an email from Mr. Berlinski to Mr. Press that copies a conversation between Mr. Press and Attorneys Wolf and Coury concerning prosecution of a patent application in Japan. The attorney-client communications refer to legal strategy, and the discussion of such information among senior executives at a corporation represented by counsel is privileged.

Accordingly, the document is subject to attorney-client privilege and does not need not be produced.

**D. Document 310**

Document 310 is an email from Mr. Press to Uretek employee Wandaliz Mendez concerning a Uretek patent application in Japan. The email forwards a communication between Attorney Coury and Mr. Press that describes and pertains to said application. The email constitutes a communication between client and counsel that was intended to be and was kept confidential and was made for the purpose of providing legal advice. The privilege is not waived by its forwarding to Wandaliz Mendez, an employee of the company represented by Attorney Coury. Accordingly, the document is subject to attorney-client privilege and does not need not be produced.

**E. Documents 178, 179, and 180**

Document 178 is an email sent by Mr. Press to Sarah McGuire, a Uretek employee, forwarding a message and attached documents (Documents 179 and 180) relating to an invoice for work done on a Japanese patent sent by Attorney Court's firm to Mr. Press. While the email is a communication between client and counsel, a billing document such as an invoice that does not itself contain legal advice is not privileged, much like a retainer agreement. Accordingly, the documents are not subject to attorney-client privilege and should be produced. The Court does not understand the description of "professional services" in Document 180 to reveal confidential information. If, however, Plaintiffs believe that it does, that may be redacted.

**F. Document 191**

Document 191 is an email from Mr. Press to Mr. Berlinski that forwards a communication between Mr. Press and Attorney Wolf. The attachment in the communication

between Mr. Press and Attorney Wolf has already been provided to Plaintiffs. The cover email does not provide any commentary and does not seek to obtain or provide legal advice. Accordingly, the document is not subject to attorney-client privilege and should be produced.

**G. Documents 196 and 197**

Document 196 is an email from Mr. Press to Mr. Berlinski forwarding a cover email from Attorney Wolf to Mr. Press, with an attachment of Attorney Wolf's summary of a meeting with YKK (Document 197).

While it does not contain substantial information, Document 196 is a direct communication from attorney to client instructing client to view the attachment (Document 197), and is thus privileged. The Court's *in camera* review finds that Document 197 is also privileged and need not be produced. Numerous sections of the document constitute communications made for the purpose of providing legal advice. While other sections of Document 197 are predominantly factual meeting minutes, the facts that Attorney Wolf chose to note serve as a necessary background to the legal advice provided and indicate which facts he viewed as potentially legally significant. At any rate, as YKK was present at the meeting in question, it should be aware of all matters under discussion at that time.

**H. Document 322**

Document 322 is an email chain between Attorney Coury, Mr. Press, several Uretek employees and Randal Hoder, one of the executors of the Estate of Hal Hoder, the former principal owner of Uretek, discussing the execution of a document pertaining to patents relevant to this case.

The underlying conversations between Attorney Coury and Uretek employees are unquestionably subject to attorney-client privilege protection. Therefore, the question is whether

such privilege was waived when the information was shared with Mr. Randal Hoder. It appears clear that had the information been shared with Hal Hoder during his lifetime and tenure as Uretek owner, that information would have remained privileged and not subject to a third-party waiver, either because Hal Hoder would have been viewed as part of the control group of the corporation or via operation of the common interest doctrine. In this case, the privilege belongs to Hal Hoder and the involvement of Randal Hoder as the executor of Hal Hoder's estate does not waive it, as he is acting on Hal Hoder's behalf. Therefore, the document remains privileged and need not be produced.

## I. Document 198

Document 198 is an email from Attorney Martino, attorney for Uretek to Attorneys Kaye and Attlan, attorneys for Trelleborg, with copy to Mr. Berlinski, concerning a draft joint letter from the two co-plaintiffs to YKK about YKK's license agreement payments. The Court finds that this document, produced approximately 5 months before the filing of the Complaint in this case, constitutes attorney work product created in anticipation of litigation.

The protections accorded to attorney work product are not waived in this case because the document was disclosed to co-plaintiffs' lawyers. The Court finds that at the time the document was created, Uretek and Trelleborg had a sufficient "common interest" to defeat any claim of third-party waiver. Their comments to one another aiming to formulate a joint position on matters pertinent to the dispute at issue in this case were clearly disseminated in the context of a common legal strategy, and as such remain privileged. Accordingly, Document 198 does not need to be produced.

**J. Document 222**

Document 222 is an email chain between Mr. Berlinski, Mr. Press, and Attorneys Martino and Schaefer discussing a draft of the complaint and various issues related thereto. The communications therein clearly constitute communications from attorney to client that contains legal advice and are thus privileged. The documents does not lose its privilege because Mr. Berlinski forwarded it to Mr. Press for his commentary. Accordingly, Document 222 does not need to be produced.

## III. Application to Defendants' Privilege Log

**A. Document 2**

Document 2 is an email from Jack Sasaki, a non-attorney, to 22 recipients, one of whom is Katsu Yumoto, a non-attorney "legal coordinator" who reported to attorney John Castellano. The document includes a reference to needing to request a legal opinion, and refers to a future meeting with YKK's U.S. legal team.

The Court finds that this is a business communication that does not request legal advice from an attorney, provide legal advice, or disseminate legal advice already given by an attorney among non-attorney employees of a corporation. To the degree that legal issues are referenced, the document only states, to a broad audience of non-attorneys, that the relevant department has the intention of requesting legal advice in the future.

As such, the Court finds that Document 2 is not privileged and should be produced.

**B. Document 3**

Document 3 is an email from non-attorney Masahiro Kusayama to 8 non-attorney recipients primarily containing non-privileged business information. Item (6) of the document, however, references the prior advice of attorney John Castellano with regards to whether a

certain product can be used in light of a certain patent. The Court's review confirms that such advice is legal and not business in nature.

Plaintiffs argue that Document 3 should nevertheless be revealed because YKK Corporation and its wholly owned subsidiary YKK Corporation of America (YCA) do not share a common legal interest. Because Attorney John Castellano was Chief Legal Counsel of YCA, Plaintiffs contend that any communications he had with YKK Corporation and any communications incorporating his advice forwarded by employees of YKK Corporation would lose their privilege by virtue of having been disseminated to a third party. They further argue that the common interest rule does not apply because (1) only YKK Corporation, and not YCA, admitted that they were party to the License Agreement at issue in this case pursuant to plaintiffs' Requests for Admissions and (2) YCA and other YKK affiliates denied that they were jointly and severally liable for the actions of YKK Corporation. Defendants, for their part, counter that entities under common ownership sharing privileged information are always considered to be a single entity for the purpose of attorney-client privilege. Music Sales, 1999 WL 974025, at *7 (holding that corporations related through ownership or control need not prove common legal interest).

The Court does not adopt the per se standard that Defendants urge; in certain circumstances, commonly owned subsidiaries simply do not have the common purpose in litigation necessary for the invocation of the doctrine. "Privileges should be narrowly construed and expansions cautiously extended." United States v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999). For example, in Gulf Lands Leasing v. Bombardier Capital, Inc., 215 F.R.D. 466 (S.D.N.Y. 2003), the court considered the case of two defendant subsidiaries that were wholly owned by the same corporation.  Although the corporations shared a common commercial

interest in the success of the litigation, they had two different agreements with the plaintiff, separate legal counsel, and showed no indicia of coordinating a legal strategy beyond occasional discussions between co-counsel. Id. at 473. On this record, the court found that communications between the two companies were not privileged.[1] This approach, which considers the real relationship between companies and their counsel, is preferable considering the great diversity of legal and factual scenarios that corporate litigation presents.

Nevertheless, in this case, Defendants have amply proven that YKK Corporation and YCA may invoke the common interest doctrine to maintain their communications privileged. According to YCA Chief Legal Counsel James Reed, "the legal department at each member entity works collaboratively with the other members' legal departments . . . [and the individual legal departments] essentially function as a single unified department which provides legal advice to all members of the YKK Group." Reed Decl. ¶ 4, ECF No. 167-1. Indeed, the Court's *in camera* review of this and other documents confirms that staff of the YKK Corporation regularly request and rely on the legal advice of YCA attorneys, and treat them in all respects as if they were in-house counsel directly employed by the YKK Corporation.

As such, the Court finds that point (6) of Document 3 is subject to attorney-client privilege, and therefore may be redacted. The Court also finds, however, that the rest of the document is unprivileged business information and should be produced to Plaintiffs.

### C. Documents 6 and 8

Document 6 is an email from Yuki Abe, a non-attorney member of YKK's legal department, to five other recipients, including Mamoru Usuda, another member of YKK's legal

[1] The Gulf Lands Leasing court also found that the subsidiaries needed to have "identical" legal interests to invoke the common interest rule. As stated in Section I.A., the Court does not adopt this strict view of the common interest rule.

department. The email has an attachment, Document 8, which is a report generated by YKK's legal department in order to advise the President of YKK on the relationship with Uretek. Defendants have represented that Mr. Abe and Mr. Usuda were working in close conjunction with Mr. Castellano to implement the legal strategies in the report. Reed Decl. ¶ 19, ECF No. 167-1.

The Court finds that Document 8 is primarily legal in nature and is protected by attorney-client privilege. Documents generated by non-legal staff under the supervision of an attorney is equally protected to that produced by the attorney himself or herself. See, e.g., Kovel, 296 F.2d at 922. As such, the entirety of Document 8 may be withheld. As to Document 6, only the last of the three emails in the chain concerns the legal report in question; this email may be redacted, but Defendants should produce the first two emails in the chain that reference business matters.

**D. Document 9**

Document 9 is an email from non-attorney Jack Sasaki to Yancy Harada, a non-attorney legal coordinator who reported to Attorney Castellano at YCA. The communication references YKK's strategy as to the use of warning letters.

Though an attorney is neither copied nor referenced in the email, the communication discusses a legal strategy that very likely would have been derived from the advice of an attorney. Accordingly, the top email from Jack Sasaki is privileged and need not be produced. The following emails in Document 9 discuss business matters only and should be produced.

**E. Document 15**

Document 15 is a redlined draft of proposed amendments to an agreement with Uretek that were made by a non-attorney member of the legal department, under the direction of

Attorney Castellano. While there is no indication that it was prepared in anticipation of litigation so as to qualify it for protection under the work product doctrine, it was legal advice "communicated" to the client when it was turned over to YKK Corporation's document custodian Yoshimine Kobayashi. As such, it is subject to attorney-client privilege and need not be produced.

**F. Document 50**

The plaintiffs have withdrawn their objection to Defendants' assertion of privilege with respect to this document, and accordingly it need not be produced.

**G. Document 118**

This is a series of emails, certain of which copy James Reed, Chief Legal Counsel at YCA, and others that do not copy Attorney Reed but refer to legal advice given by him or by a Taiwanese attorney.

These documents all concern legal advice and accordingly are subject to attorney-client privilege. As such, they need not be produced.

**H. Document 119**

This document is an email from non-attorney Akinobu Shibata to non-attorney Michael Blunt that copies YCA Chief Legal Counsel Jim Reed. The subject line is marked "Attorney Client priviledge" (sic) and an attorney is copied on the email. The email discusses the position the company should take in a given negotiation, and appears to be informed by prior legal advice given by attorneys. Additionally, it appears directed to put Attorney Reed on notice as to the perspectives that Mr. Shibata and Mr. Blunt have on the issue, and therefore to serve as a basis for additional legal advice. Finally, the email explicitly references a forthcoming meeting with Attorney Reed on the issue under discussion.

Accordingly, Document 119 is privileged and need not be produced.

**I. Document 129**

The plaintiffs have withdrawn their objection to Defendants' assertion of privilege with respect to this document, and accordingly it need not be produced.

## IV. Plaintiffs' Request for Broad Relief

In addition to their objections regarding the specific documents provided to the Court for *in camera* review, Plaintiffs request that Defendants be ordered to produce (1) all documents that merely copy an attorney or member of the legal department and that do not expressly request a legal opinion or expressly respond to a request by an attorney or member of the legal department for information needed to formulate a legal opinion; (2) all documents reflecting business advice as opposed to legal advice; (3) all documents shared between any Defendants and their affiliates where the recipients do not share a common legal interest; and (4) all documents containing non-privileged information, with privileged communications and marginal privileged notes redacted as appropriate.

On the one hand, Plaintiffs' narrow formulation of the attorney work-privilege as applying only to express requests for or provision of legal advice fails to take into account its protection for "communications among corporate employees that reflect advice rendered by counsel . . . ." Bank Brussels Lambert, 160 F.R.D. at 442. Therefore, communications that clearly incorporate legal advice previously given are also subject to protection. On the other hand, Defendants' contention that company practice is to copy legal department staff only on emails expressly requesting legal advice is belied by the fact that substantial portions of emails reviewed *in camera* discuss non-legal business matters in whole or in part. As such, Defendants may not withhold the entirety of a conversation merely because one portion of such

communication is subject to privilege: they must selectively redact the document in question and produce all those portions that do not provide, request, or discuss legal advice previously provided. Finally, as discussed in Section III.B, the Court finds that YKK Corporation may invoke the common interest rule to preserve the privileged nature of communications between YKK and YCA employees that would otherwise be protected.

The Court directs the parties to review their privilege logs in accordance with this order and produce additional documents in accordance with its principles. Documents that contain both substantial privileged and non-privileged information must be produced in part, and may not be withheld in their entirety.

## CONCLUSION

Following *in camera* review of the selected log entries, plaintiffs and defendants are both ordered to produce the documents or portions of documents described in this order as non-privileged. They are further ordered to review their privilege logs to produce additional documents in accordance with this Order.

To assist the parties in this endeavor, the Court summarizes the Order's principal conclusions as follows: (1) the common interest doctrine protects otherwise privileged communications between Uretek and Trelleborg that were reasonably related to this litigation, such as Document 198, but not documents preceding this "ongoing legal enterprise," such as Document 130; (2) the common interest doctrine protects otherwise privileged communications between counsel at YCA and employees at YKK, despite the fact that YCA and YKK are separate corporate entities; (3) in light of the need for language interpretation within YKK, privilege is not waived by the presence of Japanese non-attorney advisors on Defendants' email chains and extends to legal communications by such non-attorneys that were prepared under the

direction or supervision of an attorney; and (4) neither party may withhold entire documents on the ground that a portion of the document is privileged, and must instead redact only the actually privileged information in each document.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED: New York, New York
November 18, 2016