**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

AU NEW HAVEN, LLC, et al.,

                                        Plaintiffs,

                    -against-

YKK CORPORATION, et al.,

                                        Defendants.
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 10/24/2017 __

15-CV-03411 (GHW)(SN)

OPINION AND
ORDER

**SARAH NETBURN, United States Magistrate Judge:**

The Court has reviewed the 20 documents submitted by Defendants for *in camera*
review. This is the third time the Court has engaged in this exercise. The Court has issued two
previous opinions and orders addressing deficiencies in Defendants' privilege log and ordering
them to produce certain documents that were not properly withheld. ECF Nos. 178, 237. Despite
the Court's previous guidance, however, Defendants' most recent submission demonstrates that
they have failed to remedy the many deficiencies in their privilege log and document production.

## BACKGROUND

On August 22, 2000, the U.S. Patent and Trademark Office issued a patent to Stuart Press
for a water-resistant zipper and the process for preparing it (the "U.S. Patent"). ECF No. 55-1
¶ 2; ECF No. 55-2. Press later assigned the U.S. Patent to himself and Harold E. Hoder. ECF No.
55-1 ¶ 3. On February 13, 2002, Press and Hoder entered into an exclusive licensing agreement
with YKK Corporation ("YKK"), granting YKK "an exclusive, worldwide right to manufacture,
use, sell, offer for sale and otherwise use and practice the invention contained in [the U.S. Patent
and corresponding non-U.S. patents], except for zippers placed in finished goods in the high end
outerwear, marine, military and luggage (excluding sports and cosmetic bags) markets." ECF

No. 55-4 ¶ 1. In exchange, YKK agreed to pay Stuart and Hoder royalties for zippers sold using the patented invention. Id. ¶ 2.

In 2006, Press and Hoder assigned the patent to Plaintiff AU New Haven, LLC, which was known as Uretek LLC ("Uretek") at the time.[1] ECF No. 55-1 ¶ 5. Shortly thereafter, it seems Uretek raised concerns that YKK was not complying with the exclusive licensing agreement, and as a result, YKK and Uretek repeatedly engaged in discussions during the years that followed in an attempt to renegotiate the agreement. ECF No. 285 at 21–23. These negotiations did not prove fruitful. Id. at 23–24. Accordingly, on May 1, 2015, Plaintiffs filed this case against YKK and several of YKK's non-U.S. affiliates (collectively, "Defendants"), alleging patent infringement and breach of contract. ECF No. 1 (Compl.). As relevant here, Plaintiffs allege that Defendants breached the exclusive licensing agreement by selling zippers using the patented invention in markets that were carved out of the agreement—that is, "the high end outerwear, marine, military and luggage . . . markets." ECF No. 90 ¶¶ 51, 54, 69 (Amend. Compl.).

## ANALYSIS

### I.  General Legal Standards

Before considering the exemplars, the Court sets forth several guiding principles that, when applied to the Fifth Log, result in the production of nearly all of Defendants' documents. Although this result may seem harsh, the Court and parties are entitled to rely on the information

---

[1] In 2014, Uretek assigned the patent to Plaintiff Trelleborg Coated Systems US, Inc. ECF No. 55-1 ¶ 5.

contained in a privilege log. The iterative process proposed by Defendants, if permitted, would

lead to endless litigation at the expense of the Plaintiffs and further expend judicial resources.

## A.    Waiver of Privilege

When a party withholds documents on the grounds of privilege, Rule 26 of the Federal

Rules of Civil Procedure requires the party to "expressly make the claim" and "describe the

nature of the documents, communications, or tangible things not produced or disclosed—and do

so in a manner that, without revealing information itself privileged or protected, will enable other

parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Likewise, Local Civil Rule 26.2 requires

a party asserting that a document is privileged to "identify the nature of the privilege (including

work product) which is being claimed." Local Civil Rule 26.2(a)(1). The local rule also requires

the party asserting the privilege to provide:

> (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter
> of the document; (iii) the date of the document; and (iv) the author of the document,
> the addressees of the document, and any other recipients, and, where not apparent,
> the relationship of the author, addressees, and recipients to each other . . . .

Local Civil Rule 26.2(a)(2)(A).

Failure to provide the information required by Rule 26 or Local Civil Rule 26.2 may

result in a waiver of privilege. Fed. R. Civ. P. 26 Advisory Committee's note to 1993

amendment ("To withhold materials without such notice is contrary to the rule, subjects the party

to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or

protection."); see In re SmithKline Beecham Corp., 243 F.3d 565 (Fed. Cir. 2000) (unpublished

table decision); Dorf & Stanton Commc'ns, Inc. v. Molson Breweries, 100 F.3d 919, 923 (Fed.

Cir. 1996); United States v. Constr. Prod. Research, Inc., 73 F.3d 464, 473–74 (2d Cir. 1996);

SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 167 (S.D.N.Y. 2014). In particular, a party

may waive a privilege "if it fails to assert it in a privilege log, but instead asserts a different

privilege." In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 299 (S.D.N.Y. 2003); see also Obeid v. Mack, No. 14 Civ. 6498, 2016 WL 7176653, at *2 (S.D.N.Y. Dec. 9, 2016). Furthermore, parties generally must "raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir. 1998); In re Honeywell, 230 F.R.D. at 299; see Yorkville Advisors, 300 F.R.D. at 165.

Accordingly, the Court must assess whether the information provided in Defendants' privilege log satisfies the requirements of Rule 26 and Local Civil Rule 26.2. When the exemplars were submitted for *in camera* review, Defendants had already supplied Plaintiffs with *five* different iterations of their privilege log. The many iterations of Defendants' log suggest that they have not heeded the admonition that parties should "raise all objections at once." In re DG Acquisition Corp., 151 F.3d at 81. The Court will not permit Defendants to continue raising new claims of privilege in subsequent versions of the log. See Yorkville Advisors, 300 F.R.D. at 165 (refusing to consider a revised privilege log that offered "new details pertaining to the subject matter, authors and recipients of certain documents"). Instead, the Court deems Defendants' fifth version of the privilege log (the "Fifth Log") to be the controlling version going forward. Any claims of privilege not raised in the Fifth Log are waived. See In re Honeywell, 230 F.R.D. at 299.

The Fifth Log frequently falls short of the requirements of Rule 26 and Local Civil Rule 26.2. The descriptions in the Fifth Log are often vague and incomplete, and in many cases, the information is blatantly incorrect. In their letter accompanying the exemplars submitted for *in camera* review, Defendants supply the Court with numerous corrections and details not included

in the Fifth Log. Defendants had never previously provided that information to Plaintiffs.[2]

Although this new information is illuminating, Defendants should have included the correct information and additional details in their Fifth Log (or preferably in the original version of the log). Plaintiffs needed that information to assess the claims of privilege. See Fed. R. Civ. P. 26(b)(5)(A); Local Civil Rule 26.2(a)(2)(A).

In assessing whether the withheld documents are privileged, the Court will rely on the Fifth Log. The Court will not consider the corrections and additional details included in Defendants' letter to the Court. Defendants waived any privilege that may have applied if the information in the letter had been properly set forth in the Fifth Log. See Yorkville Advisors, LLC, 300 F.R.D. at 167.

## B.  Work Product Immunity

Work product immunity "shields materials prepared in anticipation of litigation or for trial." ACLU v. U.S. Dep't of Justice, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015) (quoting Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997)); Fed. R. Civ. P. 26(b)(3); see also In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006). Three requirements must be met for work product protection to apply: "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." Yorkville Advisors, 300 F.R.D. at 159 (quoting In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)); see also In re EchoStar, 448 F.3d at 1301–02. A document does not need to be produced when it "can fairly be said to have been prepared . . . *because of* the prospect of litigation." United States

---

[2] In fact, after submitting the exemplars for *in camera* review, Defendants provided Plaintiffs with a *sixth* version of the privilege log (the "Sixth Log") but failed to update this sixth version with the corrections and additional details they had previously supplied to the Court.

v. Adlman, 134 F.3d 1194, 1203–04 (2d Cir. 1998) (emphasis added) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (3d ed. 1994)); accord Waymo LLC v. Uber Techs., Inc., 870 F.3d 1350, 1362 (Fed. Cir. 2017). On the other hand, the work-product doctrine does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. at 1202; see In re Google Inc., 462 F. App'x 975, 978 (Fed. Cir. 2012).

In addition, "the work product immunity requires a more immediate showing than the remote possibility of litigation." Garfinkle v. Arcata Nat'l Corp., 64 F.R.D. 688, 690 (S.D.N.Y. 1974); accord Litton Sys., Inc. v. Am. Tel. & Tel. Co., 700 F.2d 785, 827 n.53 (2d Cir. 1983); Montesa v. Schwartz, No. 12 Civ. 6057, 2016 WL 3476431, at *8 (S.D.N.Y. June 20, 2016). "[L]itigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 125 F.R.D. 51, 54 (S.D.N.Y. 1989) (quoting James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 143 (D. Del. 1982)); see also Schenectady Chems., Inc. v. Gen. Elec. Co., 19 Fed. R. Serv. 2d 1132 (N.D.N.Y. 1975) (holding that it was "doubtful" that negotiations over a licensing agreement "were 'in anticipation of litigation' since they occurred a number of years ago with no ensuing litigation").

Defendants have claimed that many of the withheld documents are covered by work product immunity because they were prepared in connection with various attempts to renegotiate the exclusive licensing agreement. ECF No. 285 at 21–23. These negotiations purportedly took place because Uretek raised concerns that Defendants were not complying with the exclusive licensing agreement. Id. at 22. But according to Defendants, similar contractual negotiations with

Uretek occurred again and again—in 2006, 2009, 2011, and 2013—and litigation never ensued after those negotiations failed. Id. at 62. Thus, Defendants have not demonstrated that there was a sufficiently real possibility of litigation such that documents prepared in connection with the licensing agreement negotiations are covered by work product immunity.

It appears the parties eventually entered a stand-still agreement wherein they agreed not to sue each other until May 2015. Id. at 24, 28. The Court concludes that the possibility of litigation was sufficiently immediate when the parties entered that stand-still agreement. During the discovery conference held on October 6, 2017, however, the parties' attorneys gave conflicting accounts of when the stand-still agreement was memorialized. Defendants claimed that the agreement was put in place in late 2013 or early 2014, whereas Plaintiffs stated that the parties entered the agreement in early 2015. Id. at 24, 28. Unless Defendants can produce evidence of an earlier agreement date, the Court will assume that the parties entered into the stand-still agreement in early 2015. Because the possibility of litigation was remote before the stand-still agreement, documents prepared before January 1, 2015, are not covered by work product immunity. On the other hand, any documents prepared on or after January 1, 2015, that the Fifth Log identifies as covered by work product immunity are presumptively protected by that immunity subject to any specific challenges by Plaintiffs.

C.    **Attorney-Client Privilege**

Attorney-client privilege applies only to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); accord In re EchoStar, 448 F.3d at 1300. This protection "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the

lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "But the privilege stands in derogation of the public's right to every man's evidence, and as an obstacle to the investigation of the truth; thus . . . [the privilege] ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (Friendly, J.) (internal citations and quotation marks omitted).

Thus, the attorney-client privilege "is triggered only by a client's request for legal, as contrasted with business advice." In re Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984). "[I]f the lawyer is serving as a business representative of his client, those functions that he performs purely in that capacity—such as negotiation of the provisions of a business contract or relationship—are not the source of a privilege." TVT Records v. Island Def Jam Music Grp., 214 F.R.D. 143, 147 (S.D.N.Y. 2003) (quoting Note Funding Corp. v. Bobian Inv. Co., No. 93 Civ. 7427, 1995 WL 662402, at *3 (S.D.N.Y. Nov. 9, 1995)); see In re Google, 462 F. App'x at 978.

In determining whether a communication involves legal or business advice, courts examine whether the "predominant purpose" of the communication was to render or solicit legal advice, defined as "the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re County of Erie, 473 F.3d at 419–20; MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l, No. 03 Civ. 1818, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005) (holding that e-mails from in-house counsel constituted business advice because counsel "never alluded to a legal principle in the documents nor engaged in legal analysis"); ECDC Envtl. v. N.Y. Marine & Gen. Ins., No. 96 Civ. 6033, 1998 WL 614478, at *9 (S.D.N.Y. June 4, 1998) ("An attorney's communication to a client reporting facts learned by the attorney from a third

party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client."). "The predominant purpose of a communication . . . should be assessed . . . in light of . . . the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." In re County of Erie, 473 F.3d at 420–21.

## II.  Application to Defendants' Privilege Log

Applying these principles, the Court conducted an *in camera* review of the disputed documents and reaches the following conclusions regarding the documents that Defendants seek to maintain as privileged:

### A.  Documents 64, 80, 186, and 498

The Fifth Log claims that Documents 64, 80, 186, and 498 are covered by work product immunity alone; it does not state that the attorney-client privilege applies. In their letter to the Court, Defendants have attempted to argue that the documents are covered by both work product immunity and attorney-client privilege. As discussed above, however, Defendants have waived any claims that the documents are covered by attorney-client privilege, and the Court will not consider the new privilege claims.

According to the Fifth Log, all of these documents were prepared in the early to mid-2000s, long before the stand-still agreement was put in place. Defendants' letter provides more recent dates for these documents, but because those dates were not included in the Fifth Log, the Court will not consider them now. During the discovery conference, counsel explained that the defense team relied on electronic metadata to generate the dates for their privilege logs and that the incorrect dates in the Fifth Log resulted from inaccuracies in that metadata. ECF No. 285 at 18. Such an error might be excusable if this was the first iteration of the privilege log. But

Defendants had numerous opportunities to correct these types of errors, and it seems they never took the time to assess carefully the accuracy of their logs. If Defendants had done so, many errors would have been readily apparent. For example, the Fifth Log states that Document 64 was prepared on July 4, 2000, and was covered by work product immunity. In July 2000, however, the U.S. Patent had not yet been issued, and Defendants had not signed the exclusive licensing agreement. Defendants were most certainly not anticipating litigation at that time. Thus, in reviewing the Fifth Log, it should have been obvious to Defendants that either the date in the Fifth Log was incorrect or the claimed privilege was not applicable.

Judging the documents based on the information provided in the Fifth Log, the Court concludes that Documents 64, 80, 186, and 498 were prepared well before there was a real and immediate possibility of litigation. The documents are not covered by the work product doctrine and must be produced.

**B.    Document 233**

The Fifth Log states that Document 233 was prepared on February 15, 2011. This predated the stand-still agreement by several years. Therefore, the document was prepared before there was a real and immediate threat of litigation, and work product immunity does not apply.

Document 233 consists of a list of questions and answers regarding the U.S. Patent. The Fifth Log indicates that the document was prepared by Mark Mizumoto, a member of YKK's intellectual property group. Importantly, the document does not interpret or apply any legal principles—it simply summarizes certain terms of the U.S. Patent. Moreover, there is no indication that the document's author was seeking legal advice of any kind. Because these descriptions could be prepared by a non-attorney and do not involve the interpretation or

application of legal authority, the document does not constitute legal advice or a request therefor. Document 233 is not protected by attorney-client privilege and must be produced.

### C.  Document 332

According to the Fifth Log, Document 332 was prepared on September 6, 2000, which was many years before there was a real possibility of litigation. Document 332 is not covered by work product immunity.

Document 332 consists of charts that describe the specifications of various zippers and the methods for producing them. The Fifth Log states that this is an internal document sent from YKK's fastening products group to YKK. It seems that a document such as this—describing the specifications and production methods of zippers—would frequently be prepared in managing and operating a zipper business. Defendants' claim that the predominant purpose of these materials somehow relates to seeking or giving legal advice strains credulity. The charts do not analyze or even allude to any legal principles, nor do they include any requests for advice of a legal nature. Accordingly, there is no reason to believe that the charts were made for the purpose of obtaining or providing legal advice. Document 332 is not covered by attorney-client privilege and must be produced.

### D.  Document 417

The Fifth Log states that Document 417 was prepared on July 4, 2000. Because that date falls many years before the stand-still agreement, work product immunity is inapplicable.

Document 417 consists of PowerPoint slides discussing jacket pricing, various proposals for defining the term "high-end," and strategies for contract negotiations with Uretek. Each slide also says "Confidential - for Settlement Discussion Purposes Only." Defendants argue that the slides are privileged because they discuss the position the company should take in a negotiation

and are informed by prior legal advice given by attorneys. But the slides bear no relation to legal advice from attorneys. Instead, the slides simply discuss how Defendants should approach the contract negotiations with Uretek, without analyzing or applying legal principles. In-house counsel's communications concerning the negotiation of a contract generally fall in the category of business advice. TVT Records, 214 F.R.D. at 147. Therefore, Document 417 is not protected by attorney-client privilege and must be produced.

### E.      Document 424

The Fifth Log indicates that Document 424 was prepared on July 31, 2008, which was long before the stand-still agreement was put in place. Work product immunity does not apply.

Document 424 consists of PowerPoint slides showing photographs of jackets along with the names and prices of those jackets. The Fifth Log states that this was an internal document sent from a member of YKK's legal department to YKK. But the document does not discuss or refer to any legal principles. The presentation is simply a compilation of factual information, seemingly collected from the internet, and it could have easily been prepared by a non-lawyer. Thus, the presentation does not involve legal advice and is not covered by attorney-client privilege. Defendants must produce Document 424.

### F.      Document 522

Document 522 is an inventor disclosure form. "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1307 (Fed. Cir. 2001). In particular, when an "invention record relates to an invention submitted for consideration for possible patent protection," the question of "whether the invention record is protected by the attorney-client privilege . . . is unique to patent law" and

is thus governed by Federal Circuit law. <u>In re Spalding Sports Worldwide, Inc.</u>, 203 F.3d 800, 804 (Fed. Cir. 2000); <u>see also</u> <u>In re Regents of Univ. of Cal.</u>, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."). Similarly, Federal Circuit law applies to the question of whether an inventor disclosure is covered by the work product doctrine. <u>Cf.</u> <u>In re MSTG, Inc.</u>, 675 F.3d 1337, 1341 (Fed. Cir. 2012) (noting that the Federal Circuit applies its own law to questions of whether materials relating to substantive patent law constitute protected work product).

According to the Fifth Log, the document was prepared on August 11, 2001. The parties entered the stand-still agreement many years later, and there was no real possibility of litigation in 2001. Therefore, work product immunity is not applicable.

With respect to attorney-client privilege, the Federal Circuit has stated that an invention record, such as the inventor disclosure form at issue here, "constitutes a privileged communication, as long as it is provided to an attorney 'for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding.'" <u>In re Spalding Sports</u>, 203 F.3d at 805 (quoting <u>Knogo Corp. v. United States</u>, No. 194-79, 1980 WL 39083, at *7 (Ct. Cl. Feb. 16, 1980)); <u>Carl Zeiss Jena GMBH v. Bio-Rad Labs., Inc.</u>, No. 98 Civ. 8012, 2000 WL 547047, at *1 (S.D.N.Y. May 4, 2000) (holding that "invention disclosure documents [were] protected in their entirety by the attorney-client privilege"). In their letter to the Court, Defendants contend that Document 522 was provided to counsel for the purpose of drafting a patent application for the invention disclosed on the form.

But the vague description of Document 522 in the Fifth Log does not make that purpose clear. The Fifth Log merely states that the document was an internal document sent from YKK's intellectual property group to YKK and was "prepared and/or reviewed at the request of counsel

regarding patent strategy." This is not enough information to enable Plaintiffs to assess the claim of privilege. Moreover, the Fifth Log does not identify a specific author or recipient, the type of document, or the subject matter of the document. Because the description does not comport with the requirements of Rule 26 and Local Civil Rule 26.2, Defendants have waived their claim of privilege, and Document 522 must be produced.

### G. Document 662

The Fifth Log indicates that Document 662 is covered by attorney-client privilege only. The document is an e-mail chain originating with a message sent from non-attorney Masayuki Sarumaru to John Castellano, who was then the General Counsel of YKK Corporation of America ("YCA"). Non-attorney Hiroshi Mitani then forwards Sarumaru's message to non-attorney Bryan Shibata.

In the original e-mail, Sarumaru asks for Attorney Castellano's legal opinion regarding the parties' rights and responsibilities under a proposed revision of the licensing agreement. Sarumaru's e-mail involves a request for legal advice and is covered by attorney-client privilege. Because the Fifth Log does not mention the communication between Sarumaru and Attorney Castellano, however, Defendants waived their claim of privilege with respect to the communication. The Fifth Log includes only a description of the e-mail between Mitani and Shibata. Neither of those individuals is an attorney, and Mitani's e-mail does not contain anything substantive. Mitani's e-mail is not covered by attorney-client privilege. Thus, Document 662 must be produced in its entirety.

### H. Document 713

According to the Fifth Log, Document 713 is covered solely by attorney-client privilege. This document is an e-mail chain originating with a message from Katsuya Yumoto, a non-

attorney member of YKK's legal department. Yumoto relays information to Sarumaru from Kari Moeller, an in-house attorney employed by YCA. Non-attorney Jack Sasaki later forwards the e-mail chain to YKK's document custodian, Yoshimine Kobayashi. Much of this e-mail exchange relates to renegotiating the terms of the exclusive licensing agreement. For example, Yumoto's e-mail summarizes provisions of a draft of the agreement. These summaries do not discuss or apply legal principles. Moreover, communications from in-house counsel regarding contract negotiations generally constitute business advice. <u>TVT Records</u>, 214 F.R.D. at 147. The summaries are not covered by attorney-client privilege.

One portion of Yumoto's e-mail discusses Attorney Moeller's guidance on how the company should conduct matters in light of its legal obligations under the proposed contract. Another excerpt alludes to Attorney Moeller's assessment of YKK's legal standing with respect to the existing contract. These statements were made in the context of business negotiations, but the predominant purpose of the statements undoubtedly was to render advice of a legal nature to the client. Thus, these statements are protected by attorney-client privilege.

Despite these valid privilege claims, however, the Fifth Log's description of Document 713 is incredibly vague. It simply states that this document was a "communication reflecting . . . counsel's thoughts and strategy regarding patent strategy." In addition, the description does not identify Moeller as the source of the legal advice, nor does it mention Yumoto, the only member of YKK's legal department involved in the communication. Without any reference to a specific member of the legal department, it was impossible for Plaintiffs to assess whether Defendants' claim of privilege was valid. Defendants waived their privilege claim by failing to comply with Rule 26 and Local Civil Rule 26.2. Document 713 must be produced.

## I.     Documents 4039, 4139, 4146, and 4193

These documents all consist of e-mail chains originating from Attorney Moeller. In each case, Attorney Moeller transmits a markup of a contract to non-attorney Sasaki, who subsequently communicates with other non-attorney employees regarding the business terms of the agreement.

The Fifth Log states that all of the documents are covered by attorney-client privilege, but also claims that Documents 4139 and 4193 are covered by work product immunity. According to the Fifth Log, Documents 4139 and 4193 were prepared on July 17, 2001, and February 22, 2002, respectively. These dates preceded the stand-still agreement by many years. Therefore, Defendants did not reasonably anticipate litigation when the documents were prepared, and work product immunity does not apply.

Turning to attorney-client privilege, the Court notes that all of these documents contain communications from in-house counsel. Nevertheless, Attorney Moeller does not provide legal advice of any kind—she simply transmits markups to company employees. As previously discussed, in-house counsel's communications regarding the negotiation of a contract generally constitute business advice, rather than legal advice. TVT Records, 214 F.R.D. at 147. Accordingly, Documents 4039, 4139, 4146, and 4193 are not privileged and must be produced.

## J.     Document 4245

The Fifth Log claims that Document 4245 is protected only by attorney-client privilege. This document consists of an e-mail chain wherein Attorney Moeller communicates information to non-attorney Shibata, who subsequently communicates with non-attorney Sasaki. In contrast to the previous group of documents, however, Attorney Moeller discusses her legal interpretations of certain contract terms and gives advice on how the company should proceed in

light of those interpretations. Such information clearly constitutes legal advice and is protected by attorney-client privilege. Shibata later relays Attorney Moeller's advice to Shibata, and that communication likewise falls within the scope of attorney-client privilege.

But once again, the Fifth Log's description of the document is sorely inadequate. The description fails to identify the type of document, and more importantly, it does not indicate that Attorney Moeller was one of the authors. Based on the sparse information in the Fifth Log, it would appear that this document is simply a communication from Shibata to Sasaki. There was no way for Plaintiffs to evaluate whether the document actually includes advice from an attorney. Accordingly, the Fifth Log does not comply with the requirements of Rule 26 and Local Civil Rule 26.2, and Defendants waived their claim of privilege. Document 4245 must be produced.

### K. Document 4929

The Fifth Log states that Document 4929 is covered by attorney-client privilege only. The document consists of an e-mail chain originating from Yancy Harada, a non-attorney member of YCA's legal department. Harada e-mails Shibata regarding Attorney Castellano's interpretation of the exclusive licensing agreement and the legal implications of that interpretation. Without a doubt, this constitutes privileged legal advice from Castellano. Shibata later transmits the privileged information to Sasaki.

Nonetheless, the Fifth Log does not adequately describe the document. The description of Document 4929 is vague and does not pinpoint the type of document. Moreover, similar to previous documents, the description does not identify Attorney Castellano or Harada. Without mention of any specific member of the legal team, Plaintiffs could not effectively evaluate

whether Defendants' claim of privilege was a valid one. The privilege is waived, and Document 4929 must be produced.

### L.       Document 8745

According to the Fifth Log, Document 8745 is protected solely by attorney-client privilege. This document consists of minutes from a 2005 meeting of YKK's competitors survey committee. Defendants seek to redact one line of text that refers to patent compliance monitoring. The sentence does not involve the interpretation or application of any legal principles. On the contrary, it merely discusses compliance efforts that appear to be part of the ordinary course of business. Document 8745 is not privileged and must be produced in unredacted form.

### M.       Document 9548

The Fifth Log indicates that Document 9548 is covered only by attorney-client privilege. This document is an e-mail chain containing a message from Yuki Abe, a non-attorney member of YKK's legal department, to several company employees. Non-attorney Mitani forwards the message to non-attorney Sarumaru. Abe later e-mails Mitani to provide additional advice on the matter. In these e-mails, Abe gives guidance about the company's legal obligations under the exclusive licensing agreement and discusses how the company should operate in light of those obligations. These communications are certainly legal in nature and thus are protected by attorney-client privilege. Moreover, although Abe is not an attorney, documents prepared by non-legal staff under an attorney's supervision are protected to the same extent as documents prepared by the attorney himself or herself. United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.).

The Fifth Log's description of Document 9548 is somewhat vague and does not specifically identify the type of document. But the Fifth Log does explain that this is a communication between Abe and Mitani and identifies the other e-mail recipients, including Sarumaru. The Fifth Log also notes that the communication involves attorney advice regarding rights under the exclusive licensing agreement. Plaintiffs aptly point out that the Fifth Log identifies this document as a communication "with" an attorney, which is an inaccurate description given that Abe is not an attorney. The Court agrees that Defendants should have been more careful and precise in describing this document, but such an oversight does not constitute a waiver of the privilege claim. Because the Fifth Log correctly identifies Abe as the author, it is sufficiently clear that this document was prepared by a member of YKK's legal department based on the advice of legal counsel. The entirety of Document 9548 may be withheld.

### N.    Document 11084

Defendants have withdrawn their claim of privilege with respect to Document 11084. Therefore, the document must be produced in its entirety.

## CONCLUSION

This is the third time the Court has conducted an *in camera* review of documents withheld by Defendants. Although some of the exemplars in this latest set are privileged, Defendants largely failed to provide adequate descriptions of the documents in their Fifth Log as required by Rule 26 of the Federal Rules of Civil Procedure and Local Civil Rule 26.2. Moreover, Defendants have belatedly sought to claim attorney-client privilege for several of the exemplars, even though the Fifth Log does not assert the documents are covered by that privilege. Defendants have waived those claims. The Court concludes that Defendants improperly withheld or inadequately described all but one of the exemplars submitted for *in*

*camera* review. Defendants may withhold Document 9548, but they are ordered to produce the other 19 documents in full and unredacted form.

Defendants are further ordered to review immediately the Fifth Log and all of the other documents they have withheld and produce additional documents in accordance with this Order by November 3, 2017. To assist Defendants in this endeavor, the Court summarizes the Order's principal conclusions as follows: (1) the Fifth Log controls with respect to all outstanding privilege claims[3]; (2) Defendants are not permitted to assert new claims of privilege or further revise their privilege log to correct the numerous deficiencies; (3) Defendants must produce all documents that are listed in the Fifth Log as predating January 1, 2015, except to the extent the Fifth Log adequately asserts attorney-client privilege with respect to those documents; (4) subject to specific challenges by Plaintiffs, Defendants may presumptively withhold any documents that are listed in the Fifth Log as dated on or after January 1, 2015, and that are identified as covered by work product immunity in the Fifth Log; (5) in-house counsel's communications concerning the negotiation of a contract generally fall in the category of business advice and are not protected by the attorney-client privilege; and (6) Defendants must produce all documents for which the descriptions in the Fifth Log fail to comply with the requirements of Local Civil Rule 26.2, including those for which the descriptions fail to describe the subject matter with specificity or omit reference to a specific attorney or specific member of the legal department.

Finally, Plaintiffs are granted leave to file a motion for sanctions in the form of an award of attorneys' fees incurred in reviewing and litigating issues related to Defendants' Fifth Log. Plaintiffs may file such motion, supported by a memorandum of law not to exceed 10 double-

---

[3] To be clear, any documents that were removed from the Sixth Log must also be produced. ECF No. 285 at 16. Defendants cannot withhold those documents simply because they were included in the Fifth Log.

spaced pages and an attorney affidavit with exhibits, by no later than Friday, November 3, 2017.

Defendants' opposition shall be filed no later than Friday, November 10, 2017, by memorandum of law not to exceed 10 double-spaced pages. No reply brief is requested.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      October 24, 2017
              New York, New York