**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AU NEW HAVEN, LLC, and TRELLEBORG COATED SYSTEMS US, INC., | Civil Action No. 1:15-CV-03411 (GHW) |
| Plaintiffs, | |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR CLARIFICATION AND FOR RECONSIDERATION IN PART** |
| YKK CORPORATION et al., | |
| Defendants. | November 3, 2017 |

## I.  Introduction

On October 24, 2017, Magistrate Judge Netburn ordered Defendants (collectively, "YKK") to produce certain documents described in Defendants' privilege log in accordance with directions the Order delineated. Dkt. No. 287 (the "Order"). Defendants are complying with the terms of that Order by producing the documents previously withheld that the Order requires. Accordingly, contemporaneously with this motion YKK will produce 1,827 documents of the 2,869 document previously listed in YKK's privilege log.

This motion raises two issues concerning obedience to the Order's terms.  First, out of an abundance of caution, Defendants seek clarification with respect to a set of three nearly identical documents that include a document that may be accurately characterized as an outside counsel presentation.  That document was properly identified, separately, as attorney-client privileged under the Order. A version of that properly-logged document was also incorporated into three larger compilations of presentations that may be separately subject to production under the Order, but YKK believes in good faith that the properly-logged content should nevertheless retain the asserted privilege.  Second, Defendants also request reconsideration with respect to the date for identifying work product protected documents for but five of the so-identified documents on the privilege log. As we  describe more fully herein, these five documents are dated in the November 2013 timeframe.  A reading of those documents, however, makes manifest that each was prepared in anticipation of the litigation filed in 2015.  Read with an understanding of the issues, they each deserve the work product designation and privilege from discovery that YKK asserted.  We accordingly request in the interest of justice that these

documents be permitted to maintain their privilege and not be produced.[1] In no other way does YKK seek reconsideration.

## II.  Clarification Regarding Portion of Documents Appropriately Logged in Defendants' Privilege Log

In 2014, Jim Reed, then the Chief Legal Counsel of YKK Corporation of America ("YCA"),[2] and Jim Ewing, a since-retired partner with Kilpatrick Townsend & Stockton LLP, then acting as YKK's outside litigation counsel, prepared a presentation directed at the dispute between the Parties (the "Outside Counsel Presentation"). The Outside Counsel Presentation was properly logged as both a work product and attorney-client privileged communication on the privilege log identifying both Attorneys Reed and Ewing as authors.  (*See* Document 505 on Defendants' privilege log).[3]

The Outside Counsel Presentation is entitled "Uretek Plan"[4] and proposes strategies to address the Uretek controversy from June 2014 forward. A Japanese-language summary of the English slides prepared by Attorneys Reed and Ewing, to enable presentation to those YKK employees who are not fluent English speakers, is also part of the Outside Counsel Presentation properly withheld as Document 505. The Outside Counsel Presentation contains, embodies and provides legal advice addressing the license agreement at issue in this litigation, various litigation strategies, the potential impact of litigation and its outcomes on YKK's business, and the analysis of potential litigation outcomes and their probabilities. Production to Plaintiffs of that document would therefore be highly prejudicial to YKK.

---

[1] All relevant documents are being separately submitted to the Court for *in camera* review.

[2] This Court previously ruled that otherwise privileged communications transmitted between YKK entites such as YCA and YKK Corporation maintain their privilege. Dkt. No. 178.

[3] All referenced privilege log entries may be found in the excerpts of YKK's privilege log, which is attached hereto as Exhibit A.

[4] Uretek was the name of Plaintiff AU New Haven's predecessor.

YKK seeks clarification respecting this document because the Outside Counsel Presentation was itself subsequently incorporated into three, other, separate documents as subparts of even larger presentations.  These larger presentation documents were identified in Defendants' privilege log as Documents 340-342. Documents 340-342 appear to be different revisions of the same document, and are thus nearly, but not precisely identical. The Outside Counsel Presentation is one of the "sub-presentations" at the end of each of these documents.[5] Defendants believe that based on the proper logging of the Outside Counsel Presentation (Document 505), its incorporation into Documents 340-342 did not destroy the privilege under the Court's Order.  The balance of Documents 340-342, that is with all but those pages that correspond to Document 505, have been produced. Those pages constituting the Outside Counsel Presentation have remained redacted.

According to the privilege log, the author of Documents 340-342 was listed as "Member of YKK Legal Department" because the name of the person who combined the sub-presentations was neither clear from the metadata nor otherwise identified,  but the compiler of this document was unquestionably acting under the direction of Attorney Reed, YCA's then-Chief Legal Counsel and one of the authors of the Outside Counsel Presentation.[6]

Because the Outside Counsel Presentation was properly logged as attorney-client and work product privileged as Document 505, it may be withheld in its entirety under this Court's

---

[5] The English portion of the documents, prepared directly by Attorneys Reed and Ewing, is identical in each document, with minor formatting changes such as color or text justification. There are some minor formatting or slide-order changes between drafts of the Japanese portion of the Outside Counsel Presentation, but the content (a summary of the English-language slides prepared by Attorneys Reed and Ewing) remains the same.

[6] The fact that no specific individual was identified (nor could have been) as the compiler of documents 340-342 was the only reason Documents 340-342 would be unredacted under this Court's Order. YKK believes however that production of these documents without redacting the Outside Counsel Presentation would be inconsistent with the spirit and intention of the Order and would be manifestly prejudicial to YKK as well as the justice of the privilege assertion.  The rest of the log is in full compliance with that Order. Every other document whose log entry does not identify a specific lawyer or member of the legal department is being produced in its entirety in accordance with the Court's Order, despite their privilege or work product status. The proper logging of the Outside Counsel Presentation as Document 505 renders this document exceptional.  This is why YKK brings this to the Court's attention for clarification.

Order, and there is no prejudice to Plaintiffs in the redactions to Documents 340-342 based on any inability to evaluate YKK's claim of privilege, which Defendants understand was a concern in ordering the release of certain of YKK's documents. We accordingly ask the Court to regard YKK's continued handling of this document as consistent with and obedient to the Order by being withheld from production and maintain the corresponding redactions to Documents 340-342.

**III.** **Appropriately-Logged Work Product Documents, dated *Prior* to 2015**

In the Order, this Court held that, for purposes of the privilege log, no document dated prior to January 1, 2015 should be considered work product. Dkt. No. 287. YKK nevertheless requests that the Court reconsider that date with respect to five documents on YKK's privilege log. Documents 51, 58, 67, 70, and 74, are all logged as work product, are all logged as being created within two weeks of each other in November of 2013, and are all logged as being created by a specific lawyer or other member of the Legal Department. As further explained below, and as this Court will see on *in camera* review, these documents deserve the designation and protection of the work product privilege. In other words, these documents were both properly withheld from production and were properly logged.

For this reason, Defendants request that the Court reconsider its ruling respecting the date of permissible work product privilege with respect to these five documents and thereby continue to permit their non-production to the Plaintiffs. There would be no prejudice to Plaintiffs if this relief were granted, as the documents were properly logged.  Furthermore, Plaintiffs themselves claim work product on documents dated much earlier than November 2013, including May 15, 2012 (Log No. 2), April 18, 2007 (Log No. 9),  July 16, 2007 (Log. No. 19), October 13, 1997 (Log No. 31), June 18, 2008 (Log No. 34), and December 21, 2007 (Log No. 36), and on undated

documents (Log Nos. 8, 24, 35, 37-41) on just the first page of their privilege log. *See* Plaintiffs' Revised Privilege Log, attached as Ex. B hereto. Many more examples may be found throughout the subsequent pages of Plaintiffs' privilege log. *Id.*

Document 51: Document 51 is a memo in which Key Wynn, an attorney at YCA who is intimately involved in the current litigation, answers follow-up questions from a research memo by Melissa Ewing, an attorney with Counsel on Call who was employed by YKK to give legal advice, for Jim Reed, then the Chief Legal Counsel of YCA. Those questions relate to issues of contract interpretation and how they are decided *by judge or jury at trial*, demonstrating that the memo logged as Document 51 was prepared in anticipation of litigation. Defendants' privilege log entry for this document lists the date as November 14, 2013, which date is reflected on the face of the document, the author as Ms. Ewing, and the subject matter of the document as "various issues of contract law." Because it was prepared in anticipation of litigation, Document 51 was properly logged as work product. YKK asks the Court to reconsider this Document, irrespective of the fact that it was created prior to January 2015, and permit its continued withholding as privileged.

Document 58: Document 58 contains a calculation of potential damages assessments in a litigation, assuming (among other things) sales from 2009-2014. The calculation indicates anticipation of a litigation filed in early 2015,[7] which is when the Tolling Agreement between the parties was executed before the instant litigation was ultimately filed. Document 58 was logged as created by Jim Reed, then the Chief Legal Counsel of YCA, on November 14, 2013, as reflected in the metadata for the document. There is no name or date on the face of the document, but there is no reason to believe that the metadata is incorrect in this instance. Indeed, the date

---

[7] The Statute of Limitation on breach of contract is 6 years and the federal patent statutes limit collection of damages for patent infringement to the 6 years before the suit is filed. Thus for both causes of action, a Plaintiff who files suit in 2015 can only collect damages starting in 2009.

range contained in the document supports the metadata date of late 2013. The subject matter of this document is logged as "negotiation strategy" because the range of potential damages exposure during the then-threatened, now extant, lawsuit was also being used to determine what an appropriate offer might be to avoid the threatened litigation and to advise YKK regarding the potential risks of litigation were negotiations to fall through. Because Document 58 was prepared in anticipation of litigation, it was accurately and appropriately logged as work product. YKK asks the Court to reconsider this Document and continue to permit its withholding as a proper exercise of the work-product privilege.

Document 67: Document 67 is an analysis of which claims Plaintiffs might bring if they followed through on their threats of litigation, the potential damages associated with those claims, YKK's potential defenses to Plaintiffs' claims, and potential legal strategies for dealing with those claims. This document demonstrates the fact that documents created at least as early as November 2013, ostensibly discussing negotiation strategy, were also prepared in anticipation of litigation, as it explicitly discusses the potential for negotiation as a means of avoiding the instant litigation. *See, e.g.* p. 29-30 of Document 67 submitted *in camera*. For example, and without waiving any privilege, page 26 of the document relates that "Uretek will likely sue YKK soon," demonstrating that it was prepared in anticipation of litigation. Document 67 is logged as being a confidential presentation prepared by or for counsel regarding litigation strategy, negotiation strategy, and rights under the license agreement, authored by Jim Reed on November 5, 2013. Again, there is no name or date on the face of the document but, in this instance, there is no reason to doubt the accuracy of the metadata that identifies Mr. Reed as the author. This document was thus properly and appropriately logged as work product, and YKK asks the Court

6

to reconsider its ruling with respect to this Document, irrespective of the fact that it was created prior to January 2015.

Document 70: The title of the presentation contained in Document 70 is "Uretek License Legal Analysis (Q&A)" and, just as Document 67, is focused on YKK's rights under the license agreement at issue in this litigation, potential claims Plaintiffs might bring if they follow through on their litigation threats, and the potential damages, defenses, and legal strategies associated with those claims.[8] The presentation at Document 70 further addresses such litigation-specific questions such as who the potential defendants would be, which court the lawsuit would be brought in, jurisdiction, and whether issues would be tried by judge or jury. This document was thus clearly prepared in anticipation of litigation. Document 70 is logged as a confidential presentation prepared by or for counsel regarding rights under the license agreement, created by Jim Reed on November 5, 2013. The document itself records that it was created by Jim Reed on that date. This document was properly and appropriately logged as work product, and YKK accordingly seeks reconsideration of this Document to continue its withholding on the proper assertion of privilege.

Document 74: Document 74, just as Documents 67 and 70, discusses YKK's rights under the license agreement at issue in this litigation, whether certain sales of certain PU zippers might be alleged to be a breach of that license and/or patent infringement, potential claims Plaintiffs might bring as well as other details of the potential litigation, defenses and other legal strategies for addressing Plaintiffs' threatened claims, potential damages measures available to Plaintiffs, and the potential for negotiations to prevent the litigation YKK anticipated Plaintiffs would, and did, file. This document is logged as a confidential presentation prepared by or for counsel

---

[8] Indeed, much of the content of Documents 67 and 70 is identical, suggesting Document 67 was a draft that was turned into the more formal presentation at Document 70.

regarding litigation strategy, negotiation strategy, rights under the license agreement, and sales of PU zippers, authored by Jim Reed on November 5, 2013. This document does not have a cover page listing an author or date, but there is no reason to doubt the accuracy of the metadata, as the contents of Document 74 are nearly identical to the contents of Documents 67 and 70, which had identical metadata that appears to be accurate, based on the face of Document 70. As with Documents 67 and 70, Document 74 was therefore appropriately and properly logged as work product and should be exempt from disclosure. YKK accordingly asks the Court to reconsider this document with respect to the assertion of work product privilege, irrespective of the fact that it was created *before* January 2015.

As demonstrated above, and evident on the face of the documents, Documents 51, 58, 67, 70, and 74 were prepared in anticipation of litigation and were properly and accurately logged as work product. YKK accordingly asks the Court to reconsider its ruling respecting the date cutoff for work product and permit the continued withholding of these documents on the basis of the asserted privilege.

## IV. <u>Conclusion</u>

For the reasons stated above, Defendants request reconsideration and clarification of this Court's Order at Dkt. No. 287 as it pertains to Defendants' Privilege Log Document Nos. 51, 58, 67, 70, and 74 and portions of Document Nos. 340-342.

By:   /s/ *Frederick L .Whitmer*
Frederick L. Whitmer
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036
Tel.: (212) 775-8700
Fax: (212) 775-8800
Email: fwhitmer@kilpatricktownsend.com

Michael Bertelson
Russell Korn
David Reed
Amanda Brouillette
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA  30309-4528
Email: mbertelson@kilpatricktownsend.com
Email: rkorn@kilpatricktownsend.com
Email: dreed@kilpatricktownsend.com
Email: abrouillette@kilpatricktownsend.com


*Attorneys for Defendants YKK Corporation et al.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2017, a true and correct copy of the

foregoing DEFENDANTS' MOTION FOR RECONSIDERATION IN PART was filed

electronically with the Court's CM/ECF system and was thereby served on all counsel of record

upon the transmission of the Notice of Electronic Filing.


Dated: November 3, 2017                                 /s/ *Frederick Whitmer*
                                                        Frederick Whitmer