**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**AU NEW HAVEN, LLC, et al.,**

                     **Plaintiffs,**          15-CV-03411 (GHW)(SN)

          -against-                 **OPINION AND ORDER**

**YKK CORPORATION, et al.,**

                     **Defendants.**
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

On October 24, 2017, the Court issued an Opinion and Order holding that Defendants had "failed to remedy the many deficiencies in their privilege log and document production." ECF No. 287 at 1. The Court ordered Defendants to produce 19 out of 20 documents that were submitted for *in camera* review. Id. at 19–20. The Court also directed Defendants to review the fifth iteration of their privilege log (the "Fifth Log") and all of the documents they had withheld and produce additional documents in accordance with the guiding principles the Court had established. Id. at 20. Defendants have now submitted a motion for reconsideration and clarification of the Court's October 24, 2017 Opinion and Order. ECF No. 293. For the reasons stated below, Defendants' motion for reconsideration is GRANTED in part and DENIED in part, and their motion for clarification is GRANTED.

In addition, in the October 24, 2017 Opinion and Order, the Court granted Plaintiffs leave "to file a motion for sanctions in the form of an award of attorneys' fees incurred in reviewing and litigating issues related to Defendants' Fifth Log." ECF No. 287 at 20. Plaintiffs have now filed a motion for attorneys' fees. ECF No. 292. Plaintiffs' motion for attorneys' fees is

GRANTED in part and DENIED in part. Plaintiffs are awarded $20,087 in attorneys' fees and $325.89 in expenses.

## DEFENDANTS' MOTION FOR RECONSIDERATION

Motions for reconsideration under Local Civil Rule 6.3 are governed by the same standard as motions under Federal Rules of Civil Procedure 59(e) and 60(b). In re Facebook, Inc., IPO Sec. & Derivative Litig., 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), aff'd sub nom. Lowinger v. Morgan Stanley & Co., 841 F.3d 122 (2d Cir. 2016). "[A] court may grant reconsideration where the party moving for reconsideration demonstrates an 'intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id. (quoting Schoolcraft v. City of New York, 298 F.R.D. 134, 136 (S.D.N.Y. 2014)). A motion for reconsideration must be accompanied by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civil Rule 6.3.

In the October 24, 2017 Opinion and Order, the Court held that documents Defendants or their counsel prepared before January 1, 2015, are not covered by work product immunity because the possibility of litigation was too remote before that date. ECF No. 287 at 7. Defendants now ask the Court to "reconsider that date with respect to five documents on [their] privilege log." ECF No. 294 at 5. The Fifth Log lists Documents 51, 58, 67, 70, and 74 as work product, identifies specific attorneys who purportedly prepared them, and states that they were prepared in November 2013. ECF No. 294-1 at 2. Defendants contend that "these documents were both properly withheld from production and were properly logged"; therefore, they ask the Court to permit them to continue withholding the documents. ECF No. 294 at 5. Defendants are essentially asking the Court to conduct another *in camera* review of documents. The Court is

hesitant to engage in this exercise again, particularly in light of the fact that the Court has already reviewed exemplars *in camera* on three prior occasions. Nevertheless, the Court will entertain Defendants' request under these limited circumstances to prevent manifest injustice.

As discussed in the Court's previous opinions and orders, work product immunity "shields materials prepared in anticipation of litigation or for trial." ACLU v. U.S. Dep't of Justice, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015) (quoting Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997)). "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (quoting In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)); see also In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1301–02 (Fed. Cir. 2006). A document may be withheld when it "can fairly be said to have been prepared . . . because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1203–04 (2d Cir. 1998) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (3d ed. 1994)); accord Waymo LLC v. Uber Techs., Inc., 870 F.3d 1350, 1362 (Fed. Cir. 2017). But "litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 125 F.R.D. 51, 54 (S.D.N.Y. 1989) (quoting James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 143 (D. Del. 1982)).

In addition, when a party withholds documents based on work product immunity, Federal Rule of Civil Procedure 26 requires the party to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other

parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Local Civil Rule 26.2 also requires the party asserting the privilege to describe:

> (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . . .

Local Civil Rule 26.2(a)(2)(A). Failure to provide the information required by Rule 26 or Local Civil Rule 26.2 may result in a waiver of privilege. Fed. R. Civ. P. 26 Advisory Committee's note to 1993 amendment; In re SmithKline Beecham Corp., 243 F.3d 565 (Fed. Cir. 2000) (unpublished table decision); Dorf & Stanton Commc'ns, Inc. v. Molson Breweries, 100 F.3d 919, 923 (Fed. Cir. 1996); United States v. Constr. Prod. Research, Inc., 73 F.3d 464, 473–74 (2d Cir. 1996); Yorkville Advisors, 300 F.R.D. at 167.

Document 51 is a memorandum from Key Wynn, an attorney at YKK Corporation of America ("YCA"), to Jim Reed, who was then the Chief Legal Counsel of YCA. ECF No. 294 at 6. The memorandum examines the roles of judges and juries in determining the meaning of ambiguous contract terms and also discusses who authored the exclusive licensing agreement at issue in this case. Id. The memorandum appears to have been prepared in anticipation of litigation and may well be covered by work product immunity. But the Fifth Log states that the document was prepared by Melissa Ewing, which is false. By failing to provide accurate information required by Local Civil Rule 26.2, Defendants waived any claim that the document was covered by work product immunity. Document 51 must be produced.

Document 58 contains calculations of potential damages that might be imposed by a judge and jury if Defendants were sued in connection with their sales of polyurethane zippers. ECF No. 294 at 6. The Fifth Log states that the document was prepared by Attorney Reed on November 14, 2013, and identifies it as a "[c]onfidential document reflecting attorney input

4

regarding negotiation strategy." ECF No. 294-1 at 2. According to their motion for reconsideration, Defendants described the document as relating to "negotiation strategy" because the calculations were used to assess what amount Defendants should offer to Plaintiffs in attempt to avoid litigation. ECF No. 294 at 7. But this is precisely the type of after-the-fact explanation the Court rejected in the October 24, 2017 Opinion and Order. ECF No. 287 at 5. The Court will rely solely on the Fifth Log's description and will not consider the additional context provided in Defendants' recent motion papers. See id. Document 58 itself makes no mention of negotiations and gives no indication that the calculations were used in formulating an offer to avoid threatened litigation. Thus, "negotiation strategy" is not an apt description of the document's subject matter. The description is vague and does not provide sufficient information to enable other parties to assess the claim of privilege. Moreover, even if the document is viewed as relating to "negotiation strategy," this phrase suggests that the document concerns negotiations, rather than litigation, undermining Defendants' claim that it constitutes work product. Either way, Defendants waived any claim of work product immunity by failing to provide an adequate description of the document in the Fifth Log. Document 58 must be produced.

Document 67 consists of PowerPoint slides analyzing the claims Plaintiffs might bring if they initiated litigation against Defendants in connection with the exclusive licensing agreement, the potential damages associated with those claims, Defendants' potential defenses, and other legal strategies Defendants could utilize. Id at 7. The Fifth Log states that the document was prepared by Attorney Reed on November 5, 2013, and describes the document as a "presentation" relating to "litigation strategy," "negotiation strategy," and "rights under the license agreement." ECF No. 294-1 at 2. This presentation seems to have been prepared because of the prospect of litigation, and its analysis suggests that the possibility of litigation was real

when it was prepared. The document is covered by work product immunity. Moreover, the description in the Fifth Log appears to describe the document accurately and fairly specifically. Document 67 was adequately described in the Fifth Log, and Defendants may continue to withhold it.

Document 70 is a PowerPoint presentation prepared by Attorney Reed on November 15, 2013. ECF No. 294 at 8. The document discusses Plaintiffs' possible claims against Defendants in connection with the exclusive licensing agreement as well as potential damages, defenses, and legal strategies associated with those claims. Id. The Fifth Log accurately identifies the document's author and date and describes the document as a "presentation . . . regarding rights under the license agreement." ECF No. 294-1 at 2. The presentation appears to have been prepared because of a real possibility of litigation. Thus, the document constitutes work product. In addition, the Fifth Log describes the presentation and its subject matter with accuracy and relative specificity. Document 70 is adequately described in the Fifth Log and may be withheld.

Document 74 consists of PowerPoint slides discussing Plaintiffs' potential claims against Defendants with respect to the exclusive licensing agreement and Defendants' sales of polyurethane zippers. ECF No. 294 at 8–9. The document also discusses litigation strategies Defendants might use in connection with those potential claims. Id. The Fifth Log indicates that Attorney Reed prepared the presentation on November 5, 2013, and describes the document as a "presentation" relating to "litigation strategy," "negotiation strategy," "rights under the license agreement," and "sales of PU zippers." ECF No. 294-1 at 2. Again, the presentation seems to have been created because of a real threat of litigation and is therefore covered by work product immunity. Furthermore, the description in the Fifth Log is sufficiently accurate and specific. Defendants may continue to withhold Document 74.

In sum, Defendants' motion for reconsideration is GRANTED in part and DENIED in part. Defendants must produce Documents 51 and 58 immediately, but they may continue to withhold Documents 67, 70, and 74. To be clear, this decision does not enable Defendants to withhold other documents prepared before January 1, 2015, on the basis of work product immunity. This was Defendants' one opportunity to make arguments to the Court that documents predating January 1, 2015, were covered by work product immunity. The Court is allowing a limited exception to its prior ruling that is solely applicable to Documents 67, 70, and 74, but the October 24, 2017 decision remains in effect with respect to all other documents listed in the Fifth Log and any other privilege logs Defendants have previously produced.

## DEFENDANTS' MOTION FOR CLARIFICATION

A decision to clarify an order previously issued falls "within the sound discretion of the district court." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 126 F. Supp. 2d 328, 334 (S.D.N.Y. 2001). "Clarifications of orders previously issued . . . add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous." N.A. Sales Co. v. Chapman Indus., 736 F.2d 854, 858 (2d Cir. 1984).

"Defendants seek clarification with respect to a set of three nearly identical documents that include a document that may be accurately characterized as an outside counsel presentation." ECF No. 294 at 2. Defendants contend that the original outside counsel presentation "was properly identified, separately, as attorney-client privileged" in the Fifth Log. Id. Thus, they argue that the presentation should be redacted from the three other documents as well. Id. at 3–5. Plaintiffs have been almost entirely unhelpful in their opposition to Defendants' motion for clarification. Instead of responding to the arguments raised in Defendants' motion, Plaintiffs raise a variety of new disputes relating to the production of documents and the interpretation of

the Court's previous orders. To avoid further disputes, the Court will provide clarification on a few important issues. Defendants' motion for clarification is GRANTED.

**I.     Outside Counsel Presentation**

Document 505 consists of a PowerPoint presentation that was prepared in 2014 by Attorney Reed, who was then YCA's Chief Legal Counsel, and Attorney Jim Ewing, who was Defendants' outside litigation counsel at the time. See ECF No. 294 at 3. Document 505 was properly withheld pursuant to attorney-client privilege and was adequately described in the Fifth Log. See id. After Attorneys Reed and Ewing prepared the PowerPoint presentation, it was "subsequently incorporated into three, other, separate documents"—Documents 340–342—"as subparts of even larger presentations." Id. at 4. But instead of identifying Attorneys Reed and Ewing as authors of Documents 340–342, the Fifth Log merely states that these documents were prepared by a "member of YKK Legal department." ECF No. 294-1 at 2. Defendants argue that the PowerPoint presentation from Document 505 should be redacted from Documents 340–342, even though the privilege log entries for those documents did not specify the attorneys or members of the legal department who prepared them. ECF No. 294 at 3–5.

Defendants argue that there was no way for them to identify the specific members of the legal department who were involved in preparing Documents 340–342. ECF No. 294 at 4 n.6. But Defendants have now determined that Documents 340–342 include a presentation drafted by Attorneys Reed and Ewing. Id. at 3. Thus, if Defendants had more carefully reviewed their documents and prepared their privilege log, they could have identified at least some of the individual attorneys involved in creating Documents 340–342.

Nevertheless, the Court is satisfied that the substance of Document 505 was adequately described in the Fifth Log. Defendants clearly and accurately described the original PowerPoint

presentation, its authors, and its content. The fact that they did not identify the same information for Documents 340–342 is certainly not ideal, but this shortcoming does not mean that Defendants entirely waived their claim of privilege with respect to the original PowerPoint presentation. To hold otherwise would elevate form over function. Defendants may produce Documents 340–342 with the PowerPoint presentation from Document 505 redacted.

## II. Privilege Log Versions

Next, the parties have explained to the Court that Defendants' Fifth Log did not include all of the documents Defendants have withheld as privileged. ECF No. 299 at 3. It seems the Fifth Log was intended to supplement, rather than replace, earlier versions of Defendants' privilege log. ECF No. 299 at 3; ECF No. 302 at 6. Documents listed in the second iteration of Defendants' privilege log (the "Second Log") were not incorporated into the Fifth Log. ECF No. 299 at 3; ECF No. 302 at 6. Yet Defendants have continued to withhold documents listed in the Second Log—and apparently have not applied the Court's October 24, 2017 Opinion and Order to the documents listed in the Second Log—based on the understanding that the Court had previously ruled on all of the privilege claims in the Second Log. ECF No. 299 at 3.

This issue apparently came to Plaintiffs' attention shortly after the October 6, 2017 conference. Id. at 2–3. At that time, the parties should have written to the Court to explain that the documents listed in the Second Log were not included in the Fifth Log and that Defendants maintained that all of the remaining documents listed in the Second Log had been properly withheld as privileged. Instead, the parties remained silent, and as a result, the Court issued its October 24, 2017 Opinion and Order based on the incorrect understanding that the Fifth Log contained a complete list of all privilege claims.

To be clear, the guiding principles established in the Court's prior orders did not apply to discrete privilege logs or sets of documents. The Court has repeatedly directed Defendants to review all of the documents in their privilege log and produce documents in accordance with the Court's orders. In each case, the Court's directions were based on the assumption that the latest version of the privilege log listed all outstanding claims of privilege. The parties must apply *all* of the Court's rulings in this matter to *all* of the documents Defendants have withheld. Any documents that should have been produced under principles established in any prior order of the Court must be produced immediately.

Moreover, in order to ameliorate the privilege log issue, within three weeks of the date of this Opinion and Order, Defendants are ORDERED to produce a single final version of the privilege log (the "Final Log") that lists all of the documents for which they maintain privilege claims. In preparing this Final Log, Defendants may not add any documents that were not included in the Second and Fifth Logs and may not change the descriptions used in those two privilege logs. If a document is listed in both the Second and Fifth Logs, the description in the Fifth Log shall be used in the Final Log and shall be controlling. Any documents not listed in the Final Log must be produced within three weeks of this Opinion and Order.

### III. Vague Privilege Log Descriptions

Finally, Plaintiffs have interpreted the Court's October 24, 2017 Opinion and Order to hold that the phrase "litigation strategy" is impermissibly vague in all circumstances. ECF No. 299 at 5. Plaintiffs' interpretation is incorrect. Any phrase used in Defendants' privilege log must be viewed in the context of the description as a whole. For example, Document 4929 is an e-mail discussing an attorney's interpretation of the exclusive licensing agreement and the legal implications of that interpretation. Yet the Fifth Log described Document 4929 as a

"[c]onfidential communication reflecting attorney-client communication and counsel's thoughts and strategy regarding litigation strategy." This confusingly worded phrase is not a fitting descriptor of the information contained in the e-mail, and to the extent the description comports with the e-mail's content, the description is most certainly vague.

Therefore, Defendants are ORDERED to review every entry in the Second and Fifth Logs and determine whether the entry (1) lists all of the information required by Local Civil Rule 26.2, (2) *accurately* describes the document and its subject matter, and (3) describes the document and its subject matter with sufficient specificity to enable other parties to assess the claim of privilege. Any documents that do not meet these requirements must be produced within three weeks of the date of this Opinion and Order.

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Determining whether sanctions are appropriate is "one of the most difficult and unenviable tasks for a court." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999). Under Federal Rule of Civil Procedure 37(a)(5)(A), if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." On the other hand, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

In addition, Rule 37(b)(2) provides that when a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders,"

including ordering the disobedient party "to pay the reasonable expenses, including attorney's fees, caused by the failure." Again, the Court should not impose this sanction if "the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

An award of attorneys' fees is appropriate in this case. The Court has conducted three previous *in camera* reviews of documents that Defendants withheld, and each time, the Court has compelled Defendants to review their privilege logs and produce additional documents in accordance with the law. See ECF Nos. 178, 237, 287. Defendants' lead counsel represented to the Court on several occasions that he would personally review the withheld documents and privilege logs and ameliorate all outstanding issues. See ECF No. 292 at 2. Despite these representations, however, Defendants have continually failed to repair the many shortcomings in their privilege logs and document production and have thereby failed to comply with the Court's repeated orders. See ECF Nos. 178, 237, 287. As a result of Defendants' consistent sloppiness and noncompliance, the Court has expended a great deal of time reviewing exemplars, holding conferences, and preparing opinions and orders compelling Defendants to produce additional documents that were improperly withheld. Likewise, Plaintiffs have spent substantial resources seeking to obtain documents that should have been produced long ago.

Defendants contend that they should not be required to pay Plaintiffs' attorneys' fees because the Court did not hold that their privilege log was deficient prior to the October 24, 2017 Opinion and Order. ECF No. 300 at 5, 8–9. In response to the Court's prior orders, Defendants purportedly focused their efforts on reviewing the substance of withheld documents but "did not understand that revising the description in the privilege log itself was also required." Id. at 5. This argument is without merit. Rule 26 and Local Civil Rule 26.2 clearly placed Defendants on

12

notice that their privilege log needed to provide specific information about withheld documents. Even if the Court did not directly instruct Defendants to produce an adequate privilege log before October 24, 2017, Defendants had a continuing obligation to comply with the rules' requirements. Therefore, when the Court compelled Defendants to produce additional documents that were improperly withheld and improperly logged, Defendants became obligated to pay Plaintiffs' reasonable expenses under Rule 37(a) unless other circumstances made an award of attorneys' fees unjust.

Defendants also point out that Plaintiffs' own privilege log is riddled with many of the same deficiencies that were present in Defendants' privilege logs. ECF No. 300 at 5–8. Defendants argue that it "would be unjust and inequitable to award Plaintiffs their costs and fees incurred in reviewing Defendants' 'inadequate' privilege log, when Plaintiffs' is equally 'inadequate.'" Id. at 8. Insufficiencies in Plaintiffs' privilege log do not excuse Defendants from complying with their own obligations under Rule 26 and Local Civil Rule 26.2. Even if the opposing parties' privilege log was deficient, Defendants were still required to prepare an adequate privilege log of their own and produce appropriate documents in accordance with the rules. In addition, Defendants were free to file discovery motions challenging the sufficiency of Plaintiffs' privilege log, but they voluntarily declined to do so. See id. at 3.

Finally, Defendants contend that the October 24, 2017 Opinion and Order already imposed a severe sanction on Defendants by compelling them to produce "nearly two thousand privileged documents." Id. at 9–10; see In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293, 299 (S.D.N.Y. 2003) (noting that "the result of waiver is harsh"). Defendants argue that adding monetary sanctions "would be punitive and unjust under the circumstances." Id. at 9. But the Court did not compel Defendants to produce the documents in order to sanction them.

13

Defendants were required to produce the documents because they waived their claims of privilege by failing to assert those claims properly and failing to describe the documents adequately in their privilege logs. ECF No. 287. Moreover, the Court gave Defendants numerous opportunities to correct the many deficiencies in their privilege logs and document production. The Court's previous orders compelling Defendants to review their privilege logs and produce additional documents proved ineffective in motivating Defendants to comply with the rules and the law regarding privilege. Under these circumstances, an award of attorneys' fees is necessary to compensate Plaintiffs for expenses they incurred as a result of Defendants' continuing noncompliance. Defendants have failed to demonstrate that such an award is unjust.

Having decided that Plaintiffs are entitled to recover reasonable attorneys' fees and expenses incurred in connection with the Fifth Log, the Court must now determine the amount to award. "District courts have broad discretion to determine a fee award based on the circumstances of a case." Underdog Trucking, LLC v. Verizon Servs. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011). A reasonable award of attorneys' fees should be based on a "reasonable hourly rate," which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The "presumptively reasonable fee" or "lodestar" is then determined by calculating "the product of a reasonable hourly rate and the reasonable number of hours required." Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011). "The district court may adjust the lodestar figure—upward or downward—based on a variety of factors." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998). For example, a court "can reduce a fee award by making an across-the-board percentage cut in the number of hours." Underdog Trucking, 276 F.R.D. at 110.

Plaintiffs submit that nine different attorneys and law clerks collectively spent over 180 hours litigating issues related to Defendants' Fifth Log and the 20 exemplars that were recently reviewed *in camera*. See ECF No. 292 at 5; ECF No. 292-3; ECF No. 292-4. Their hours and billable rates break down as follows:

| Attorney/Law Clerk | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Norman H. Zivin | 40.9 | $650 | $26,585.00 |
| Tonia A. Sayour | 3.7 | $530 | $1,961.00 |
| Linsheng Li | 38.0 | $290 | $11,020.00 |
| Matthew Wilk | 32.5 | $250 | $8,125.00 |
| Jonathan Presvelis | 5.8 | $220 | $1,276.00 |
| Brian P. Daniels | 11.75 | $430 | $5,052.50 |
| Sean M. Fisher | 7.75 | $350 | $2,712.50 |
| Michael T. Cretella | 24.5 | $300 | $7,350.00 |
| Johanna Rivera | 19.25 | $170 | $3,272.50 |
| **Total** | **184.15** | | **$67,354.50** |

ECF Nos. 292-1, 292-4.

The hourly rates for Plaintiffs' counsel are reasonable in light of the attorneys' positions, their levels of experience, and the prevailing rates in the community. See Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC, No. 13-CV-2493, 2014 WL 4792082, at *2–3 (S.D.N.Y. Sept. 24, 2014) (noting that "district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour" and "rates for law firm associates in the range of $200 to $450 per hour"); Malletier v. Artex Creative Int'l Corp., 687 F.

Supp. 2d 347, 360 (S.D.N.Y. 2010); Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Liab. Co., 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009).

Nevertheless, the number of hours Plaintiffs spent on these issues was vastly excessive. Plaintiffs did not have access to the 20 exemplars that were submitted for *in camera* review. Thus, they acknowledged that in preparing their letter to the Court regarding the privilege log and exemplars, they relied solely on the information included in Defendants' privilege log and Defendants' letter to the Court. ECF No. 253 at 2. In light of these limitations, it is unclear why Plaintiffs spent over 180 hours reviewing documents, conducting legal research, drafting letters, corresponding with co-counsel and opposing counsel, and preparing for and attending the conference. Plaintiffs have not explained why they spent so much time on these issues.

Accordingly, Plaintiffs' hours are reduced by approximately 70% across the board, which yields the following fees:

| Attorney/Law Clerk | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Norman H. Zivin | 12.2 | $650 | $7,930.00 |
| Tonia A. Sayour | 1.1 | $530 | $583.00 |
| Linsheng Li | 11.4 | $290 | $3,306.00 |
| Matthew Wilk | 9.7 | $250 | $2,425.00 |
| Jonathan Presvelis | 1.7 | $220 | $374.00 |
| Brian P. Daniels | 3.5 | $430 | $1,505.00 |
| Sean M. Fisher | 2.3 | $350 | $805.00 |
| Michael T. Cretella | 7.3 | $300 | $2,190.00 |
| Johanna Rivera | 5.7 | $170 | $969.00 |
| **Total** | **54.9** | | **$20,087.00** |

In addition, Plaintiffs seek $325.89 for the cost of obtaining a transcript of the conference held on October 6, 2017. ECF No. 292-2. In support of this request, Plaintiffs have submitted an invoice from Southern District Reporters PC. Id. "These costs are reasonable, well-documented, and would ordinarily have been charged to the client." Underdog Trucking, 276 F.R.D. at 115. Therefore, Plaintiffs' request to be reimbursed for this expense is granted in full.

Finally, Plaintiffs wish to recover additional attorneys' fees and expenses in connection with their review of the documents that were recently produced. Id. But if Defendants had produced these documents at an earlier stage in the case, Plaintiffs still would have incurred the expense of reviewing the documents. Thus, Plaintiffs are not granted leave to seek additional attorneys' fees and expenses that they incur reviewing the newly produced documents.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is GRANTED in part and DENIED in part, and their motion for clarification is GRANTED. In addition, Defendants are ORDERED to review all of the documents they have previously withheld as privileged—whether listed on the Fifth Log or some earlier iteration of the privilege log—and immediately produce additional documents in accordance with this Opinion and Order and all of the Court's previous orders regarding privilege. Within three weeks of this Opinion and Order, Defendants are ORDERED to produce a Final Log according to the process described herein. Finally, Plaintiffs' motion for attorneys' fees is GRANTED in part and DENIED in part. Plaintiffs are awarded $20,087 in attorneys' fees and $325.89 in expenses for a total award of $20,412.89. The Clerk of Court is respectfully asked to terminate the motions at ECF Nos. 292 and 293.

**SO ORDERED.**

DATED: January 5, 2018
New York, New York

SARAH NETBURN
United States Magistrate Judge