**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AU NEW HAVEN, LLC, and TRELLEBORG COATED SYSTEMS US, INC., Plaintiffs, v. YKK CORPORATION, Defendant. | : | CIVIL ACTION NO. 15-CV-03411-GHW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN DEFENDANT YKK CORPORATION FROM MAINTAINING ITS DECLARATORY JUDGMENT ACTION IN JAPAN**

# TABLE OF CONTENTS

**Page**


I. Introduction ........................................................................................................ 1

II. This Court has the Authority to Enjoin YKK's Japanese Action ........................................................................................................ 2

III. The Court Should Grant Plaintiffs' Motion to Enjoin Defendants from Pursuing the Japanese Declaratory Judgment Action ........................................................................................................ 3

a. The threshold requirements for an anti-suit injunction are present .......... 4

i. The same parties are involved in both this action and the Japanese Action .................................................................... 4

ii. Resolution of the claims in this action will be dispositive of the claims in the Japanese Action .............................................. 5

b. The additional *China Trade* factors weigh in favor of an injunction ....... 8

i. The Japanese Action poses a threat to this Court's jurisdiction ...... 8

ii. The Japanese Action would frustrate this Circuit's policy of enforcing mandatory forum selection clauses................................ 9

iii. The Japanese Action is vexatious .................................................. 10

iv. The proceedings in Japan prejudice other equitable considerations ..................................................................... 11

v. Adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment .......................................................................... 12

c. Plaintiffs satisfy the test for a preliminary injunction............................. 13

i. Plaintiffs will be irreparably harmed absent an injunction ............. 13

ii. There are sufficiently serious questions going to the merits to make them a fair ground for litigation ........................................... 13

IV. Conclusion ........................................................................................................ 15

**TABLE OF AUTHORITIES**

| | **Page(s)** |
|---|---|
| *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F.Supp.2d 526 (S.D.N.Y. 2008) | 9 |
| *American Home Assur. Co. v. Insurance Corp. of Ireland Ltd.*, 603 F.Supp. 636 (S.D.N.Y. 1984) | 4 |
| *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d. Cir. 1987) | 3 |
| *Dandong v. Pinnacle Performance Ltd.*, 2011 WL 6156743 (S.D.N.Y. 2011) | 5, 6, 7, 8, 10, 13, 14 |
| *Eastman Kodak Co. v. Asia Optical Co., Inc.*, 118 F.Supp.3d 581 (S.D.N.Y. 2015) | 4, 5, 9, 12 |
| *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118 (S.D.N.Y. 1997) | 10 |
| *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading L.L.C.*, 2016 WL 5369617 (S.D.N.Y. 2016) | 4, 5 |
| *Ibeto Petrochemical Industries Ltd. v. M/T Beffen*, 475 F.3d 56 (2d Cir. 2007) | 11 |
| *International Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552 (S.D.N.Y. 2006) | 4, 6, 8, 10 |
| *International Fashion Prods. v. Calvin Klein, Inc.*, 1995 WL 92321 (S.D.N.Y. 1995) | 9, 13 |
| *Kahara Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111 (2d Cir. 2007) | 8 |
| *Keep On Kicking Music, Ltd. v. Hibbert*, 2017 WL 3236444 (S.D.N.Y. 2017) | 3, 4, 5, 11, 12, 13 |
| *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645 (2d Cir. 2004) | 2, 4, 5 |
| *Software AG, Inc. v. Consist Software Solutions, Inc.*, 2008 WL 563449 (S.D.N.Y. 2008) | 7, 12 |

*T-Jat Systems 2006 Ltd. v. Amdocs Software Sys., Inc.*, 2013 WL 6409476 (S.D.N.Y. 2013) .......... 10, 12

# I. **Introduction.**

Plaintiffs hereby move to enjoin Defendant YKK Corporation ("YKK") from maintaining a declaratory judgment action in a District Court in Tokyo, Japan, which action seeks to evade this Court's already established jurisdiction in this breach of contract, patent infringement, Connecticut Unfair Trade Practices Act, and Lanham Act action.

As the Court knows, YKK previously filed a petition in the Japanese Patent Office to declare invalid Japanese Patent No. 5213523 (the "JP '523 Patent"), which is one subject of this action and which corresponds to U.S. Patent No. 6,105,214 also at issue in this suit. As jointly reported to this Court [Dkt. 227], that Japanese petition has resulted in a preliminary decision maintaining the validity of Japanese patent claims 1, 12 and others. A final decision of trial is expected soon.

Now, YKK has filed two additional proceedings in Japan. The first proceeding is a request to the Japanese Patent Office to interpret the claims of the JP '523 Patent in relation to YKK's manufacturing method. That proceeding (referred to as a "Hantei") may eventually result in an advisory opinion by the Japanese Patent Office which is not binding on the Japanese Courts, much less than on this Court.

The second proceeding is a declaratory judgment action against Plaintiff Trelleborg Coated Systems (U.S.), Inc. ("Trelleborg") in the Tokyo District Court (the "Japanese Action"). Trelleborg has moved to dismiss the Japanese Action, but has not yet answered that action. Plaintiff AU New Haven, LLC ("Uretek") was not named as a party. The English version of the complaint in the Japanese Action served on Trelleborg is attached hereto as Exhibit A.

YKK seeks by the declaratory judgment Japanese Action a judgment of the Tokyo District Court that YKK's products are not covered by the JP '523 Patent so that, emphasis

added, "[YKK] can confirm **the breach of the license agreement** in Japan does not exist and can inform the result to the U.S. Court."

The Court also is aware that the Exclusive License Agreement between the parties, made on February 13, 2002 (the "License Agreement"), provides at Paragraph 13 as follows, emphasis added:

> 13. This Agreement shall be construed, interpreted and applied in accordance with, and shall be governed by the laws of the State of New York. The parties hereto select and submit themselves to the jurisdiction and competence of the courts within the State of New York for purposes of resolving **any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof**, waiving any venue privilege to which the parties may be entitled because of their domiciles or for any other reason.

Plaintiffs submit that YKK (i) is in breach of the License Agreement by seeking to have a decision concerning a dispute, controversy or claim arising out of or relating to YKK's breach of the License Agreement issued by a court outside the State of New York and also (ii) is seeking to circumvent this Court's already established jurisdiction over the controversy. *See* Dkt. 188 (finding the forum selection clause in Paragraph 13 of the License Agreement mandatory and denying Defendants' motion to dismiss the breach of the License Agreement claims related to, *inter alia*, Defendants' sales of zippers covered by the JP '523 Patent).

## II. <u>This Court has the Authority to Enjoin YKK's Japanese Action</u>.

This Court has the authority to enjoin YKK from continuing to evade this Court's jurisdiction. Although this Court may not enjoin a foreign tribunal, the Court certainly has the power to regulate the behavior of the parties appearing before it. "It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d

645, 652 (2d Cir. 2004).

Generally, consideration of an anti-suit injunction against parallel foreign litigation requires a showing on two threshold issues: (1) that the same parties are present in both actions and (2) that a resolution of the case before this Court will be dispositive of the action in the foreign court. *Keep On Kicking Music, Ltd. v. Hibbert*, 2017 WL 3236444, *2 (S.D.N.Y. 2017) (enjoining a foreign music contract action).

Once those threshold requirements are met, the Court may consider other factors, including: (1) whether the parallel lawsuit will frustrate a policy in this country; (2) whether the foreign suit is vexatious; (3) whether the second case threatens this Court's jurisdiction; (4) other equitable considerations; and (5) whether the foreign case will result in delay, inconvenience, expense, inconsistency, or a race to judgment. *Id.* at *3.

Once the factors for the anti-suit injunction are satisfied, the Court must also determine whether a preliminary injunction is appropriate. "As with any preliminary injunction application, a party seeking an anti-suit injunction must satisfy the ordinary test for a preliminary injunction." *Id.* (internal citation omitted). The movant must demonstrate (1) irreparable harm in the absence of an injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Id.*

## III. **The Court Should Grant Plaintiffs' Motion to Enjoin Defendants from Pursuing the Japanese Declaratory Judgment Action.**

Plaintiffs meet both threshold requirements for granting an anti-suit injunction and satisfy the additional *China Trade*[1] factors which favor granting an injunction. Additionally, Plaintiffs

[1] *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d. Cir. 1987).

satisfy the test for granting a preliminary injunction. For these reasons, Plaintiffs' motion to enjoin YKK from pursuing the Japanese Action should be granted.

**a. The threshold requirements for an anti-suit injunction are present.**

Plaintiffs meet both threshold requirements for an anti-suit injunction. First, the same parties are involved in both this action and the Japanese Action. Second, resolution of the claims in this action would be dispositive of the claim in the Japanese Action.

**i. The same parties are involved in both this action and the Japanese Action.**

The same parties are involved in both this action and the Japanese Action. *See Paramedics Electromedicina Comercial, Ltd.*, 369 F.3d at 652. The parties need not be identical, rather, the requirement is met if the parties are "sufficiently similar." *Eastman Kodak Co. v. Asia Optical Co., Inc.*, 118 F.Supp.3d 581, 587 (S.D.N.Y. 2015); *see Paramedics Electromedicina Comercial, Ltd.,* 369 F.3d at 652. "Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met." *International Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 562 (S.D.N.Y. 2006).

Here, the parties named in the Japanese Action are YKK and Trelleborg. Likewise, both parties in the Japanese Action are named in the current action, amongst others, as a defendant and a plaintiff, respectively. Trelleborg also was assigned the JP '523 Patent by Uretek, the other plaintiff in this action. Courts in this Circuit have consistently held that this is a sufficient showing of similarity of parties. *Keep on Kicking Music*, 2017 WL 3236444, at *3 (same parties); *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading L.L.C.*, 2016 WL 5369617, at *2 (S.D.N.Y. 2016) (finding identity of parties met when any enjoined suit would necessarily involve two or more of the parties to the domestic action); *American Home Assur. Co. v.*

*Insurance Corp. of Ireland Ltd.*, 603 F.Supp. 636, 643 (S.D.N.Y. 1984) (finding identity of parties satisfied when all parties to the foreign action were involved in the domestic action, while the converse was not true).

Therefore, the first threshold requirement has been satisfied.

**ii. Resolution of the claims in this action will be dispositive of the claims in the Japanese Action.**

The resolution of the claims in this action will be dispositive of the claims in the Japanese Action. *See Paramedics Electromedicina Comercial, Ltd.*, 369 F.3d at 652. Dispositive does not mean identical. *Keep on Kicking Music*, 2017 WL 3236444, at *3; *see Eastman Kodak Co.*, 118 F.Supp.3d at 588 ("There is no requirement that the two actions be identical."). "This requirement is not clearly fleshed out in the case law, but a … number of cases in this Circuit … 'focus … on whether the substance of the claims and arguments raised in the two actions is the same.'" *Dandong v. Pinnacle Performance Ltd.*, 2011 WL 6156743, at *1 (S.D.N.Y. 2011). Further, "courts in this Circuit have found anti-suit injunctions appropriate even when the claims in the foreign and domestic actions were not precisely identical, but were at least based on the same underlying dispute." *Keep on Kicking Music*, 2017 WL 3236444, at *3 (citation omitted); *see also Hapag-Lloyd Aktiengesellschaft*, 2016 WL 5369617, at *2 ("Anti-suit injunctions have been found to be appropriate when the claims in the foreign and domestic actions are based on the same underlying dispute, even if the claims are not identical.").

Here, the claims in the Japanese Action and the current litigation are based on the same underlying dispute, as confirmed by the face of the Japanese complaint. Defendants reference the status of this United States litigation multiple times, stating "When [YKK] confirm[sic] this matter, [YKK] can confirm the breach of the license agreement in Japan does not exist and can

inform the result to the US court." Even further, YKK has gone so far as to request a result as soon as possible in the Japanese Action due to "the progress in the present US law suit[sic]."

Once the instant domestic litigation is resolved, there will be no need for the Japanese Action, as it is being pursued for the express purpose of aiding this Court to decide the breach of contract issue.[2] The factual basis of the declaratory judgment Japanese Action is *exactly* the same as it is here; both attempt to answer the question, "Did YKK breach the License Agreement by making and selling products covered by the JP '523 Patent?" Once this Court answers that question, regardless of whether it is in the affirmative or the negative, there will be no need for the Japanese Action.

In *International Equity Invs. Inc.*, an anti-suit injunction was instituted to prevent the defendants from pursuing litigation in Brazil. *International Equity Invs., Inc.*, 441 F.Supp.2d. at 566. There, the plaintiffs sought to prevent the defendants from attempting to retake control of a company via petitions in Brazilian courts. *Id*. at 558. A forum selection clause required any disputes between the partners in the fund to be resolved exclusively in New York. *Id*. at 555. The court held that the dispositive requirement was met because the outcome of the domestic case would resolve the issue of whether the defendants could retake control of the company. *Id*. at 562-63. The United States court reasoned that it would determine that either the defendants could not take control of the company without violating their duties to the plaintiffs, or they could. *Id*. Once the United States court determined the scope of the agreement, the Brazilian action would have been moot. *Id*. at 563.

In *Dandong* the court found that the domestic action was dispositive of one filed in Singapore when "The Singapore Motion does not aim to initiate a parallel proceeding, which

[2] As the Court stated during the December 21, 2017 teleconference, this Court has **not** solicited the views of the Japanese court on these issues. *See* 12/21/17 Transcript at 22-23.

'should be allowed to proceed simultaneously,'… but rather to use one proceeding to quash the other." *Dandong*, 2011 WL 6156743, at *4 (internal citation omitted). There, the plaintiffs sought to prevent the defendants from pursuing their own anti-suit injunction in Singapore. The United States court enjoined the defendants from any actions that would "impede or conflict with the present litigation." *Id.* at *8. In this case, YKK's Japanese Action is intended to "impede or conflict" with the domestic litigation in that YKK has (1) asked the Tokyo District Court to expedite the proceeding because of the "progress in the US law suit" and (2) repeatedly stated its intention to use the results of the Japanese Action in this case.

Additionally, all of the claims in the domestic litigation need not be at issue in the foreign litigation in order to reach a finding that the resolution of the case before the enjoining court is dispositive of the action to be enjoined. In *Software AG, Inc. v. Consist Software Solutions, Inc.*, 2008 WL 563449, at *24 (S.D.N.Y. 2008), the court granted an anti-suit injunction when some of the claims in the domestic action were not present in the foreign litigation. In that case, the plaintiffs commenced a domestic action involving multiple breach of contract claims, Lanham Act false advertising claims and tortious interference with prospective business relations claims. *Id.* at *11-*19. The United States court held that these claims were dispositive of actions filed in Brazil by the defendants involving ownership of a trademark and validity of a licensing agreement because they were "directed to the same subject matter."[3] Here, the breach of the License Agreement is at the heart of the matter. Although other issues are involved in this domestic litigation, what is significant is that the resolution of whether YKK breached the

[3] "… the proceedings in Brazil pertain to precisely the same issues that are at the heart of the action here, namely whether the trademarks in Brazil belong to Software AG and whether Consist can continue to provide maintenance for Software AG products … The injunctions that Consist-Brazil has obtained *ex parte* interfere with this Court's ability to issue valid and binding orders directed to the same subject matter … Resolution of the fully litigated proceedings currently before this Court would be dispositive of the proceedings that were just recently initiated in Brazil and that have not been fully litigated." *Id.* at *24 (internal citations omitted).

License Agreement is precisely the same issue in both the domestic and foreign proceedings, so the domestic action will be dispositive of the Japanese Action.

Therefore, the second threshold requirement is met.

**b. The additional *China Trade* factors weigh in favor of an injunction.**

After determining that the threshold factors are met, this Court should also find that the *China Trade* factors support entry of the requested injunction. "*China Trade* instructed that two of these factors should be accorded 'greater significance': whether the foreign action threatens the enjoining forum's jurisdiction or its 'strong public policies.' However, … *all* of the additional factors should be considered when determining whether an anti-suit injunction is warranted." *Dandong*, 2011 WL 6156743, at *3 (quoting *Kahara Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (internal citations omitted)). These additional factors all indicate that an injunction should be granted in this action to prevent YKK from pursuing the Japanese Action.

**i. The Japanese Action poses a threat to this Court's jurisdiction.**

By proceeding with the foreign Japanese Action, YKK is "not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over [this] action." *Dandong*, 2011 WL 6156743 at *5 (internal citation omitted). YKK seeks to prevent this Court from exercising its jurisdiction by evading the License Agreement's mandatory forum selection clause. YKK explicitly states that it wishes to use the Japanese Action to influence the current litigation, when the proper forum for this litigation is here in the Southern District of New York.

"[T]he justification for an anti-suit injunction crests when a party seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court." *International Equity Invs.*, 441 F.Supp.2d at 563. YKK seeks to prevent this Court from

exercising its rightful jurisdiction over any claims arising out of a dispute in the License Agreement by pursuing the Japanese Action. This factor, which is given greater significance, substantially favors the Plaintiffs.

**ii. The Japanese Action would frustrate this Circuit's policy of enforcing mandatory forum selection clauses.**

The second *China Trade* factor is also present, in that allowing the Japanese Action to proceed would violate this Circuit's well-established policy of enforcing forum selection clauses. "New York has a well-established public policy of enforcing forum selection agreements." *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F.Supp.2d 526, 533 (S.D.N.Y. 2008) (quoting *International Fashion Prods. v. Calvin Klein, Inc.*, 1995 WL 92321, at *2 (S.D.N.Y. 1995)) (issuing a preliminary injunction enjoining the plaintiff from prosecuting a subsequently filed injunction application in the District Court of Amsterdam, the Netherlands, in light of the contract's designation of New York as a forum for all disputes).

Presently, YKK seeks to circumvent the mandatory forum selection clause contained in the License Agreement by filing the Japanese Action. YKK attempts to masquerade its cause of action as simply seeking a declaratory judgment of non-infringement. Yet, YKK's complaint on its face makes it abundantly clear that YKK's actual intentions are to bypass the License Agreement's mandatory forum selection clause and have a District Court in Japan decide whether YKK has breached the License Agreement.

This is precisely the activity that courts in the Second Circuit have sought to prevent time and time again. *See, e.g., Eastman Kodak*, 118 F.Supp.3d at 589 ("The [patent licensing agreement] was entered between [defendant] and [plaintiff], which are Taiwanese and American companies. Payments under the PLA were received in New York, and the PLA selected New York law to resolve all disputes arising under it."); *A.P. Moller-Maersk A/S*, 590 F.Supp.2d at

534 ("an injunction is necessary to protect the Court's jurisdiction and the public interest in enforcing the forum selection clause … [Defendant], by bringing multiple suits outside this District in violation of the forum selection clause, seeks to defy … New York's interest in enforcing the forum selection clause and this Court's jurisdiction."); *International Equity Invs., Inc.*, 441 F.Supp.2d at 563 ("The Court finds that such petitions would indeed be an affront to the strong public policy in favor of forum selection clauses like the one agreed to by defendants"); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118, 130 (S.D.N.Y. 1997) ("Defendants virtually admit that they sought to circumvent the forum selection clause by bringing suit in Italy … [I]t is clear that they seek to evade an important public policy.").

Considering the strong Second Circuit public policy of enforcing forum selection clauses, this factor, which is given greater weight, heavily favors the issuance of an injunction.

**iii. The Japanese Action is vexatious.**

The third factor, that the foreign action is vexatious, also weighs in the Plaintiffs' favor. Foreign actions have been found to be vexatious when they would "render this Courts' ruling nugatory, … stop Plaintiffs' case in its tracks, and … require Plaintiffs to begin anew …" *Dandong*, 2011 WL 6156743, at *5. Additionally, actions have been found vexatious when they "would require 'parallel actions … [to] proceed … concurrently.'" *T-Jat Systems 2006 Ltd. v. Amdocs Software Sys.*, 2013 WL 6409476, at *4 (S.D.N.Y. 2013) (internal quotation omitted).

The Japanese Action is vexatious because it is being used to force the Japanese court to reach a conclusion (whether YKK breached the License Agreement) that is ultimately this Court's decision to make. Further, the action is vexatious because it distracts from the current litigation and forces the Plaintiffs to begin again in Japan, when the current domestic litigation

has been pending since May of 2015. For these reasons, this factor also weighs in favor of granting an injunction.

**iv. The proceedings in Japan prejudice other equitable considerations.**

Allowing the Japanese Action to proceed would prejudice other equitable considerations, thus weighing in favor of granting Plaintiffs' motion for an injunction. Courts in this Circuit have looked at a number of factors in determining what constitutes equitable considerations. For instance, the Second Circuit has held that deterring forum shopping is an equitable consideration to take into account. *See Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007). Certainly, by filing a declaratory judgment action in Japan, YKK hoped that it would have better success in its home court than in the New York forum in which YKK contractually agreed to resolve such claims. This type of impermissible forum shopping prejudices Plaintiffs.

Other equitable considerations that this factor addresses include distraction from the domestic litigation. *See Keep on Kicking Music*, 2017 WL 3236444 at *3 (taking into consideration that the domestic litigation began nearly two years before the foreign action was filed). Here, the domestic action was commenced on May 1, 2015. YKK inexplicably waited until June 9, 2017, *more than two years after the initial complaint was filed in this United States action*, to file the Japanese Action directly relating to the breach of contract issue present here. Notably, YKK now has pursued three different proceedings in Japan since the beginning of this case.

For these reasons, allowing the proceedings to continue in Japan would prejudice Plaintiffs.

**v. Adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.**

The final *China Trade* factor also weighs in favor of the Plaintiffs. Courts in this Circuit have held that this factor is met when a foreign "lawsuit will inconvenience [plaintiff] and impose additional litigation expense on it." *Eastman Kodak*, 118 F.Supp.38 at 590; *Software AG*, 2008 WL 563449, at *25. Additionally, the exposure to inconsistent judgments, apparent delay in litigating in both the domestic and the foreign courts, and the amount of time and expense already incurred in litigating the domestic action have been considered. *Keep on Kicking Music*, 2017 WL 3236444, at *3; *T-Jat Systems 2006 Ltd*., 2013 WL 6409476, at *4; *Software AG, Inc*., 2008 WL 563449, at *25.

Exposing Plaintiffs to the proceeding in Japan certainly raises all of these issues, especially considering the timing of the Japanese Action. YKK waited more than two years after this action has been litigated in this Court to bring its action in Japan. Substantial time and expense has been incurred in this domestic litigation. *See Keep on Kicking Music*, 2017 WL 3236444 ("the fifth factor is satisfied largely on grounds that Movants have incurred a substantial amount of time and expense to litigate these claims here for the past two years. Compelling Movants to participate in essentially the same action in another foreign forum would result in undue burden and unfair prejudice.").

Equally telling in this regard is that, despite direct questioning by this Court, YKK to date has offered no meaningful justification for YKK's institution of the Japanese Action. YKK's counsel confirmed that any decision in the Japanese Action will not be dispositive of any issue in this action. *See* 12/21/17 Transcript at 20-21.

For these reasons, the fifth factor favors the Plaintiffs.

**c. Plaintiffs satisfy the test for a preliminary injunction.**

Plaintiffs also satisfy the requirements for a preliminary injunction. Plaintiffs will be irreparably harmed absent a preliminary injunction, and sufficiently serious questions going to the merits to make them a fair ground for litigation exist. Therefore, the test for granting a preliminary injunction has been satisfied.

**i. Plaintiffs will be irreparably harmed absent an injunction.**

"The specter of inconsistent rulings … constitutes irreparable harm." *Keep on Kicking Music*, 2017 WL 3236444, at *4; *International Fashion Prods.*, 1995 WL 92321, at *2 (movant is irreparably harmed when it is "compelled to litigate this action on two continents, and may be subject to inconsistent rulings"). Here, Plaintiffs face the possibility that this Court and the Tokyo District Court will come to inconsistent rulings with respect to the scope of the License Agreement. Further, YKK's Japanese Action raises the actual and imminent possibility that Plaintiffs will be forced to litigate in an inadequate forum because of anticipated difficulties in presenting expert and fact testimony. *See Dandong*, 2011 WL 6156743. The additional time and expense that Plaintiffs will incur to re-litigate issues that will be decided in this action also adds to the irreparable harm suffered. *Keep on Kicking Music*, 2017 WL 3236444, at *4; *International Fashion Prods.*, 1995 WL 92321, at *2. Plaintiffs will therefore be irreparably harmed absent an injunction.

**ii. There are sufficiently serious questions going to the merits to make them a fair ground for litigation.**

Additionally, "there are sufficiently serious questions going to the merits to make them a fair ground for litigation." *Keep on Kicking Music*, 2017 WL 3236444, at *4; *International Fashion Prods.*, 1995 WL 92321, at *2. The ongoing discovery process in this domestic action presents questions on the merits regarding the claims at issue, including the breach of License

Agreement. *See id*. Furthermore, the Second Circuit has held that "conflicting stories between parties can establish a sufficiently serious question going to the merits for the purposes of justifying a preliminary injunction." *Dandong*, 2011 WL 6156743, at *7.

In *Dandong* the plaintiffs showed sufficiently serious questions regarding the claims at issue in the domestic litigation to meet this part of the burden for preliminary relief when both parties disagreed about where the allegedly fraudulent conduct at issue occurred. *Id*. Here, similarly, there are sufficient questions with respect to the claims at issue in the domestic litigation, most importantly whether the License Agreement was breached by YKK.

Therefore, Plaintiffs have met their burden in showing that there are sufficiently serious questions going to the merits to make them a fair ground for litigation. When combined with the fact that Plaintiffs will be irreparably harmed absent an injunction, both of these factors support a finding that Plaintiffs have satisfied the requirements for granting an injunction.

## IV. **Conclusion.**

For all of the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion to enjoin Defendant YKK Corporation from maintaining its declaratory judgment action in Japan.

Respectfully submitted,

Dated: January 12, 2018

By: *s/ norman h. zivin*

Norman H. Zivin (NZ-6053)
Tonia A. Sayour (TS-7208)
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525
Email: nzivin@cooperdunham.com
Email: tsayour@cooperdunham.com

and

Brian P. Daniels (pro hac vice)
Sean M. Fisher (SF0251)
David R. Schaefer (pro hac vice)
Michael Cretella (pro hac vice)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: bpdaniels@bswlaw.com
Email: dschaefer@bswlaw.com
Email: sfisher@bswlaw.com
Email: mcretella@bswlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 12, 2018, per Local Rule Civil Rule 5.2.

*s/ norman h. zivin*
Norman H. Zivin