UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

AU NEW HAVEN, LLC, et al.,

                               Plaintiffs,

                 -against-

YKK CORPORATION, et al.,

                               Defendants.

-----------------------------------------------------------------X

15-CV-3411 (GHW)(SN)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2018

**SARAH NETBURN, United States Magistrate Judge**:

On Tuesday, February 13, 2018, Plaintiffs filed a motion to enjoin Defendant YKK Corporation ("YKK") from maintaining an action seeking a declaratory judgment in Japan. ECF No. 327. On April 17, 2018, the Honorable Gregory H. Woods referred the motion to me. ECF No. 346. Plaintiffs' motion for a preliminary anti-suit injunction is GRANTED.

## BACKGROUND

In 2000, the U.S. Patent and Trademark Office issued a patent to Stuart Press for a water-resistant zipper and the process for preparing it (the "U.S. Patent"). ECF No. 55-1 ¶ 2; ECF No. 55-2. On February 13, 2002, Press and Harold E. Hoder entered into an exclusive licensing agreement (the "ELA") with YKK, whereby they granted YKK "an exclusive, worldwide right to manufacture, use, sell, offer for sale and otherwise use and practice the invention contained in [the U.S. Patent and corresponding patent applications in Japan and other countries], except for zippers placed in finished goods in the high end outerwear, marine, military and luggage (excluding sports and cosmetic bags) markets." ECF No. 55-4 ¶ 1. The ELA also provides that the parties "submit themselves to the jurisdiction and competence of the courts within the State

of New York for purposes of resolving any dispute, controversy or claim arising out of or relating to [the ELA], or the breach, termination or invalidity thereof." Id. ¶ 13.

In 2006, Press and Hoder assigned the ELA, the U.S. Patent, the Japanese patent application, and several other non-U.S. patent applications to Plaintiff AU New Haven, LLC ("AU New Haven"), which was known as Uretek LLC ("Uretek") at the time. ECF No. 90 ¶ 50; ECF No. 55-5. A Japanese patent was subsequently issued to Uretek for a water-resistant slide fastener and the process for preparing it (the "Japanese Patent"). ECF No. 90 ¶ 39. In October 2014, AU New Haven sold substantially all of the operating assets of the Uretek business to Plaintiff Trelleborg Coated Systems US, Inc. ("Trelleborg") and assigned the U.S. Patent, the Japanese Patent, and several other patents to Trelleborg. ECF Nos. 55-6, 55-11. Uretek also sought to assign the ELA to Trelleborg, but YKK refused to consent to the assignment. ECF Nos. 55-11, 55-12. On May 1, 2015, Plaintiffs filed this case against YKK and several of YKK's non-U.S. affiliates, claiming that they had infringed the U.S. Patent and breached the ELA by selling zippers that use the patented invention in excluded markets. ECF Nos. 1, 90.

On June 9, 2017, YKK filed a declaratory judgment action against Trelleborg in the Tokyo District Court. ECF No. 320-2. AU New Haven was not named as a party. Id. The Japanese action requests a judgment declaring that YKK's products and its process for manufacturing the products do not fall "within the technical scope" of certain inventions covered by the Japanese Patent. Id. at 5. Based upon this determination, YKK asks the Japanese court to declare that the "acts of producing, assigning and exporting [YKK's] products, and of offering assignment of [YKK's] products do not constitute infringement of the present patent right." Id. at 5, 8. According to the complaint, YKK seeks the judgment so that it "can confirm the breach of the license agreement in Japan does not exist and can inform the result to the US court." Id. at 8.

Plaintiffs later filed a motion in this Court to enjoin YKK from maintaining its declaratory judgment action in Japan. ECF No. 327.

## DISCUSSION

"Because an anti-suit injunction would divest a foreign court of jurisdiction, 'principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint.'" C.D.S., Inc. v. Bradley Zetler, CDS, LLC, 213 F. Supp. 3d 620, 628 (S.D.N.Y. 2016) (quoting LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 199 (2d Cir. 2004)). "As a threshold matter, the parties must be the same in both matters, and resolution of the first action must be dispositive of the action to be enjoined." Id. If these two threshold requirements are met, courts must then consider whether five additional factors—the so-called discretionary China Trade factors—are present:

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's . . . jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987) (quoting Am. Home Assurance Co. v. Ins. Corp. of Ir., 603 F. Supp. 636, 643 (S.D.N.Y. 1984)). The first and third factors—"whether the foreign action threatens the enjoining forum's jurisdiction or its strong public policies—are given greater weight." Eastman Kodak Co. v. Asia Optical Co., 118 F. Supp. 3d 581, 587 (S.D.N.Y. 2015). But "*all* of the additional factors should be considered when determining whether an anti-suit injunction is warranted." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 119 (2d Cir. 2007).

"In addition to satisfying the China Trade test, recent Second Circuit case law has held that a party seeking a preliminary anti-suit injunction must also satisfy the traditional test for a preliminary injunction." Dandong v. Pinnacle Performance Ltd., No. 10-CV-8086 (LBS), 2011

3

WL 6156743, at *3 (S.D.N.Y. Dec. 12, 2011), aff'd in part, remanded in part sub nom. Lam Yeen Leng v. Pinnacle Performance Ltd., 474 F. App'x 810 (2d Cir. 2012). Thus, the movant must show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Keep on Kicking Music, Ltd. v. Hibbert, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017).

## I. Threshold Requirements

"The first threshold requirement is that the parties are the same in both matters. To satisfy this requirement, the parties need not be identical." Eastman Kodak, 118 F. Supp. 3d at 587. "Where parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met." Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007). The parties in the Japanese declaratory judgment action, Trelleborg and YKK, are also parties in this case. Defendants note that AU New Haven— the plaintiff that is a party to the ELA and thus the one asserting the breach of contract claims in this case—is not a party in the Japanese action. ECF No. 321 at 9. Thus, Defendants argue that the parties are not the same "across the two actions for determining whether the alleged breach of the ELA is dispositive of the patent infringement action in Japan." Id. But Trelleborg's and AU New Haven's interests in the two actions are undoubtedly aligned. Both seek to demonstrate that YKK's products were covered by the Japanese Patent. AU New Haven simply makes the additional argument that the sale of those products constituted a violation of the ELA. The parties in the two actions are the same for purposes of the anti-suit injunction.

Next, the Court must assess whether this action would be dispositive of the Japanese action. "Courts in this Circuit have found anti-suit injunctions appropriate even when the claims in the foreign and domestic actions were not precisely identical, but were at least based on the same underlying dispute." Bailey Shipping Ltd. v. Am. Bureau of Shipping, No. 12-CV-5959 (KPF), 2013 WL 5312540, at *10 (S.D.N.Y. Sept. 23, 2013). The relevant inquiry is "whether the substance of the claims and arguments raised in the two actions is the same." In re Vivendi Universal, S.A. Sec. Litig., No. 02-CV-5571 (RJH)(HBP), 2009 WL 3859066, at *6 (S.D.N.Y. Nov. 19, 2009); accord Bailey Shipping, 2013 WL 5312540, at *10; Dandong, 2011 WL 6156743, at *4. Thus, "the 'dispositive' criterion may be satisfied when a foreign proceeding will necessarily render a determination of the 'core issue' at the heart of a claim appropriately decided only in a pending domestic action." Bailey Shipping, 2013 WL 5312540, at *9.

In this case, the Court must determine whether YKK used inventions covered by the Japanese Patent in violation of the ELA, a determination which requires the Court to address the antecedent core issue of whether the products YKK sold in Japan were covered by the Japanese Patent. Defendants are correct that resolution of this case "will not result in a declaration of infringement" with respect to the Japanese Patent, ECF No. 195 at 32:12–17, but Defendants are not seeking to show infringement in the Japanese action either. Although YKK styles the Japanese action as a patent infringement case, at its core, that action seeks a declaratory judgment that YKK's products do not fall within the scope of the inventions covered by the Japanese Patent and the ELA. ECF No. 320-2 at 5. Indeed, YKK even asks the Japanese court to render a judgment expeditiously so that YKK "can confirm the breach of the license agreement in Japan does not exist and can inform the result to the US court." Id. at 8 & n.3. Resolution of the present action will require the Court to decide the same underlying dispute—whether the

5

products YKK sold in Japan were covered by the Japanese Patent and the ELA—and thus will be dispositive of the Japanese action.

## II. Discretionary China Trade Factors

Turning to the China Trade factors, the Japanese action would frustrate this jurisdiction's public policy "disfavoring forum shopping." Eastman Kodak, 118 F. Supp. 3d at 589. The parties expressly agreed that all disputes arising out of the ELA would be resolved by the courts in New York, ECF No. 55-4 ¶ 13, and "New York has a well established public policy of enforcing forum selection agreements," Int'l Fashion Prod., B.V. v. Calvin Klein, Inc., No. 95-CV-0982 (JFK), 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995); accord A.P. Moller-Maersk A/S v. Ocean Express Miami, 590 F. Supp. 2d 526, 533 (S.D.N.Y. 2008), aff'd sub nom. A.P. Moller-Maersk A/S v. Comercializadora de Calidad S.A., 429 F. App'x 25 (2d Cir. 2011). Allowing YKK to proceed with the Japanese action would undermine the parties' forum selection agreement and thereby frustrate this jurisdiction's strong public policies.

Second, the Japanese action "is vexatious because it would require 'parallel actions . . . [to] proceed[ ] concurrently.'" T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd., No. 13-CV-5356 (HB), 2013 WL 6409476, at *4 (S.D.N.Y. Dec. 9, 2013) (alterations in original) (quoting Karaha Bodas Co., 500 F.3d at 126); accord China Trade, 837 F.2d at 36. The parties will be burdened by litigating two separate actions on two different continents simultaneously. Moreover, "[p]roceedings are apt to be especially vexatious . . . where a foreign proceeding threatens to undermine a federal judgment." Karaha Bodas Co., 500 F.3d at 126. It is possible that this Court and the Japanese court may reach different conclusions on the question of whether YKK's products fall within the scope of the Japanese Patent. A conflicting determination by the Japanese court would undermine this Court's ruling. See Ibeto Petrochemical Indus. Ltd. v. M/T

Beffen, 475 F.3d 56, 64 (2d Cir. 2007) (finding an anti-suit injunction appropriate where proceedings in New York and those in Nigeria might yield "widely disparate results").

Third, the Court must consider "whether the action to be enjoined threatens the jurisdiction of the enjoining court." Dandong, 2011 WL 6156743, at *5. "[I]f a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may . . . be necessary to protect the enjoining court's jurisdiction." China Trade, 837 F.2d at 36. In China Trade, this factor was *not* satisfied because "the Korean court ha[d] not attempted to enjoin the proceedings in New York." Id. at 37. Likewise, in this case, the Japanese court has not sought to enjoin the present proceedings, nor has it interfered with the exercise of this Court's jurisdiction in any way. Therefore, Plaintiffs have not demonstrated that the Japanese action threatens this Court's jurisdiction.

The fourth factor—prejudice to other equitable considerations—is satisfied where the timing of the foreign proceeding's commencement suggests that the party initiating that proceeding is seeking "to distract the parties from litigating the claims here in favor of a more convenient forum." Keep on Kicking, 268 F. Supp. 3d at 591; accord Karaha Bodas Co., 500 F.3d at 127; Dandong, 2011 WL 6156743, at *6. YKK waited more than two years after this case was initiated before bringing its declaratory judgment action in Japan. The long delay suggests that the Japanese action is nothing more than a last-ditch effort by YKK to circumvent this Court's decision making process, distract Plaintiffs from litigating this case, and obtain a more favorable result from another judicial body. Thus, the Japanese action will prejudice other equitable considerations.

"The last discretionary factor[] asks whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment."

Dandong, 2011 WL 6156743, at *6. This fifth factor is certainly satisfied in this case. Plaintiffs "have incurred a substantial amount of time and expense to litigate these claims here for the past two years." Keep on Kicking, 268 F. Supp. 3d at 591. Requiring them "to participate in essentially the same action in another foreign forum would result in undue burden and unfair prejudice." Id. Furthermore, YKK has asked the court in Japan to issue a declaratory judgment "as soon as possible" so that YKK "can confirm the breach of the license agreement in Japan does not exist and can inform the result to the US court." ECF No. 320-2 at 8 & n.3. In other words, YKK has created a race to judgment by asking the Japanese court to render judgment on one of the key issues in the present action before this Court decides the case.

Four of the five China Trade factors weigh in favor of an anti-suit injunction. Thus, the China Trade test is satisfied, and the Court must determine whether the traditional requirements for a preliminary injunction are met.

## III.  Preliminary Injunction

To show irreparable harm under the first prong of the preliminary injunction test, "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of the trial to resolve the harm." Dandong, 2011 WL 6156743, at *7 (quoting Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005)). "The specter of inconsistent rulings . . . constitutes irreparable harm." Keep on Kicking, 268 F. Supp. 3d at 591; accord Int'l Fashion Prod., 1995 WL 92321, at *2 (noting that a movant would be irreparably harmed if it was "compelled to litigate this action on two continents" and could "be subject to inconsistent rulings"); Software AG, Inc. v. Consist Software Sols., Inc., No. 08-CV-389 (CM)(FM), 2008 WL 563449, at *24 (S.D.N.Y. Feb. 21, 2008) (noting that "[a]ny preliminary or

final injunction relating to these matters will be compromised by contrary orders from a foreign court"), aff'd, 323 F. App'x 11 (2d Cir. 2009). "That harm is further compounded by the additional time and expense that [Plaintiffs] will incur (and have already incurred) to re-litigate the underlying claims" in the Japanese action. Keep on Kicking, 268 F. Supp. 3d at 591. Plaintiffs have demonstrated that they will suffer irreparable harm if the Court does not grant a preliminary anti-suit injunction.

Finally, the Court must assess whether there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Keep on Kicking, 268 F. Supp. 3d at 591. "[C]onflicting stories between parties can establish a sufficiently serious question going to the merits for purposes of justifying a preliminary injunction." Alan Skop, Inc. v. Benjamin Moore, Inc., 909 F.2d 59, 61 (2d Cir. 1990). The parties have presented conflicting stories that certainly raise serious questions going to the merits of the case: Plaintiffs claim that YKK's products were covered by the Japanese Patent and were sold in violation of the ELA, whereas Defendants claim that the products did not fall within the scope of the Japanese Patent at all.

The balance of hardships also tips decidedly in Plaintiffs' favor. Although principles of comity suggest that U.S. courts should generally decline to interpret foreign patents, see Voda v. Cordis Corp., 476 F.3d 887, 903 (Fed. Cir. 2007), Defendants expressly agreed to litigate all disputes relating to the ELA in New York courts, ECF No. 55-4 ¶ 13. Defendants are free to raise the same arguments they would have presented to the Japanese court in this proceeding, and the Court is qualified to assess the scope of the Japanese Patent that is covered by the ELA. See Fed. R. Civ. P. 44.1. Moreover, the Japanese action would distract the parties from litigating the present action, would take a great deal of time, would require Plaintiffs to incur significant

additional litigation expenses in a geographically distant jurisdiction, and might well result in a Japanese decision that conflicts with this Court's determination of the merits. Thus, Plaintiffs have satisfied the requirements for a preliminary anti-suit injunction.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for a preliminary anti-suit injunction is GRANTED. Defendants are hereby ENJOINED from maintaining their declaratory judgment action in Japan during the pendency of the present action. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 327.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED: May 8, 2018
New York, New York