# EXHIBIT 10

# TO THE DECLARATION OF STEVEN CHERNY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANTS' EXPERTS PAUL K. ARNTSON, LAUREN R. KINDLER, AND <u>RANDY MEIROWITZ</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - -

| | | |
|---|---|---|
| AU NEW HAVEN, LLC, AND TRELLEBORG COATED SYSTEMS US, INC. | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| vs. | : | 15-CV-034110-GHW |
| YKK CORPORATION, ET AL | : | |
| Defendant. | : | |

- - - - - - -

TRANSCRIPT of testimony of LAUREN KINDLER as taken by and before PATRICIA A. PUCCIARELLO, a Shorthand Reporter and Notary Public of the State of New York at the Law Offices of COOPER & DUNHAM, LLC, 30 Rockefeller Plaza, 20th Floor, New York, New York on Friday, September 29th, 2017, commencing at 9:39 a.m.

B. SPINNER ASSOCIATES
CERTIFIED SHORTHAND REPORTERS
P.O. BOX 8760, SOMERVILLE, NEW JERSEY 08876
TELEPHONE (908) 369-3931

Kindler - direct

1  A. I wouldn't characterize it as
2  unsuccessful, because it appears that there were
3  multiple times where Mr. Press agreed to sign
4  something and then ultimately didn't sign it.
5  Whereas in some case -- in other cases you see
6  situations where both parties are saying no way,
7  no how.
8         There seemed to be some agreement
9  between the parties over certain offers and it
10 just never got consummated. So I can agree that
11 it was never consummated, but they appear to have
12 reached agreement along the way.
13 Q.    And these offers back and forth
14 involve Exclusive Output Contracts that YKK never
15 agreed to?
16 A.    Yes, at times, yes.
17 Q.    And so, you know the License
18 Agreement says the only way it can be amended is
19 by writing signed by both parties?
20 A.    Yes.
21 Q.    And you understand that there has
22 never been an amendment to the License Agreement
23 signed by both parties, is that correct?
24 A.    Yes
25 Q.    So isn't it true that the one

Kindler - direct

scenario that we know was not used, the but for world, is the parties negotiating a new royalty structure in 2006?

A. I don't think I understand the question. I mean, in all cases we arrive at litigation because an agreement wasn't reached. That doesn't mean that we aren't required to come up with a hypothetical agreement or situation that would have been reached. In my opinion, it would have been a reasonable royalty negotiation.

Q. In how many other cases have you expressed an opinion that a reasonable royalty negotiation was, in the but for world, on a breach of contract claim?

A. I think in at least one other case.

Q. And what was the name of that case?

A. Can I consult my CV?

Q. Sure.

A. So it would have been the Keldar versus Mayborn case, which involved -- I was retained as an expert, damages expert for Mayborn, the defendant. It involved breach of contract relating to the Tommy Tippy Perfect Prep Machine for formula warming.

Q. Have you ever given an opinion what

Kindler - direct

1  a reasonable royalty negotiation would have been
2  in the but for world in connection with a breach
3  of contract claim on behalf of a plaintiff?
4  A.    No, I think I've only been retained on
5  behalf of a plaintiff in the case we discussed
6  earlier this morning, the false advertising case,
7  and then in another patent infringement case that
8  did not involve breach of contract claim.
9        Q.    All of your other retentions were on
10 behalf of defendants?
11 A.    Well, I'm sorry.  I should -- I misspoke.
12 Not in terms of retention, but in terms of
13 situations where I actually gave either
14 deposition testimony or trial testimony.
15       Q.    So those were all for defendants
16 except for the exceptions you just noted?
17 A.    No, the other one was Easton, which was
18 also patent infringement, plaintiff's side.
19       Q.    Okay.  And -- but did that involve
20 you giving an opinion about a reasonable royalty
21 being in the but for world in a breach of
22 contract claim?
23 A.    No, no.  In no -- none of those situations
24 was there a breach of contract claim involved in
25 situations where I was retained by the plaintiff.

Kindler - direct

1   Q. Now, if you look at paragraph 157 of
2   your report, the opinion you give is that the
3   likely outcome of the hypothetical negotiations
4   between Uretek and YKK would be a nonexclusive
5   freedom to operate within the excluded markets
6   licensed to the Uretek patents, correct?
7   A. Yes.
8   Q. Why were you of the opinion that in
9   the but for world Uretek and YKK would have
10  negotiated a nonexclusive license to YKK?
11  A. Well, in this situation, particularly in
12  patent infringement you have to assume that.
13  That's just a requirement. I can't assume a
14  patent infringement case that it's going to be an
15  exclusive license.
16  Q. But I'm asking you, and if I wasn't
17  clear, I apologize, you give the same opinion
18  with respect to the contract but for world and
19  the patent infringement but for world?
20  A. Correct.
21  Q. So my questions are now limited to
22  the breach of the license agreement but for
23  world. Okay?
24      Why do you assume that it would be a
25  nonexclusive license that the parties would have