# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AU NEW HAVEN, LLC, and TRELLEBORG COATED SYSTEMS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> YKK CORPORATION, et al., <br><br> Defendants. | Civil Action No. 15-CV-03411 (GHW) (SN) <br><br> **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

I.   PLAINTIFFS FAIL TO SHOW THAT MR. COCKRELL'S PROPOSED TESTIMONY IS ADMISSIBLE .......................................................................................... 2

    A.   Plaintiffs Do Not Identify Any Support For Mr. Cockrell's Standardless And Inconsistent Classification Of Clothing Items As "High End Outerwear" .................................................................................................................. 2

    B.   Plaintiffs' Attempts To Rehabilitate Mr. Cockrell's Opinions On Zipper Advantages And Alternatives Contradict His Deposition Testimony ..................... 4

    C.   Mr. Cockrell's Proposed "Common Sense" Opinions On Customer Confusion Will Not Help The Jury ......................................................................... 5

II.  PLAINTIFFS FAIL TO SHOW THAT MS. BAGLEY'S PROPOSED TESTIMONY IS ADMISSIBLE .......................................................................................... 7

III. PLAINTIFFS FAIL TO SHOW THAT MR. DONOHUE'S PROPOSED TESTIMONY IS ADMISSIBLE .......................................................................................... 8

CONCLUSION ................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) .................................................................................................... 4

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................................... 10

*Eastman Kodak Co. v. Sun Microsystems, Inc.*,
    2004 WL 6056980 (W.D.N.Y. Oct. 6, 2004) .......................................................................... 8

*ECD Investor Grp. v. Credit Suisse Int'l*,
    2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017) ....................................................................... 5, 9

*Faryniarz v. Nike, Inc.*,
    2002 WL 1968351 (S.D.N.Y. Aug. 23, 2002) ......................................................................... 3

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ................................................................................................................ 4

*In re Initial Public Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001) ....................................................................................... 7

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016) ............................................................................... 7, 10

*Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*,
    960 F.2d 294 (2d Cir. 1992) .................................................................................................... 6

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    103 F. Supp. 2d 268 (S.D.N.Y. 2000) ................................................................................... 10

*Linde v. Arab Bank, PLC*,
    920 F. Supp. 2d 282 (E.D.N.Y. 2011) ..................................................................................... 7

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*,
    97 F. Supp. 3d 485 (S.D.N.Y. 2015) ................................................................................. 2, 10

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016) ..................................................................................... 3

*Minebea Co. v. Papst*,
    444 F. Supp. 2d 68 (D.D.C. 2006) .......................................................................................... 8

*Nieves-Villanueva v. Soto-Rivera*,
    133 F.3d 92 (1st Cir. 1997) ..................................................................................................... 7

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ............................................................................ 5

*Ruggiero v. Warner-Lambert Co.*,
　424 F.3d 249 (2d Cir. 2005) .................................................................................................. 3

*Scott v. Chipotle Mexican Grill, Inc.*,
　315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................................. 3

*SEC v. Mudd*,
　2016 WL 2593980 (S.D.N.Y. May 4, 2016) ......................................................................... 3

*Tomaselli v. Zimmer Inc.*,
　2017 WL 2820065 (S.D.N.Y. Jan. 20, 2017) ........................................................................ 9

*Valador, Inc. v. HTC Corp.*,
　242 F. Supp. 3d 448 (E.D. Va.), *aff'd* 707 F. App'x 138 (4th Cir. 2017) ................................ 6

*Wills v. Amerada Hess Corp.*,
　379 F.3d 32 (2d Cir. 2004) .................................................................................................... 1

*Winn v. Schafer*,
　499 F. Supp. 2d 390 (S.D.N.Y. 2007) ................................................................................... 7

## **Rules and Regulations**

Fed. R. Civ. P. 26(a)(2)(B)(i) ........................................................................................................ 9

Fed. R. Civ. P. 44.1 ...................................................................................................................... 7

Fed. R. Evid. 702 ..................................................................................................................... 1, 2

# INTRODUCTION

Plaintiffs fail to offer any basis to admit the proposed expert testimony of Mr. Cockrell, Ms. Bagley, or Mr. Donohue. Mr. Cockrell's "you know it when you see it" definition of High End Outerwear is untestable and inconsistently applied even by Mr. Cockrell himself—the very definition of inadmissible opinion testimony. Additionally, his opinions on acceptable, non-infringing alternatives to the Accused Zippers are entirely speculative given his admission that he does not understand the scope of the '214 patent. Likewise, his customer-confusion opinion relies not on expertise or any extrinsic analysis (such as a survey) but on supposed "common sense," which is within the exclusive purview of the jury. Ms. Bagley's opinions are, at best, legal ones for the *Court's* consideration, and fail even in that role because she improperly speculates about the results of hypothetical foreign patent litigations based on patent claims she did not review. And Mr. Donohue's lost profits analysis is so deficient that Plaintiffs propose to treat his failure to address the unacceptable lead times for zippers laminated in Connecticut as an unstated conclusion that no customer would change any order based on delivery times. That attorney argument is no substitute for reliable expert opinion.

Unable to show that their proposed expert witnesses satisfy the *Daubert* and Fed. R. Evid. 702 standards, Plaintiffs seek (Opp. 1-4) to relax the bar that properly keeps unreliable opinions from the jury. But even if Plaintiffs were correct that they bear a "lower burden of proof" on damages (*id.*), they "fail[] to appreciate that the standards for determining the reliability and credibility of expert testimony are not altered merely because the burden of proof is relaxed." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004). Those standards apply in full and require that these purported experts, each of whom merely restates Plaintiffs' arguments rather than provides expert analysis, be excluded.

**ARGUMENT**

I. **PLAINTIFFS FAIL TO SHOW THAT MR. COCKRELL'S PROPOSED TESTIMONY IS ADMISSIBLE**

A. **Plaintiffs Do Not Identify Any Support For Mr. Cockrell's Standardless And Inconsistent Classification Of Clothing Items As "High End Outerwear"**

Plaintiffs offer no real response to YKK's showing (Mot. 6-11) that the Court should exclude Mr. Cockrell's *ad hoc* conclusions regarding which jackets, pants, and gloves among thousands constitute "High End Outerwear." Those litigation-inspired opinions rest on an admittedly subjective and incomplete definition that even Mr. Cockrell cannot reliably apply.

*First*, Plaintiffs wrongly seek (Opp. 4-5) to exempt Mr. Cockrell from the *Daubert* standard by casting him as a mere synthesizer of information. The information he summarizes, however, is his own unreliable classification of whether an item is "High End"—the precise opinion YKK challenges. Thus, unlike the cases Plaintiffs cite, Mr. Cockrell does not present "data … in a more readily understandable format," *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504 (S.D.N.Y. 2015), but instead creates the purported "data" in the first instance. Mr. Cockrell cannot turn an unreliable definition into admissible testimony just by applying it repeatedly and summarizing his results.

*Second*, Plaintiffs' attempted defense (Opp. 6-11) of Mr. Cockrell's subjective "high-end outerwear" opinion on the merits fails to show that his definition of that term can be reliably applied or tested against external sources. Plaintiffs admit (Opp. 10) that Mr. Cockrell's classification is based on not just the unweighted factors he included in his report but also "overall considerations such as 'you know it when you see it,'" and that "any one of [these factors] ultimately could warrant a HEO designation." This kind of boundless and untestable opinion cannot "be challenged in some objective sense," and thus "cannot reasonably be assessed for reliability." Fed. R. Evid. 702 Advisory Committee Note. "Despite the Second Circuit's

2

inclusive standard for expert testimony," this Court "should not abandon its gatekeeping role and rely only upon cross-examination to expose any flaws in a proposed expert's testimony where the expert's methodology is untestable." *Faryniarz v. Nike, Inc.*, 2002 WL 1968351, *2 (S.D.N.Y. Aug. 23, 2002); *see, e.g.*, *SEC v. Mudd*, 2016 WL 2593980, *5 (S.D.N.Y. May 4, 2016) (excluding expert whose "methodology is untestable, not reproducible, and thus unreliable"). Plaintiffs' citation of cases (Opp. 8-9) acknowledging qualitative expertise does not avoid the problem, as "[u]se of a qualitative or experience-based methodology does not exempt an expert from *Daubert* scrutiny." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 647 (S.D.N.Y. 2016) (excluding qualitative expert's opinions where "the Court is left with no meaningful guidance as to how [he] reached his conclusion"); *see, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 50 (S.D.N.Y. 2016) (excluding qualitative expert's opinions "offered without benefit of citation to research, studies or other generally accepted support for expert testimony") (internal quotation marks omitted).

Plaintiffs attempt (Opp. 6) to excuse Mr. Cockrell's impermissibly subjective opinion by listing YKK documents that include what Plaintiffs elsewhere (Opp. 7) correctly describe as "generic references to 'high end' … found in print and online." But neither Mr. Cockrell, who merely opined that these documents are "consistent with [his] opinions" (Cockrell Rpt. ¶ 18), nor Plaintiffs, who admit (Opp. 7) that there is no industry-wide standard definition of "high end," actually suggest that Mr. Cockrell's definition can be derived from these documents, none of which even lists the set of features he claims to consider. *Compare* Cockrell Rpt. ¶¶ 11-17, *with* Cockrell Exhs. 2A-2P. Because Mr. Cockrell's opinions are not actually based on the only industry sources he identifies, there is "simply too great an analytical gap between the data and the opinion proffered" to allow it to go to the jury. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d

3

249, 255 (2d Cir. 2005) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

*Finally*, Plaintiffs' excuses (Opp. 11-12) for Mr. Cockrell's ***50% failure rate applying his own definition*** at deposition actually contradict the opinions he offers in his report. Mr. Cockrell opined that "High End" was a "term[] of art in the worldwide outerwear industry, with commonly understood meanings," which "generally have remained constant since at least 2001." Cockrell Rpt. ¶ 6. Now, however, Plaintiffs take (Opp. 7) the contrary position that "no one reasonably expects to find a formulaic definition accepted as the exact standard in the industry." Even accepting Plaintiffs' unsupported explanation (Opp. 11) that the jackets Mr. Cockrell reviewed "include[d] some as to which opinions might differ," the fact that *Mr. Cockrell's* opinion about these jackets varies over time shows that his definition is unreliable and thus inadmissible. *See, e.g.*, *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (affirming exclusion of expert who "failed to apply his own methodology reliably").[1]

### B. Plaintiffs' Attempts To Rehabilitate Mr. Cockrell's Opinions On Zipper Advantages And Alternatives Contradict His Deposition Testimony

Plaintiffs also fail to refute YKK's showing (Mot. 11-14) that Mr. Cockrell's unqualified and unsupported opinions about the qualities of the patented zippers are inadmissible. Their bald assertion (Opp. 13) that Mr. Cockrell "understands" what the '214 patent covers contradicts his sworn admissions that he had not reviewed the patent and does not "know with any specificity what the patent does and doesn't cover." Cockrell Tr. 70:25-71:25. Indeed, Mr. Cockrell's opinion on the purported advantages of the patented product never cites the adhesion, abrasion resistance, and flexibility qualities with which Plaintiffs now claim he is familiar, but instead describes the zippers' appearance, weight, and ease of access—unclaimed qualities Mr. Cockrell

---

[1] Mr. Cockrell's 50% failure rate at deposition is particularly damaging given his claim to have "be[en] conservative in my review" by excluding products that "could reasonably be considered the lower tier of High End Outerwear." Cockrell Rpt. ¶ 39. His inconsistent evaluation establishes that he did not do so.

4

makes no effort to connect to the claims in the patent. Cockrell Rpt. ¶¶ 45, 51. Because Mr. Cockrell did not review the patent and offers no opinion as to the advantages of its actual claims, his proffered testimony simply repeats Plaintiffs' litigation positions and will not help the jury.

Plaintiffs also wrongly imply (Opp. 14) that Mr. Cockrell offered an opinion on the Light Rail water resistant zippers produced by IDEAL. Although Plaintiffs provide attorney *argument* about the quality of those zippers in support of their own *Daubert* motion (Dkt. 365, at 15-25), Mr. Cockrell's report does not identify any deficiencies in, or indeed evaluate in any way, IDEAL's Light Rail water resistant zippers or any other specific third-party alternative (*see* Cockrell Rpt. ¶¶ 44-53). And Mr. Cockrell testified at deposition, while physically inspecting the product at issue, that Columbia used the IDEAL Light Rail zipper in a jacket he classified as high end outerwear and that, based on his "experience in the industry," he was "sure [Columbia] did not believe that" the IDEAL zippers were unacceptable. Cockrell Tr. 144:5-147:11. Given Mr. Cockrell's deposition admissions and the absence of any contrary evidence in his report, the Court should preclude him from opining that there are no acceptable non-infringing alternatives.

### C. Mr. Cockrell's Proposed "Common Sense" Opinions On Customer Confusion Will Not Help The Jury

Plaintiffs also fail (Opp. 14-16) to overcome YKK's showing (Mot. 14-15) that Mr. Cockrell's customer-confusion opinion is inadmissible. Plaintiffs identify *no* case in which an expert has been permitted to offer an opinion on customer confusion despite never having studied the subject nor having analyzed customer responses to the statements at issue.[2] Courts

---

[2] The cases Plaintiffs cite (Opp. 15) concerned experts with extensive training in the fields of their proposed testimony. *See Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, *4 (S.D.N.Y. Jan. 10, 2018) (expert with masters degree in economics who had extensively presented on economic and financial topics qualified to opine on econometric models); *ECD Investor Grp. v. Credit Suisse Int'l*, 2017 WL 3841872, *11-12 (S.D.N.Y. Sept. 1, 2017) (expert with Ph. D. in finance and economics and 40 years' experience in capital markets, including board membership for hedge funds engaged in convertible arbitrage, qualified to opine on hedging of convertible notes).

5

evaluating expert testimony on customer confusion require more expertise than having once been one of the customers in the industry, the only qualification Plaintiffs can offer for Mr. Cockrell. *See, e.g.*, *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 458 (E.D. Va.), *aff'd* 707 F. App'x 138 (4th Cir. 2017) (excluding customer confusion expert with "four decades of experience as a market research consultant" because he "ha[d] no prior experience conducting surveys regarding likelihood of confusion involving claims of trademark infringement").

Nor do Plaintiffs explain why, regardless of his qualifications, Mr. Cockrell should be permitted to testify about customer confusion without having conducted a survey or other analysis of consumer behavior. "Where, as here, a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, *by extrinsic evidence*, that the challenged [statements] tend to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992) (emphasis added). But instead of relying on a survey or other evidence showing actual consumer confusion, Mr. Cockrell simply asserts that no reputable company would have used YKK-laminated zippers if it had known about the excluded markets in the ELA (Cockrell Rpt. ¶¶ 54-74)—an opinion that his own actions disprove: As he admitted at deposition, even after being retained in this case, he has knowingly continued to use YKK-laminated zippers in what he believes to be "High End Outerwear" designs for reputable manufacturers. Cockrell Tr. 21:25-22:7, 23:10-25:4, 44:5-19. Mr. Cockrell should not be permitted to offer an unqualified and unsupported opinion that he has shown to be false.

Plaintiffs also effectively concede (Opp. 15) that this opinion depends on the absence of "non-infringing, acceptable alternative zippers," and thus fails for the reasons discussed above. *See supra*, at 4-5; *see also* Mot. 11-14. Plaintiffs also fall back on "common sense," but that

6

position too supports exclusion because expert testimony "based on simple common sense … is not helpful; the jury does not need expert opinion because its common sense will suffice." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 484 (S.D.N.Y. 2016).

## II. PLAINTIFFS FAIL TO SHOW THAT MS. BAGLEY'S PROPOSED TESTIMONY IS ADMISSIBLE

Plaintiffs respond to YKK's showing (Mot. 16-18) that Ms. Bagley's legal opinions are inadmissible by conflating the roles of judge and jury with respect to foreign law. Plaintiffs suggest (Opp. 16) that Ms. Bagley's testimony "will be of great assistance *to the Court*" (emphasis added), and, indeed, as this Court has recognized in this case (Dkt. 356 at 9), it is the *Court* that Fed. R. Civ. P. 44.1 authorizes to "consider any relevant material or source" in "determining foreign law." But no Rule or other authority renders Ms. Bagley's foreign law opinions admissible as *evidence* at trial. To the contrary, it is well established that "questions of foreign law are not to be determined through a proffer of expert testimony given to the jury." *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011); *see, e.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("Even in the case of foreign law, under modern practice the testimony is generally given to the judge, outside of the presence of the jury, and is meant to assist the judge in determining the appropriate instructions."). It is thus unsurprising that the only case Plaintiffs cite involving a foreign law opinion dealt exclusively with a *court's* determination of a question of law. *See Winn v. Schafer*, 499 F. Supp. 2d 390, 396 n.28 (S.D.N.Y. 2007) (standing under English law); *cf. In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001) (excluding U.S. legal opinion).

Even confined to its proper role as a potential aid to the Court, Ms. Bagley's opinion should be excluded. "The purpose of expert testimony such as that of [Ms. Bagley] is to aid the court in determining the content of the applicable foreign law—not to apply it to the facts of the

7

case." *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 182 (D.D.C. 2006). Yet Ms. Bagley purports to offer conclusions not about the *content* of foreign law, but instead about how foreign courts would apply foreign law to interpret the claims of specific foreign patents. Bagley Rpt. ¶¶ 125-26.[3] That is not a proper subject of expert testimony, whether directed to the Court or the jury.

## III. PLAINTIFFS FAIL TO SHOW THAT MR. DONOHUE'S PROPOSED TESTIMONY IS ADMISSIBLE

Plaintiffs' defense (Opp. 17-25) of Mr. Donohue's proposed lost-profits testimony is ineffective because it ascribes to him opinions he either received from Mr. Cockrell or never offered.[4] As YKK explained (Mot. 18-25), that testimony should be excluded in its entirety.

*First*, Mr. Donohue's damages calculation is inadmissible because it depends on Mr. Cockrell's opinions, which should be excluded for the reasons discussed. *See* Part I, *supra*; Mot. 6-15. Plaintiffs do not deny that Mr. Donohue relies on Mr. Cockrell's unreliable High End Outwear definition, nor could they. *See* Donohue Rpt. ¶ 110. As to acceptable, non-infringing alternatives, Plaintiffs assert (Opp. 18), without citation, that "Donohue considered the issue," but Mr. Donohue has admitted that he did not offer his own opinion on this issue but instead offered one "based on Mr. Cockrell in large part." Donohue Tr. 195:11-196:1; *see id.* at 196:18-20, 197:21-198:15. Mr. Donohue, therefore, "may not offer testimony based on [Mr. Cockrell's] opinions unless those opinions are first admitted into evidence." *Eastman Kodak Co. v. Sun Microsystems, Inc.*, 2004 WL 6056980, *1 (W.D.N.Y. Oct. 6, 2004).

---

[3] In all events, Plaintiffs never explain how Ms. Bagley could offer reliable testimony on whether foreign courts would find that the claims of the foreign patents cover the Accused Zippers, where she admits that she has not compared any YKK product to those claims. *See* Bagley Tr. 34:6-14; Mot. 17-18.

[4] Plaintiffs concede (Opp. 20 n.18) that contract lost profits damages are not available after October 2014. Mr. Donohue's lost profits opinion, however, does not reflect that cutoff (*see* Donohue Rpt. ¶¶ 136-93), nor does it acknowledge that foreign lost profits are not available for patent infringement at any point. *See* Am. Compl. (Dkt. 90) ¶¶ 62-67 (patent claims seek only domestic damages); *see also* YKK Mot. for Summary Judgment (Dkt. 382) at 39-48 (Lanham Act and CUTPA claims should be dismissed).

8

*Second*, Plaintiffs do not fully address YKK's argument (Mot. 21-23) that the central presumption underlying Mr. Donohue's "but for" scenario—that having Plaintiffs laminate the zippers at issue would have no effect on sales—has no factual basis and is disproven by the documents on which he relies. Even if, as Plaintiffs contend (Opp. 18-19), the Accused Zippers all would have been sold for the same price as they were historically, even though laminated by Plaintiffs and shipped from the United States (an assumption that is unsupported and counter-factual), Mr. Donohue's calculations are still too speculative to go to the jury because they flatly ignore the differences in lead times between YKK-laminated and Plaintiff-laminated zippers, a major customer concern expressed in the documents Mr. Donohue cited. *See* Donohue Exh. 2-R (citing, *e.g.*, Shibata Exhs. 67 & 73 (customer complaints regarding lead times)). Plaintiffs do not deny that lead times are an essential factor in product sales. Instead, they assert (Opp. 21 n.20), incredibly, that Mr. Donohue's "analyses necessarily included consideration of … lead time," despite this factor appearing nowhere in his report, because Mr. Donohue testified at his deposition that "Uretek would achieve the sales" (Donohue Tr. 188:21-189:20). This assertion is circular and conclusory, and it contradicts Mr. Donohue's report, where he acknowledges accepting, without any evaluation, Plaintiffs' contention that they would have laminated every Excluded Market zipper in the "but for" world. Donohue Rpt. ¶ 136. Because Mr. Donohue ignored evidence that contradicts the central assumption of his lost profits analysis in favor of Plaintiffs' *ipse dixit*, his damages opinions should be excluded as unreliable. *See, e.g.*, *ECD Investor Grp. v. Credit Suisse Int'l*, 2017 WL 3841872, *13-14 (S.D.N.Y. Sept. 1, 2017) (excluding witness who selectively ignored evidence that rendered his assumptions baseless).[5]

---

[5] Even reading this fragmentary testimony as Plaintiffs propose, any implicit lead-time opinion should be excluded because it was not disclosed in Mr. Donohue's report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (must disclose "basis and reasons" for opinions); *Tomaselli v. Zimmer Inc.*, 2017 WL 2820065, *8 (S.D.N.Y. Jan. 20, 2017) (barring testimony "on matters not disclosed in his preliminary expert report").

9

*Third*, Plaintiffs fail to defend (Opp. 22-23) Mr. Donohue's definition of the "luggage" market, which simply adopts—without testing or verifying their validity—pre-existing category codes found in various YKK affiliates' records. *See* Donohue Tr. 166:13-22; Donohue Exh. 12A-R. Plaintiffs identify no specialized knowledge Mr. Donohue brought to bear in deciding to apply YKK's internal sales codes sight-unseen, or any evidence those codes have the same meaning as terms in the ELA. *See* Donohue Rpt. ¶¶ 61-65.

*Finally*, Plaintiffs' discussion (Opp. 23-25) of the *mechanics* of Mr. Donohue's extrapolation from 12 of YKK's customers to the other 3,000 does not provide any "reliable basis for extrapolating from the available data." *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 283 (S.D.N.Y. 2000). And neither Plaintiffs nor Mr. Donohue provides any explanation why YKK's largest customers, all of whom Mr. Cockrell claimed sell High End Outerwear (*see* Cockrell Rpt. ¶ 43), are representative of all of YKK's other, smaller customers, as to whom Mr. Cockrell has not made the same claim. The untested assumption that unobserved customers are exactly like the observed customers is precisely the kind of faulty extrapolation that warrants exclusion. *See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319-20 (S.D.N.Y. 2009) (expert's opinion that there was "no reason to assume" unobserved territories would differ from existing data was insufficient basis for extrapolation); *Mirena IUD Prods.*, 169 F. Supp. 3d at 433 (similar).[6]

## CONCLUSION

The Court should exclude the opinions and testimony of Plaintiffs' experts David W. Cockrell, Margo A. Bagley, and James J. Donohue.

---

[6] Plaintiffs note (Opp. 25) that *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485 (S.D.N.Y. 2015), approved extrapolating from two tested products to 400 untested products, but omit that extrapolation was appropriate there only because the untested products shared the relevant feature with the two tested sunglasses—the survey "was designed to test the marks, not the frames." *Id.* at 508.

10

Dated: August 20, 2018	Respectfully Submitted,

By:   s/ *Steven Cherny*
Steven Cherny
Deborah K. Brown
Toby E. Futter
QUINN EMANUEL URQUHART
 & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-8700
Facsimile: (212) 849-7100
stevencherny@quinnemanuel.com
deborahbrown@quinnemanuel.com
tobyfutter@quinnemanuel.com

Russell A. Korn
Michael A. Bertelson
Amanda N. Brouillette
KILPATRICK TOWNSEND
 & STOCKTON LLP
1100 Peachtree Street NE Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
rkorn@kilpatricktownsend.com
mbertelson@kilpatricktownsend.com
abrouillette@kilpatricktownsend.com

*Attorneys for Defendants*