# Exhibit 2

# ORIGINAL

## EXCLUSIVE OUTPUT CONTRACT

This agreement is made and executed this 11th day of August, 1999 (hereafter the "Execution Date"), between Uretek, Inc. (hereinafter referred to as the "Manufacturer"), whose principal office is located at 30 Lenox Street, P.O. Box 326, New Haven, CT 06513, and YKK (U.S.A.) Inc. (hereinafter referred to as the "Company"), whose principal office is located at 1300 Cobb Industrial Drive, Marietta, GA 30066.

WHEREAS, the Manufacturer is engaged in the coating and laminating of zippers, and the Company is engaged in the manufacture and sale of zippers and closure related products.

WHEREAS, this agreement is intended to appoint the Company as the exclusive Company for the exclusive sale of coated or laminated zippers produced by Manufacturer under U.S. Patent No. 5,709,766, and any other patents and/or patent applications (hereinafter referred to as the "Zippers") and to set forth the respective duties, obligations, and responsibilities of both parties to this agreement.

NOW, THEREFORE, in consideration of the mutual promises and convenants contained herein, the parties agree as follows.

I.   **TERM.**
This Agreement shall commence on the date first written above and shall continue for a period of five (5) years until July 31, 2004. This Agreement shall terminate unless both parties mutually agree in writing, at least sixty (60) days prior to the expiration of the original term, to renew the Agreement for a period of three (3) years.

II.   **RIGHTS GRANTED.**
The Manufacturer hereby grants to the Company the exclusive right upon the terms and conditions herein contained to purchase inventory, promote and resell the Manufacturer's Zippers. Company shall have the right to first refusal for exclusive Company rights for all future Zippers, under the same terms and conditions contained herein.

The Manufacturer promises not to authorize nor expressly grant any other company, distributor or individual the right to sell the Zippers and will not itself sell the Zippers to anyone other than the Company. Manufacturer further promises that all present customers for Zippers will be identified to Company by September 1, 1999 and that all future inquiries about the Zippers will be referred solely to Company.

III.   **CONTROLLING TERMS.**
All of the sales of the Manufacturer's Zippers to the Company shall be made under the provisions of this agreement. Any documents that either party may use from time to time for their mutual convenience such as purchase orders or sales acknowledgment forms shall be deemed to be for administrative convenience only and the terms and conditions of this agreement shall supersede and take precedence over any terms and conditions which may be contained on any such forms.

IV.   **PRICE.**
Company shall pay to Manufacturer a fee of Two Hundred Thousand Dollars ($200,000) for the exclusive right to purchase and resell all Zippers of Manufacturer.

The price the Manufacturer charges to the Company per Zipper ordered shall be $.87 per yard if Company orders, and schedules for delivery within 60 days of such orders, under two hundred thousand (200,000) yards per month, and $.77 per yard if Company orders, and schedules for delivery within 60 days of such orders, two hundred thousand (200,000) or more yards per month.



Pl. Depo. Exh.

15

Sarumaru/Shibata

YKK0000015

This pricing is for supply by Manufacturer to the Company of standard Zipper products, and is applicable for Zippers up to 2 inches wide, provided as uncoated zippers by Company to Manufacturer on spools of at least 400 yards, with at least ten spools of the same type zipper, to be coated with either clear or black urethane. This pricing does not include changes to the standard Zipper including but not limited to embossing and pigmented urethane.

For each calendar year of this Agreement, Company agrees to purchase Zippers from Manufacturer at a minimum level of four hundred thousand (400,000) yards per year.

V.   PURCHASE REQUIREMENTS.
During the twelve (12) weeks following the Execution Date, Manufacturer agrees and guarantees its ability to produce and deliver on time zippers in quantities as follows:

| | |
|---|---|
| First Week | 16,000 yds. |
| Second Week | 20,000 yds. |
| Third Week | 24,000 yds. |
| Fouth Week | 24,000 yds. |
| Fifth Week | 32,000 yds. |
| Sixth Week | 36,000 yds. |
| Seventh | 44,000 yds. |
| Eighth | 52,000 yds. |
| Ninth | 52,300 yds. |
| Tenth | 56,000 yds. |
| Eleventh | 60,000 yds. |
| Twelfth | 64,000 yds. |

After the initial twelve week period, Mamufacturer agrees and guarantees its ability to produce and deliver on time up to two hundred and fifty thousand (250,000) yards per month, for Zippers coated with clear or black urethane and provided unseparated and unslit, as required by Company's purchase order.

VI.   DELIVERY.
Manufacturer shall fill Company's orders within the time required by Company. Such orders must be written or oral with written confirmation received by Manufacturer within 48 hours.

VII.   INTELLECTUAL PROPERTY.
Manufacturer agrees to maintain all Intellectual Property filings, relating to the Zippers, necessary to protect its interest in such. In the event that any new patents are issued covering the Zippers, Manufacturer will notify Company of the assigned number of such patent.

Manufacturer shall inform Company immediately if Manufacturer learns of any use or infringement of any of Manufacturer's intellectual property.

VIII.   WARRANTIES AND INDEMNIFICATION.
Manufacturer and Company shall jointly write a product specification for testing of Zippers, and Manufacturer will certify and issue test reports indicating that Zippers have met such specifications. Upon delivery, Company shall have the right to inspect the Zippers and within ten (10) working days shall give notice to Manufacturer of any nonconformities or defective products. In the event that any Zipper proves to be defective, the Manufacturer will immediately make an appropriate adjustment in the original sales price or provide a replacement Zipper, whichever remedy Company demands.

2

YKK0000016

IX.  **TRADEMARKS AND TRADE NAMES.**
Manufacturer authorizes the Company to use, authorize, or permit the use of any of the Manufacturer's trademarks or trade names in Company's advertising, promotion and sale of the Zippers.

X.  **RELATIONSHIP OF THE PARTIES.**
The relationship of the parties to this agreement is vendor and vendee. The Company, its agents, and employees shall not be deemed agents or representatives of the Manufacturer. Neither the Company nor the Manufacturer shall have any right to enter into any contract or commitment in the name of, or on behalf of, the other, or to bind the other in any respect whatsoever.

Manufacturer acknowledges that Company is presently and will continue in the future, the independent, ongoing development of its own technology and sale of water repellant closure related zippers.

XI.  **TERMINATION.**
This agreement shall continue from its effective date until expiration or until it is terminated by either party as follows:

If either party is in material breach of its obligations under this Agreement, the nonbreaching party shall provide written notice of the breach to the breaching party, and the breaching party shall have 60 days from such notice to correct such breach. Should the breach continue beyond such 60 days, the nonbreaching party shall have the right to immediately terminate this Agreement by giving written notice to the breaching party of its intent to terminate the Agreement.

XII.  **FORCE MAJEURE.**
Either party shall have the right, upon written notice to the other within ten (10) days of the event described below, to suspend the running of the term of this Agreement and their obligations hereunder, if as a result of an Act of God, accident, fire, riot, earthquake, strike, civil commotion, act of public enemy, law, enactment, rule, order or act of any governmental body of the United States, or other cause of a similar or dissimilar nature not reasonably within the control of either party hereto or which such party could not with reasonable diligence have avoided, Manufacturer or Company is materially hampered in performing their obligations hereunder. Such suspension shall be for the duration of any such event or contingency. During any such suspension, Manufacturer shall not render services in violation of Company's rights hereunder to any other person or company for a period of six months. Should such suspension continue beyond six months due to an event affecting Company, Manufacturer shall have the right to terminate this agreement. Should such suspension continue beyond six months due to an event affecting Manufacturer, Manufacturer will return a pro-rated amount of the initial two hundred thousand dollars to Company based on the time remaining in the initial term of this Agreement. Otherwise, obligations under this Agreement shall resume immediately following such event causing the suspension of performance.

XIII.  **ASSIGNMENT.**
Neither party hereto shall assign, subcontract or otherwise transfer this Agreement or any interest hereunder, or assign or delegate any of its rights or obligations hereunder, without the prior written consent of the other party. Any such attempted assignment, subcontract or transfer thereof shall be void and have no force or effect. This Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and heirs.

XIV.  **NOTICE.**
Any notices required to be given under this Agreement shall be in writing and sent by certified or registered mail (return receipt requested) or by personal delivery, to the following addresses:

3

YKK0000017

Uretek, Inc.
30 Lenox Street, P.O. Box 326
New Haven, CT 06513
Attn: Hal Hoder

Uretek, Inc.
30 Lenox Street
P.O. Box 326
New Haven, CT 06513

YKK (U.S.A.) Inc.
1300 Cobb Industrial Drive
Marietta, GA 30066
Attn: Jack Sasaki

cc: YKK Corporation of America
Attn: Legal Department
1305 Cobb Industrial Drive
Marietta, GA 30066

XIV.   WAIVER.
Except as expressly provided in this Agreement, waiver by either party or failure by either party to claim a breach of any provision of this Agreement, shall not be deemed a waiver of any breach or subsequent breach, or have the effect of any waiver of such provisions.

XV.   ENTIRE AGREEMENT.
This Agreement contains a complete statement of all arrangements between the Parties with respect to its subject matter. No statements or agreements, oral or written, made prior to or at the execution of this Agreement shall vary or, modify the written terms hereof and neither party shall claim any amendment, modifications or release from any provision.  This Agreement may not be modified or amended in any respect except in writing signed by both Parties. The Parties affirm that they are acting on behalf of, and that this Agreement shall bind and benefit the Parties and their respective successors, assigns, parents, subsidiaries and affiliates throughout the world.

XVI.   GOVERNING LAW.
This Agreement shall be construed, interpreted and applied in accordance with, and shall be governed by the laws of the State of New York. The parties hereto select and submit themselves to the jurisdiction and competence of the courts within the State of New York for purposes of resolving any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, waiving any venue privilege to which the parties may be entitled because of their domiciles or for any other reason.

IN WITNESS WHEREOF, the parties have executed this agreement on the date first written above.

URETEK, INC.

Hal Hoder  *President*
President

Date  8/12/99

YKK (U.S.A) INC.

Bernie Rubin
Senior Vice President

Date  16 AUG 99

4

YKK0000018