# Exhibit 3

## EXCLUSIVE LICENSE AGREEMENT

This Agreement is made this 13th day of February, 2002 (the "Effective Date") by and between Harold Hoder of 31 Country Club Drive, Woodbridge, CT 06525 and Stuart Press of 80 Uncas Circle, Guilford, CT 06437-3107 (hereafter "HP"), and YKK Corporation, whose principal office is located at 1, Kanda Izumi-cho, Chiyoda-ku, Tokyo, Japan 101-8642 and its affiliated companies (hereafter "the Company").

### PREMISES

WHEREAS, HP owns certain intellectual property related to the manufacture of zippers including and described in U.S. Patent No. 6,105,214 and related foreign-filed patent applications; and

WHEREAS, Company desires to obtain an exclusive license from HP to manufacture, use, sell and offer for sale zippers coated or laminated according to U.S. Patent No. 6,105,214; and

WHEREAS, HP is willing to grant such as license to the Company;

NOW, THEREFORE, in consideration of mutual promises and covenants contained herein, and further good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. HP hereby grants to the Company an exclusive, worldwide right to manufacture, use, sell, offer for sale and otherwise use and practice the invention contained in U.S. Patent No. 6,105,214, corresponding applications in Taiwan, Canada, Japan and the European Patent Office, along with any re-issue, other foreign filing, continuation or improvement of same (hereafter "The Patents"), except for zippers placed in finished goods in the high end outerwear, marine, military and luggage (excluding sports and cosmetic bags) markets (collectively hereafter "Zippers").

2. The Company shall pay HP a royalty of US$.03 per meter for Zippers sold by the Company.

3. Royalties shall be paid along with a summary report of sales on a semi-annual basis, with report and payment due within forty-five (45) days of the close of each six (6) month period. Royalties shall be payable on Zippers manufactured, sold, offered for sale, imported or used in a country where HP has an issued Patent or pending Patent application.

4. The Company agrees that if the Zippers sold do not equal or exceed 350,000 meters per year, HP at its option can convert the license into a non-exclusive license.

5. The term of this Agreement is from the Effective Date set forth above through and until expiration of the last of The Patents to expire.

6. HP agrees to maintain The Patents as necessary to protect its interest in such, at HP's sole cost and discretion. Should HP make a positive decision to allow any of The Patents to lapse, HP agrees to provide YKK the right to take over any such Patent from HP. HP shall provide YKK with thirty (30) days notice prior to such lapse. In the event YKK elects to exercise this right, HP shall assign The Patent(s) to YKK without cost.

7. The Company agrees to promptly inform HP of any suspected infringement of The Patents by a third party. HP shall, at its sole discretion, have the first right to take action against such infringing party. Should HP decline to take action, the Company shall have the right to take action at its sole discretion. If either party takes action against such infringer, that party shall bear its own costs and have full benefit, if any, obtained by such action, unless agreed to the contrary by the parties in writing. The Company and HP agree to cooperate with each other, their attorneys, and other authorized representatives in any such action.

**Pl. Depo. Exh.**
\
**Sarumaru/Shibata**

04/11/02  THU 08:35  [TX/RX NO 5765]

YKK0000001

8. If either party is in material breach of its obligations under this Agreement, the non-breaching party shall provide written notice of the breach to the breaching party, and the breaching party shall have sixty (60) days from such notice to correct such breach. Should the breach continue beyond such sixty (60) days, the non-breaching party shall have the right to immediately terminate this Agreement by giving written notice to the breaching party of its intent to terminate the Agreement.

9. Neither party hereto shall assign, subcontract, sublicense or otherwise transfer this Agreement or any interest hereunder, or assign or delegate any of its rights or obligations hereunder, without the prior written consent of the other party. Any such attempted assignment, subcontract, sublicense or transfer thereof shall be void and have no force or effect. This Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and heirs.

10. Any notice required to be given under this Agreement shall be in writing and sent by certified or registered mail (return receipt requested) or by personal delivery, to the following addresses:

Uretek, Inc.  
30 Lenox Street  
P.O. Box 326  
New Haven, CT 06513  
Attn: Mr. Stuart Press  

YKK Corporation  
1, Kanda Izumi-cho  
Chiyoda-ku  
Tokyo, JAPAN 101-8642  
Attn: Masayuki Sarumaru  

11. Except as expressly provided in this Agreement, waiver by either party or failure by either party to claim a breach of any provision of this Agreement shall not be deemed a waiver of any breach or subsequent breach or have the effect of any waiver of such provisions.

12. This Agreement contains a complete statement of all arrangements between the parties with respect to its subject matter. No statements or agreements, oral or written, made prior to or at the execution of this Agreement shall vary or, modify the written terms hereof and neither party shall claim any amendment, modifications or release from any provision. The Agreement may not be modified or amended in any respect except in writing signed by both parties. The parties affirm that they are acting on behalf of, and that this Agreement shall bind and benefit the parties and their respective successors, assigns, parents, subsidiaries and affiliates throughout the world.

13. This Agreement shall be construed, interpreted and applied in accordance with, and shall be governed by the laws of the State of New York. The parties hereto select and submit themselves to the jurisdiction and competence of the courts within the State of New York for purposes of resolving any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, waiving any venue privilege to which the parties may be entitled because of their domiciles or for any other reason.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

HAROLD HODER  
*Harold Hoder*  
Signature  

STUART PRESS  
*[signature]*  
Signature  

YKK CORPORATION  
*[signature]*  
Masayuki Sarumaru  
Vice President  
Global Marketing  
Fastening Products Group  

04/11/02  THU 06:35  [TX/RX NO 5785]

YKK0000002