UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AU NEW HAVEN, LLC, and TRELLEBORG COATED SYSTEMS US, INC.,<br><br>                    Plaintiffs,<br><br>           v.<br><br>YKK CORPORATION, et al.,<br><br>                    Defendants. | Civil Action No. 15-CV-03411 (GHW)<br><br>**DEFENDANTS' MOTION TO LIMIT TESTIMONY OF EXPERT JAMES DONOHUE BEFORE THE JURY** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 3

    Procedural History ............................................................................................................ 3

    Plaintiffs' Proffered Damages Expert James Donohue ..................................................... 3

III. LEGAL STANDARD ....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 5

    A.    Donohue's Damages Opinions Rely on Improper, Cascading Speculation. ................................................................................................... 6

        1.    Donohue's Damages Number for 3000+ YKK Customers Should be Excluded Because There is No Causal Nexus Supporting His Opinion. ............................................................................................. 6

        2.    Plaintiffs Have Also Failed to Adduce Causation Evidence for the 12 YKK Discovery Customers. ................................................................ 9

        3.    Plaintiffs' "Maximum Damages" Number—Unsupported By Record Evidence—Should Not Be Allowed to Reach the Jury. ................ 10

V. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alzheimer's Disease & Related Disorder Ass'n, Inc. v. Alzheimer's Found. of Am.*,
   307 F. Supp. 3d 260 (S.D.N.Y. 2018) ................................................................................. 6, 7, 8

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ........................................................................................................ 5

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ........................................................................................................... 5

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
   650 F. Supp. 2d 314 (S.D.N.Y. 2009) ....................................................................................... 11

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
   311 F.Supp.3d 653 (S.D.N.Y. 2018) ..................................................................................... 7, 10

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
   377 F. Supp. 3d 337 (S.D.N.Y. 2019) ......................................................................................... 7

*DSU Medical Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006) ................................................................................................. 11

*Life Indus. Corp. v. Ocean Bio-Chem, Inc.*,
   827 F. Supp. 926 (E.D.N.Y. 1993) .............................................................................................. 7

*Merck Eprova AG v. Gnosis S.p.A.*,
   760 F.3d 247 (2d Cir. 2014) ........................................................................................................ 7

## Rules / Statutes

Fed. R. Evid. 702 ............................................................................................................................. 5

I.  INTRODUCTION

When Plaintiffs commenced this action they asserted a number of claims. Plaintiffs asserted infringement of United States Patent No. 6,105,214. Plaintiffs also asserted that YKK breached the parties' exclusive license agreement ("ELA"). Additionally, Plaintiffs asserted that YKK violated the Lanham Act as well as the Connecticut Unfair Trade Practices ACT ("CUTPA") As the case has progressed, the Court has focused the issues to be tried. Specifically, the Court has entered judgment that YKK has not breached the ELA and that it is not liable under CUTPA. The Court also reduced Plaintiffs' Lanham act claim down to an assertion that YKK is liable for one allegedly false and objectively baseless statement. It is clear, however, that the opinion of Plaintiffs' expert Mr. James Donahue ("Mr. Donohue" ) regarding damages under the Lanham Act is in no way tethered to the case that will be tried to the jury and therefore it must be excluded.

Specifically, the Court's recent summary judgment opinion allowing Uretek to proceed against YKK regarding a single statement under the Lanham Act (*see* Dkt. 611 at 16 ("YKK is the exclusive licensee of the water repellant slide fastener technology embodied in U.S. Patent No. 6,105,214 and its corresponding foreign patent. YKK has the exclusive right to manufacture, use, sell and import zippers incorporating this water repellant technology.")) has brought into sharp focus that Mr. Donohue did not tie his opinion of damages under the Lanham Act to that one remaining statement. To the contrary, as Plaintiffs' case has eroded with the dismissal of their breach of contract claim, and summary judgment on their Connecticut Unfair Trade Practices Act ("CUTPA') and other Lanham Act allegations, Mr. Donohue's damages number has remained steadfastly the same, untethered to the specific claims or the evidence of record. Shortly after the Court's summary judgment decision, Plaintiffs indicated at a

1

conference on August 24, 2020 that they are now seeking Lanham Act damages from outside the United States for only conduct arising from purported violations of the Japanese and Taiwanese patents. This new focus further confirmed that Mr. Donohue has an immoveable opinion that is not tethered to the particular claims at issue, and more importantly now, not at all linked to the Lanham Act claim as rather dramatically reduced in scope by the Court's recent rulings and Plaintiffs' own limitation. Hence the present motion.

Mr. Donohue determined the purported damages for 12 specific customers as to whom he was given data, and then extrapolated that damages figure to approximately 3,000 other customers, lumped all together. As to the 3,000 customers, he provided no means of assessing damages if the evidence shows that some or all received the offending statement during the time period at issue (beginning in February 2009, Donohue Rpt. ¶ 6, Dkt. 368-3). Therefore, there is no way to parse out his damages as to those customers who arguably received and read the allegedly offending statement and those who did, at least not without engaging in rank speculation. As to the 12 customers for which he did have some data (which he called the "Discovery Customers") , Mr. Donohue failed to point to anything in the record supporting his damages number as proximately caused by or tied to the customers' receipt of the remaining allegedly actionable statement—or, again, that any of the 12 Discovery Customers had received the statement at all. As far as can be told from Mr. Donahue's report it is entirely agnostic as to whether 0, 1, 2 or all 12 of the "Discovery Customers" even received the remaining statement, let alone whether it had any impact at all on any customers' behavior. Accordingly, his Lanham Act damages opinion should be stricken, as not sufficiently tied to any evidence of record demonstrating the customers' receipt and ensuing confusion from the one remaining statement at issue.

## II.   STATEMENT OF FACTS

### Procedural History

Plaintiffs' complaint asserts claims against YKK for breach of contract, as well as violations of Section 43 of the Lanham Act and violations of Connecticut Unfair Trade Practices Act ("CUTPA"). Dkt. 90. After rounds of dispositive motion briefing, the Court held in its initial summary judgment ruling that the parties' contract does not have a negative covenant prohibiting sales into excluded markets, and therefore dismissed that portion of the Plaintiffs' contract claim. Dkt. 425 at 22. In its July 30, 2020 Summary Judgment Order, the Court dismissed Plaintiffs' remaining contract claims, as well as Plaintiffs' CUTPA claim, and dismissed Plaintiffs' claims under the Lanham Act with respect to several alleged statements, but allowed one statement to stand based on the Court's determination that viewed in the most favorable light to Plaintiffs a "reasonable jury could conclude" that the one statement "was objectively baseless." Dkt. 611 at 16. Despite the substantial winnowing down of their case, the damages opinion of Plaintiffs' expert Mr. Donohue has never changed.

### Plaintiffs' Proffered Damages Expert James Donohue

Plaintiffs' damages expert is Mr. James Donohue. In his expert report, Mr. Donohue stated that he was directed by Plaintiffs' counsel to assume that if YKK had not made its "Accused Sales" into the "Unlicensed Markets," "Plaintiffs would have laminated the Excluded Market Water Resistant Zippers that were laminated by YKK." Dkt. 368-3 at ¶ 136. Accordingly, Mr. Donohue calculated the worldwide profits Plaintiffs purportedly would have made if YKK had used Plaintiffs' lamination services on every single one of the so-called "Accused Zippers", *i.e.*, the laminated zippers sold into the markets excluded by the Exclusive

3

License Agreement. Mr. Donohue's proffered lost profits calculation totaled $37 million for sales worldwide and $8.2 million for U.S. sales before interest. *Id.* at ¶¶ 9–17.

To estimate the number of meters of Accused Zippers that were purportedly used in the unlicensed high-end outerwear market, Mr. Donohue relied on the testimony of Plaintiffs' proffered industry expert, David Cockrell. *Id.* at ¶¶ 106–116. Mr. Cockrell reviewed data from the 12 Discovery Customers out of over 3,000 YKK customers to provide an alleged "proportion" of Accused Zippers that were ultimately used in high-end outerwear. *See* Cockrell Rpt., Dkt. 368-1. Mr. Cockrell created a weighted average of 56% of the Accused Zippers based on the sales to the 12 Discovery Customers and then assumed that the remaining 3,000-plus YKK customers used the same proportion of the Accused Zippers. *See* Dkt. 368-3 at ¶¶ 110–21. As such, Mr. Donohue purported to specifically determine damages as to only the 12 Discovery Customers. *Id.* at ¶ 107. For the over 3,000 other customers that Donohue lumped together in his damages calculations, Mr. Donohue stated that he did not have customer names for many of them, and that he did not have customer-specific data points for any of the 3,000+. *Id.* ¶ 117. As such, Mr. Donohue's damages opinion hinges on 12 out of more than 3,000 YKK customers, or less than 0.4% by number of the YKK customer population. None of Mr. Donohue's analysis was tethered to the one statement that the Court has now found potentially actionable under the Lanham Act.

### III. LEGAL STANDARD

It is the duty of the trial court to ensure that unreliable or unhelpful expert testimony does not reach the jury. In order to be admissible, expert testimony must be (1) based on sufficient facts and data, (2) the product of reliable principles and methods, and (3) based on a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. Thus, an

expert's testimony must be excluded if it is "speculative or conjectural," or if it is "based on assumptions that are so unrealistic and contradictory" that the testimony amounts, in essence, to an "apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (internal quotation marks omitted). Similarly, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

**IV.   ARGUMENT**

The Court should strike Mr. Donohue's expected damages testimony on the Lanham Act because Mr. Donohue's report fails to reflect any link between the only remaining Lanham Act statement and any specific lost profits allegedly caused by the remaining statement. Mr. Donohue could have attempted to break down his damages numbers to Plaintiffs' specific claims, but he pointedly chose not to do that. The consequence is that he is left presenting an unchanging lost profits number based on all of Plaintiffs' original claims. It is Mr. Donohue's burden, as the proffered damages expert, to have done the work of assessing which damages numbers are connected to which claims in the case and whether his damages opinions are sufficiently supported by the factual record. But Mr. Donohue has not done that, and the jury should not hear any opinion of Lanham Act damages that is divorced from the record evidence.

Mr. Donohue's fatal failures are evident in three distinct ways: (1) Mr. Donohue does not cite any record evidence relating to the over 3,000 YKK customers in order to support his damages opinion—instead treating them as a unified block for his damages estimates. In fact, there is no evidence of record that any of the 3,000 customers received the potentially offending statement, were confused by the offending statement, or made decisions based upon the

5

offending statement, and Mr. Donohue points to none to support his damages opinion. But even if Plaintiffs were to ferret out such evidence as to some of the 3,000 customers, Mr. Donohue's damages opinion is not separable to account for individual customers among the group of 3,000. Plaintiffs must have evidence that all 3,000 customers received and relied on the purportedly offending statement in order to support Mr. Donohue's damages opinion, and this they cannot do; (2) even where Mr. Donohue had information for specific YKK customers, which is admittedly true for only the 12 Discovery Customers, he does not cite to any depositions or other record evidence showing that the 12 customers—or any of them—*actually received the sole remaining statement*, or that any of the 12 would have acted differently if they had received "correct" information, that YKK "did not have such an exclusive right—it shared that right with Uretek," Dkt. 611 at 16; and (3) Mr. Donohue should not be allowed to present a "maximum damages" number to the jury based on a lump sum approach with absolutely no tether to the claim that actually remains at issue, with a view that the Plaintiffs might ultimately be able to prove at trial that a few of the YKK customers received and relied on the statement at issue.

### A. Donohue's Damages Opinions Rely on Improper, Cascading Speculation.

#### 1. Donohue's Damages Number for 3000+ YKK Customers Should be Excluded Because There is No Causal Nexus Supporting His Opinion.

The 3,000+ unidentified YKK customers—who account for the vast majority – (77%) – of Mr. Donohue's damages calculations—cannot plausibly be linked to any lost profits at all. Rather, Mr. Donohue's damages opinion with respect to this undifferentiated mass of customers rests on impermissible speculation and should not reach the jury.

"When seeking money damages [under the Lanham Act], a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Alzheimer's Disease & Related Disorder Ass'n, Inc. v. Alzheimer's Found. of Am.*, 307 F. Supp. 3d 260, 303

(S.D.N.Y. 2018) (quotation omitted). "*[E]ven where a plaintiff shows ... intentional deception*, actual damages will only be awarded where he successfully shows (1) causation and (2) the amount of damages suffered from the infringement. The evidence supporting plaintiff's contentions must be sound and the amount of damages must not be speculative." *Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926, 933 (E.D.N.Y. 1993) (emphasis added); *see also Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 347 (S.D.N.Y. 2019) ("[W]here the advertisement does not refer to a competing product or make a comparative claim, 'some indication of actual injury and causation would be necessary in order to ensure that a plaintiff's injury is not speculative.'") (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259 (2d Cir. 2014)). A plaintiff cannot recover actual damages by simply presuming that a challenged statement caused actionable confusion to every potential consumer exposed to it. *See Alzheimer's Disease*, 307 F. Supp. 3d at 303 (rejecting actual damages theory because, even assuming that every ad is infringing, "it does not necessarily follow that 100% of computer users who donate online to AFA within thirty days of seeing 'Alzheimer's Foundation' on a search engine results page were confused").

In *Truecar*, a case involving non-comparative claims in a multi-player competitive market, the District Court excluded an expert's opinion that "suffer[ed] from the fundamental problem that he fail[ed] to support his conclusion that 100% of sales effectuated through [defendant] were motivated by the allegedly false [advertisement]." 311 F.Supp.3d 653, 660 (S.D.N.Y. 2018). Similarly, in *Alzheimer's Disease*, a trademark infringement case, the court found during a bench trial that the plaintiff could not prove damages where its expert's calculations "assume[d] that 100% of the donors . . . were confused and would have donated to [plaintiff] but for the allegedly infringing behavior" and failed to "analyze or control for the

7

many factors that would influence someone's decision to donate[.]" 307 F.Supp.3d at 282, 303. The deficiencies in Mr. Donohue's opinion fare no better and are in fact even more apparent than those in the excluded expert opinions in *Truecar* and *Alzheimer's Disease*. That is because Mr. Donohue has not pointed to evidence in the record that <u>any</u> of the 3,000+ customers received the sole remaining Lanham Act statement, nor that they read it,[1] were confused by it, or would have changed their purchasing behavior if they had received different information. Mr. Donohue should not be allowed to present a multi-million dollar (or any) number to the jury unless there is record support for it—and there is not.

To the contrary, Mr. Donohue conceded that his damages calculations have <u>no specific connection</u> to Plaintiffs' original Lanham Act claims, and therefore they certainly have no connection to the sole Lanham Act statement that remains in the case. In his deposition, Donohue repeatedly testified that his damages numbers were <u>not connected</u> to any specific claims in the litigation: "I haven't been asked to tie [damages calculations] to causes of action. As I believe I mentioned in my report, I understand it relates to a Lanham Act false advertising type claim. But again, I am not tieing the calculations that all stem from the sale of an excluded market zipper back to legal claims that will be resolved in this litigation." Dkt. 368-9 at 201:6-19; *see also id.* at 199:22-25.

The bottom line is that Donohue simply compiled a long list of YKK customers and lumped them all together, despite pointing to nothing in the record even suggesting they saw, received or acted upon the sole statement that remains at issue. This "creative" but totally unsupported category of damages should be excluded.

---

[1] Donohue admits in his report that, unlike the YKK Discovery Customers, many of the 3,000+ undifferentiated customers are "intermediate manufacturing companies" rather than brand name companies. Dkt. 368-3 at ¶ 117. These intermediates, many of whom are simply sewing entities based in Asian markets, would have had no reason to receive or read the English language statement—a fact that Donohue does not consider.

8

### 2. Plaintiffs Have Also Failed to Adduce Causation Evidence for the 12 YKK Discovery Customers.

Even as to the YKK Discovery Customers, Mr. Donohue's damages opinion is entirely untethered from the alleged impact of the remaining statement and any damages that purportedly resulted from that statement. First, there is no evidence of record that any of the 12 customers received the sole remaining Lanham Act statement. Second, even charitably assuming that a customer received the statement at issue and was confused, there is no evidence that any customer would have made a different purchasing decision had they received information that Plaintiffs contend is more accurate than the sole remaining Lanham Act statement. Mr. Donohue's opinion as to damages resulting from the 12 YKK Discovery Customers thus relies entirely on layers upon layers of speculation, with each step moving his conclusion further and further from any actual evidence in the record. Mr. Donohue's opinions therefore should not reach the jury.

The Court's July 30, 2020 Summary Judgment Order showed the failings of Plaintiffs' prosecution, even while allowing their Lanham Act theory to survive summary judgment with all plausible inferences drawn in their favor. The Court noted that it had excluded causation opinions from Plaintiffs' proffered industry expert Mr. Cockrell because they were "rooted in hypothetical speculation." Dkt. 611 at 18. The Court nevertheless allowed Plaintiffs' Lanham Act claim to proceed, even though Plaintiffs were "[c]lutching at straws" and their causation theory rests on "a chain of inferences drawn in their favor." *Id.* The Court looked specifically at the necessary element of proof that customers would not have purchased infringing products. After "scrutiniz[ing] the record" for any such evidence, the Court found three emails that could

plausibly support that conclusion when read in the light most favorable to Plaintiffs.[2] *Id.* at 18 n.9. While the standard at summary judgment allowed Plaintiffs' Lanham Act claim to survive, the same beneficial inferences and assumptions do not extend to Mr. Donohue's opinions, which similarly rest on "a chain of inferences" with no nexus to this litigation.

### 3. Plaintiffs' "Maximum Damages" Number—Unsupported By Record Evidence—Should Not Be Allowed to Reach the Jury.

Plaintiffs seek to put a large, unsupported lost profits number in front of the jury whereby Mr. Donohue presumes a lost sale from <u>every</u> claimed customer, even if that customer had never seen the challenged statements and even though there is no record support. *See TrueCar, Inc.*, 311 F. Supp. 3d at 656 (stating that "[i]n a false-advertising case, it is a plaintiff's burden to demonstrate causation between the misleading advertisements and resulting damages," and therefore excluding plaintiffs' damages expert's causation analysis). Plaintiffs have conceded, as they must, that to succeed on their false advertising claim, they are required to prove that "YKK's statements were the <u>cause</u> of actual or likely injury to the Plaintiffs." Dkt. 523-1 at 130 (Plaintiffs' proposed Lanham Act instruction); *see* Dkt. 537 at 22 (same); Dkt. 536 at 11-12 (same) (emphasis added). Despite this burden, Plaintiffs point to no support in the factual record.

There is no evidence of a causal nexus between the sole remaining Lanham Act statement and any damages—nor could there be given the complete lack of any discovery whatsoever that Plaintiffs conducted with respect to 3,000+ YKK customers and the further lack of any relevant causation evidence with respect to the 12 YKK Discovery Customers. It is nothing more than speculation to treat <u>every</u> claimed lost sale as having been caused by someone who saw, understood, and acted upon the statements absent any evidence of record that all the customers even saw—let alone acted upon—the statement at all. The complete lack of causation evidence

---

[2] Importantly, none of the emails cited by the Court in its summary judgment opinion are from the relevant damages period, which begins in February 2009, and none relate to any of the 12 Discovery Customers.

and resulting impermissible speculation directly result from—and are emblematic of—Plaintiffs' failure to prosecute their case. The jury should never hear the inflated damages number to begin with. Instead, Mr. Donohue's opinion that Plaintiffs "lost" profits as a result of YKK's alleged sales of its Accused Zippers into the Unlicensed Markets is speculative, unhelpful to the jury, prejudicial and irrelevant. Accordingly, the entirety of his testimony as to lost profits damages under the Lanham Act should be excluded. *See, e.g.*, *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1308–09 (Fed. Cir. 2006) (affirming exclusion of an expert opinion on damages where the expert's conclusion that the patent holder would have made certain sales but for infringement was based on a hypothetical construction of the market that lacked any foundation in fact or economic principle); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 320–21 (S.D.N.Y. 2009) (expert's unsupported assumptions that Plaintiff would have made additional sales but for the defendant's actions rendered his opinions on lost profits unreliable and inadmissible).

## V.     CONCLUSION

For the foregoing reasons, YKK respectfully requests that the Court exclude or limit the opinion and testimony of Mr. James J. Donohue in this case.


Dated:  October 9, 2020                    Respectfully submitted,

By:   */s/ Steven Cherny*
Steven Cherny
Harvey J. Wolkoff
Deborah K. Brown
Brian P. Biddinger
Kate Cassidy
Owen F. Roberts
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

11

Tel.: (212) 849-8700
Fax: (212) 849-7100
stevencherny@quinnemanuel.com
harveywolkoff@quinnemanuel.com
deborahbrown@quinnemanuel.com
brianbiddinger@quinnemanuel.com
katecassidy@quinnemanuel.com
owenroberts@quinnemanuel.com

Russell A. Korn
Michael A. Bertelson
Amanda N. Brouillette
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE Suite 2800
Atlanta, Georgia 30309-4528
Tel.: (404) 815-6500
Fax: (404) 815-6555
rkorn@kilpatricktownsend.com
mbertelson@kilpatricktownsend.com
abrouillette@kilpatricktownsend.com

*Attorneys for Defendants*