**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
AU NEW HAVEN, LLC, and                    :        Civil Action No.
TRELLEBORG COATED SYSTEMS US, INC.,       :        15-CV-03411-GHW-SN
                                          :
                    Plaintiffs,           :
                                          :
            v.                            :
                                          :
YKK CORPORATION et al.,                   :
                                          :
                    Defendants.           :        OCTOBER 30, 2020
-------------------------------------------------------------


**<u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO LIMIT TESTIMONY OF
EXPERT JAMES DONOHUE (ECF Nos. 648 & 649)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................ I

I.  The Filing Of YKK's Motion Violates The Unambiguous Terms Of The Court's Recent Order Allowing Only Certain Motions *In Limine* To Be Filed................................................................................... 1

II.  This Court Already Has Denied YKK's Damages-Based And Causation-Based Motions For Summary Judgment On Uretek's Lanham Act Claim ...................................................................... 5

III.  Ample Evidence Exists To Support Uretek's Lanham Act Lost Profits Claim ...................................................................... 7

  A.  If the jury finds that YKK deliberately engaged in false advertising, Uretek is entitled to a legal presumption of lost profits damages ............................................................. 7

  B.  Other evidence exists to demonstrate causation in support of Uretek's Lanham Act lost profits claim.......................... 11

IV.  Conclusion ............................................................................. 19

**TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019).......... 8

*Alzheimer's Disease & Related Disorder Ass'n, Inc. v. Alzheimer's Found. Of Am.*,
307 F. Supp. 3d 260 (S.D.N.Y. 2018).................. 8

*Broadspring, Inc. v. Congoo, LLC*, 2014 WL 7392905 (S.D.N.Y. 2014) ................ 2

*Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767 (2d Cir. 1984)........................ 12

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302
(1st Cir. 2002) ........................ 17, 18

*CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488 (S.D.N.Y. 2016) .............. 13

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*,
2018 WL 4253181 (S.D.N.Y. 2018)........................ 12, 16

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
843 F.3d 48 (2d Cir. 2016)........................ 12

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337
(S.D.N.Y. 2019) ........................ 12

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368
(S.D.N.Y. 2019) ........................ 12

*Dial Corp. v. News Corp.*, 2016 WL 690868 (S.D.N.Y. 2016) ................ 2

*DUSA Pharm., Inc. v. Biofrontera Inc.*, 2020 WL 5993035 (D. Mass. 2020).......... 6

*EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000)..................... 13, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).......... 11, 16

*Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926 (E.D.N.Y. 1993)...... 8

*Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404
(S.D.N.Y. 2013) ........................ 16, 17

*Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247 (2d Cir. 2014) ........................ 7, 8, 9

i

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005 (S.D.N.Y. 1994) ................................................................................... 12

*New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476 (S.D.N.Y. 2016) ................................................................................... 2

*Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 (8th Cir. 1997) ........................... 10, 11

*PPX Enters., Inc. v. Audiofidelity Enters. Inc.*, 818 F.2d 266 (1987) ...................... 9, 10, 11, 16

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ................................. 13

*United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989) ...................................... 13

## Other Authorities

5 McCarthy on Trademarks and Unfair Competition § 27:41 (5th ed.) .................... 13

5 McCarthy on Trademarks and Unfair Competition § 27:42 (5th ed.) .................... 13

5 McCarthy on Trademarks and Unfair Competition § 30:79 (5th ed.) .................... 17

Fed. R. Civ. P. 16(b)(4) ............................................................................. 2

Fed. R. Evid. 702 ..................................................................................... 3

Local Civil Rule 6.3 ................................................................................. 1

Plaintiffs AU New Haven, LLC and Trelleborg Coated Systems US, Inc. (collectively, "Uretek") hereby oppose the motion (the "Motion," ECF Nos. 648 & 649) to limit the testimony of James J. Donohue ("Donohue") filed by Defendants YKK Corporation *et al.* (collectively, "YKK") concerning Uretek's claim for lost profits damages under the Lanham Act. YKK's Motion must be denied because (1) the Motion undisputedly exceeds the limited permission granted by the Court for the parties to file only supplementary motions *in limine* which could not previously have been filed (ECF No. 625), (2) the issues raised by YKK already have been decided by this Court in Uretek's favor[1] and (3) disputes of fact continue to exist, and on the current record are presumed to exist, with respect to Uretek's claim for Lanham Act damages rendering YKK's renewed criticisms of Donohue's opinions nothing more than a rehashing of arguments going to the weight, not the admissibility, of Donohue's testimony.[2]

I.    **The Filing Of YKK's Motion Violates The Unambiguous Terms Of The Court's Recent Order Allowing Only Certain Motions *In Limine* To Be Filed.**

Anticipating that YKK would try to take improper advantage of any willingness by the Court to permit the filing of even the narrowest of additional pretrial motions, Uretek warned that, should any permission be granted, "the defendants are going to be piling on motions to once again file what is in effect a summary judgment motion on the Lanham Act claim." 8/24/2020 Conference Tr. at 29. Acknowledging Uretek's valid concerns, and contrary to the Court's most

---

[1] The deadline for any motion for reconsideration by YKK has long since passed. *See* Local Civil Rule 6.3 (a motion for reconsideration must be filed within 14 days after entry of the Court's determination of the motion).

[2] Because YKK did not comply with either the Federal Rules of Civil Procedure or the Southern District of New York Local Rules governing summary judgment motions, Uretek provides herein only examples of such evidence. Uretek has no obligation to assemble a complete evidentiary record at this time and does not assume such obligation or otherwise waive any procedural or substantive rights by providing such evidentiary examples. Uretek further notes that fact discovery on the issues raised by YKK's Motion remains open, with the depositions of Michael Blunt and possibly of The North Face still to be taken (including additional related document discovery) as a result of YKK's unexcused late disclosure of such fact witnesses. *See* ECF No. 632.

recent *actual* allowance of additional summary judgment motions based upon the Court finding, under Fed. R. Civ. P. 16(b)(4), "good cause to extend the deadlines for motions for summary judgment" (ECF No. 562 at 2), this Court *twice* clearly stated that, at this time, any additional motions were limited solely to motions *in limine* which could not previously have been raised.[3]

Specifically, during the August 24, 2020 conference, the Court expressly stated that any additional motions *in limine* must be warranted by the Court's July 30, 2020 summary judgment order (ECF No. 611), with the Court further cautioning all current counsel, "I want to underscore that [this process] was not an invitation to open the door to any and all motions in limine, particularly motions in limine that might have been brought previously."  8/24/2020 Tr. at 7. The Court then on September 14, 2020 issued its corresponding Order allowing only "supplementary *motions in limine* arising from the Court's July 30, 2020 summary judgment decision."  ECF No. 625 at 3 (emphasis added).  Particularly pertinent hereto, Rule 3.F. of this Court's Individual Rules of Practice in Civil Cases expressly states, emphasis added, "Motions to exclude testimony of experts must be made by the deadline for motions for summary judgment and *should not be treated as motions in limine*."  Conversely, not once did the Court indicate that good cause again existed to extend the deadlines either for motions for summary judgment or for *Daubert* motions, and, not surprisingly, YKK has not filed a motion seeking such relief.

Related hereto, YKK's reference to the discussion at the August 24, 2020 conference to the effect that Uretek was focusing at trial on the accused zippers sold abroad which fell within the scope of the subject Japan and Taiwan patents (YKK Mem. at 1-2) appears designed only to

---

[3] As Uretek already has briefed (ECF No. 536 at 6), a motion *in limine* cannot be used to obtain judgment as a matter of law.  *See, e.g.*, *New Am. Mktg. FSI LLC v. MGA Entm't, Inc.*, 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016) ("The Court once again notes that an *in limine* pleading is generally not the appropriate vehicle for effecting dismissal of entire claims"); *Dial Corp. v. News Corp.*, 2016 WL 690868, *3 (S.D.N.Y. 2016) ("A motion *in limine* is not the appropriate tool to ask this Court to weigh the sufficiency of the evidence"); *Broadspring, Inc. v. Congoo, LLC*, 2014 WL 7392905, *10 (S.D.N.Y. 2014) ("Once again, the motion is a patently improper attempt to seek judgment as a matter of law in the guise of a motion *in limine* concerning the admissibility of evidence").

create confusion.  First, Uretek does not seek to prove "purported violations" of any foreign patents, but rather that the accused zippers fell within the scope of those patents.  Second, Japan and Taiwan are the two countries in which the remaining relevant zippers were manufactured by YKK.  Third, the subject European patents were relevant to Uretek's claim for unpaid royalties on the Italian-manufactured AquaCheat zippers, a claim as to which Uretek already successfully has obtained a judgment against YKK (ECF No. 617).  None of the foregoing somehow created a "new focus" on any of Donohue's lost profits opinions.

Despite the Court's admonition and by means of the instant Motion, YKK substantively challenges (1) causation under the Lanham Act and (2) Donohue's methodology for calculating the amount of Uretek's damages.[4]  As to the issue of causation, this Court already unmistakably has ruled, in connection with YKK's prior improper pretrial motions filed by current counsel for YKK, that "a motion in limine or a Rule 16 motion is not the proper vehicle by which to resolve these issues, which require a factual record."  ECF No. 562 at 2; *see also* 12/19/19 Conference Tr. at 8 ("Several of these issues, *particularly with respect to causation*, … may be too fact-based or require presentation of a record in order for the Court to evaluate them such that I would not feel comfortable resolving them in the context of a so-called Rule 16 motion," emphasis added).  As to Donohue's methodologies, those arguments undeniably are nothing but another *Daubert* motion, with YKK expressly citing *Daubert* and expressly relying on Fed. R. Evid. 702 in support of its Motion.  *See* YKK Mem. at 5.  In fact, every case cited in YKK's instant memorandum was cited either in YKK's prior summary judgment motion (ECF No. 565) or YKK's prior *Daubert* motion (ECF No. 367).

---

[4] Although YKK nominally suggests that YKK is not substantively renewing its most recent summary judgment motion (YKK Mem. at 10), YKK repeatedly argues as the basis for its Motion, as YKK did in its summary judgment papers, the "complete lack of causation evidence."  *See, e.g.,* YKK Mem. at 10.

3

Further, regardless of the category into which YKK's Motion falls, the Motion raises arguments which, at a minimum, *might have been brought previously* (if, in fact, they were not already brought as discussed below). As to Lanham Act causation (including as to Donohue's expert opinions), YKK had every opportunity to brief this issue in January 2020. In this regard, during the December 19, 2019, conference, this Court expressly described the issue YKK then wanted to raise as "whether the allegedly false statements specifically caused plaintiffs harm." 12/19/19 Conference Tr. at 25. The then-pending pretrial motion arguments, and the December 19, 2019 comments, of YKK's current counsel confirm the Court's assessment:

1.   ECF No. 501 at 10 (YKK arguing that "Plaintiffs have no evidence that any of the statements they allege to be false advertisements influenced a single customer's purchasing decisions" in a section of that brief entitled, "Plaintiffs Lack Any Causation Evidence To Support Lost Profit Actual Damages Under Either Of Their False Advertising Claims");

2.   ECF No. 555 at 7 (YKK arguing, emphasis in original, "[Plaintiffs] still lack evidence from which a reasonable jury could find that the allegedly false statements about patent rights *caused* YKK's customers to buy YKK-laminated zippers in the Excluded Markets" in a section of that reply brief entitled, "Plaintiffs Fail To Identify False-Advertising Causation Evidence To Support Lost Profit Actual Damages");

3.   12/19/19 Conference Tr. at 27 (Attorney Wolkoff seeking permission to file a summary judgment motion because of YKK's alleged belief that Uretek no longer had "evidence of customer confusion");

4.   *Id.* at 29 (Attorney Wolkoff arguing that "[Donohue] has nothing in [his report] about customer confusion"); and

5.   *Id.* at 39 (Attorney Wolkoff arguing Uretek's "need to show causation for lost profits").

Further as to Donohue's methodologies in particular, YKK's Motion relies entirely on the face of Donohue's June 2017 expert report and the alleged substance of his September 20, 2017 deposition testimony. YKK Mem. at 2, 5 & 8. Dispositive hereof, all of this information was

available to YKK prior to the original *Daubert* motion deadline, with YKK actually filing a *Daubert* motion which included a section entitled, "Mr. Donohue's Lost Profits Calculation Relies Upon Sampling And Extrapolation With No Statistical Basis."[5]  ECF No. 367 at 24.

For the foregoing reasons, YKK's Motion must be denied as an untimely summary judgment and/or *Daubert* motion (and not a permitted motion *in limine*).

## II.    This Court Already Has Denied YKK's Damages-Based And Causation-Based Motions For Summary Judgment On Uretek's Lanham Act Claim.

By YKK's instant Motion, YKK effectively moves for judgment on Uretek's claim for lost profits under the Lanham Act incorrectly arguing (1) that Donohue merely "assume[d]" that YKK's customers would have purchased from YKK Uretek-laminated T4/T5 water resistant zippers if YKK had not sold YKK-laminated zippers (*e.g.,* T8/T9/T10 zippers) in the markets (the "Excluded Markets") expressly excluded from the subject license agreement (the "License Agreement") (YKK Mem. at 3) and (2) that no admissible evidence of Lanham Act causation exists to support Uretek's claim that Uretek suffered those lost profits as a result of the confusion by YKK's customers deriving from YKK's false advertising (YKK Mem. at 5 & 8).  This Court already has denied YKK the relief YKK once again seeks (without permission).

As to YKK's first argument, nowhere in the passage of Donohue's report cited by YKK (YKK Mem. at 3) did Donohue "assume" that YKK's customers would have purchased from YKK Uretek-laminated T4/T5 water resistant zippers if YKK had not sold YKK-laminated

---

[5] To the extent YKK again argues YKK somehow was not fully aware of Uretek's Lanham Act lost profits claim at that time, and consistent with the apparently permissible approach YKK already has taken with respect to disclosure of communications occurring during the parties' settlement conferences with Judge Netburn (ECF Nos. 469 at 4 n. 1 and ECF No. 483 at 3), Uretek makes an offer of proof that, were it permitted to disclose communications occurring during the most recent settlement conferences, YKK would be found, at a minimum, to have been playing fast and loose with this Court with respect to YKK's representations that it lacked such knowledge.  To the extent the denial of YKK's Motion turns on this fact, Uretek moves for permission to disclose such information to this Court.  *See also* ECF No. 536 at 3-6 (summarizing the other record evidence of YKK's actual knowledge).  In any event, and as noted above, YKK undisputedly had such knowledge prior to the January 2020 round of motions.

zippers in the Excluded Markets.  To the contrary, Donohue first noted that that was Uretek's contention, and then Donohue independently verified the soundness of that contention.  ECF No. 368-3 at ¶¶ 136-152.  Such independent, substantive analysis by Donohue was confirmed, and deemed both admissible and sufficient, by Magistrate Judge Netburn and this Court.  *See, e.g.,* ECF No. 419 at 46-50 (Magistrate Judge Netburn rejecting, *inter alia*, YKK's argument that Donohue "[did] not justify" his agreement with Uretek's damages contention); ECF No. 425 at 32-36 (this Court denying YKK's motion for summary judgment on the grounds that Donohue's methodology constitutes a permissible basis for calculating patent infringement damages, general damages *and* Lanham Act false advertising lost profits damages); *see also DUSA Pharm., Inc. v. Biofrontera Inc.*, 2020 WL 5993035, *1-2 (D. Mass. 2020) (denying motion to preclude expert opinion that, in a two-player market, the plaintiff "would have made *all* of [the defendant's] profits in the absence of the alleged tortious conduct," emphasis added).

As to YKK's second argument, YKK filed its January 8, 2020 motion for summary judgment *on the exact ground* again raised herein by YKK, namely, that "Plaintiffs Do Not Have Any Admissible Causation Evidence To Support An Award Of Lost Profits Under The Lanham Act."  *See* ECF No. 565, Section I.B.1, at 13-16.  YKK's January 2020 arguments included YKK's current argument that "Donohue offered no opinions on causation to support an actual damages claim for false advertising" and that Donohue's analysis "never connects the challenged statements to any harm they supposedly caused."  *Id.* at 15; *see also* ECF No. 584 at 10-12. YKK's motion for summary judgment was denied by this Court in July 2020.  *See* ECF No. 611 at 19 (Uretek "presents a cogent reason why YKK's profits on sales in the excluded market might have been at Uretek's expense," and Uretek appears to have evidence that YKK's false advertising "caused Uretek to lose sales").

YKK has had its bite(s) at the Lanham Act apple, and YKK is not entitled to another bite. YKK is free to cross-examine Donohue at trial regarding his opinions, and YKK's current arguments, at most, go to the weight, not the admissibility, of those opinions.

III.     **Ample Evidence Exists To Support Uretek's Lanham Act Lost Profits Claim.**

Notwithstanding that YKK's Motion must be denied for the reasons stated above, Uretek sets forth below certain legal and factual reasons why YKK's characterization of the record simply is not accurate, that is, why a dispute of fact exists on Lanham Act causation -- a dispute of fact falling squarely within the decision-making province of the jury. Although YKK repeatedly attempts to minimize the nature of YKK's false advertising, such false advertising went to the undeniably material issue of whether YKK even had the right, in the first instance, to sell the YKK-laminated zippers in the Excluded Markets.[6] *See, e.g.,* ECF No. 611 at 18 (the Court summarizing Uretek's permitted theory of Lanham Act causation, emphasis added: "Had YKK's advertisements made clear *that only Uretek could sell in the excluded market*, YKK's customers would have had to buy [Uretek-laminated zippers] instead").

A.     **If the jury finds that YKK deliberately engaged in false advertising, Uretek is entitled to a legal presumption of lost profits damages.**

YKK itself has conceded that "injury and consumer confusion may be presumed 'where the parties are direct competitors in a two-player market, and where literal falsity and willful, deliberate deception have been proved,'" thereby shifting to YKK the burden to prove lack of actual deception. ECF No. 584 at 12 (quoting *Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 262 (2d Cir. 2014)); *see also* ECF No. 523-1 at 170-176 (proposed Jury Instruction No. 86). Such legal presumption logically flows from common sense -- a defendant would not

---

[6] YKK's mischaracterization of the nature of YKK's false advertising also is the basis of YKK's Motion *in Limine* No. 14 (ECF Nos. 646 & 647) and is addressed more fully in Uretek's opposition thereto.

deliberately engage in literally false advertising unless the defendant reasonably believed (1) that such false advertising would be effective in stealing customers from the defendant's only competitor and (2) that the defendant would not otherwise have been able to obtain those customers. Here, YKK does not claim (and has not filed any motion claiming) a lack of evidence sufficient to prove each of these prerequisites to the application of this presumption.[7] Instead, YKK incorrectly argues that such presumption only applies to disgorgement of YKK's profits, not recovery of Uretek's lost profits.[8]  *See, e.g.,* ECF No.584 at 11-12.

Contrary to YKK's proposed limitation of this presumption, the case law is clear that the presumption applies to Uretek's claim for its own lost profits, although, of course, Uretek still must prove the amount of its damages. Specifically, the Second Circuit in *Merck Eprova AG, supra,* stated, without limitation, that "where, as here, a plaintiff has met its burden of proving deliberate deception in the context of a two-player market, it is appropriate to utilize a presumption of injury." *Merck Eprova AG*, 760 F.3d at 260-261. In its ensuing substantive analysis of the monetary relief awarded to the plaintiff in that case, the Second Circuit began with a description of the Lanham Act as contemplating, *inter alia*, awards of "defendant's profits" and "any damages sustained by the plaintiff." *Id.* at 261. The Second Circuit thereafter subsequently made crystal clear that this presumption of injury does apply to cases in which the plaintiff claims "money damages," holding:

---

[7] For example, this Court now has ruled that a reasonable jury could conclude that YKK's "undeniably" false advertising was "objectively baseless." ECF No. 611 at 16.

[8] YKK previously has cited three cases in alleged support of its position, but none of those cases involved the issue of the plaintiff claiming its lost profits for the defendant's deliberately false advertising.  *See 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019) (trademark infringement plaintiff claiming defendant's profits as relief); *Alzheimer's Disease & Related Disorder Ass'n, Inc. v. Alzheimer's Found. Of Am.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) (trademark infringement); *Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926 (E.D.N.Y. 1993) (trade dress infringement).

> In a false advertising case such as this one, where the parties are direct
> competitors in a two-player market, and where literal falsity and willful,
> deliberate deception have been proved, the presumptions of injury and consumer
> confusion may be used for the purposes of awarding both injunctive relief *and*
> monetary damages to a successful plaintiff.

*Id.* at 262 (emphasis in original). The Second Circuit then affirmed the lower court's award of

damages "in the form of" the defendant's profits, but did not also indicate that its prior

statements concerning application of the subject presumption somehow were limited to only that

particular form of monetary damages. *Id.*

That the Second Circuit's legal statements, in fact, were not so limited also is confirmed

by its reliance on that court's earlier decision of *PPX Enters., Inc. v. Audiofidelity Enters. Inc.*,

818 F.2d 266 (1987), describing that earlier decision as a prior suggestion that this presumption

of injury applies to claims for monetary damages. *See Merck Eprova AG*, 760 F.3d at 262. In

*PPX Enters., Inc.*, the plaintiff sought monetary damages for the defendant's false advertising of

record albums' content. Pertinent hereto, the Second Circuit there held:

> Audiofidelity contends that because PPX concededly made no evidentiary showing
> of actual consumer confusion or deception, PPX has failed to prove its entitlement
> to damages under the Lanham Act. …. If a statement is actually false, relief can
> be granted on the court's own findings without reference to the reaction of the
> buyer or consumer of the product. Although the above-quoted language has been
> applied solely to claims for injunctive relief under the Lanham Act, we perceive no
> reason why the same logic should not apply in regard to claims for damages ….
> The jury's conclusion that consumers actually were deceived by Audiofidelity's
> misrepresentations is supported by the false advertising contained on the record
> albums and the fact that Audiofidelity successfully sold the albums on the market.
> …. The only possible conclusion to be derived from Audiofidelity's conduct was
> that consumers actually were deceived by the misrepresentations. …. [T]he
> distinction drawn between stating a claim for injunctive relief and establishing
> entitlement to damages has less relevance in the context of false advertising:
> Having established falsity, the plaintiff should be entitled to both injunctive and
> monetary relief, regardless of the extent of impact on consumer purchasing
> decisions. …. Indeed, that no consumers have complained merely is testament to
> the efficacy of Audiofidelity's fraud.

*PPX Enters., Inc.*, 818 F.2d at 271-273 (internal quotation marks and citations omitted).

This same presumption scope was recognized by the Eighth Circuit in *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 (8th Cir. 1997). There, the court affirmed a jury verdict awarding $1.5 million in Lanham Act lost profits damages suffered by the plaintiff. *Id.* at 1332-33 & n. 6. After noting the elements of a Lanham Act claim as including, as the fifth element, that "Porous has been injured as a result of those activities either by direct diversion of sales to Pall or by a lessening of its goodwill" (*id.*), the court recited jury Instruction No. 19 as follows:

> If you should find that Pall made any false or misleading statements in its
> representations concerning its filter products alone or in comparison to Porous'
> filter products deliberately--that is with knowledge of their false or misleading
> nature--and you find that Pall engaged in making any such deliberately false
> statements as an important part of its marketing efforts, then you may presume
> that customers were deceived by any such statements and that Porous has suffered
> damages as a result of such deception.

*Id.* at 1332-33. The court substantively described this instruction, in pertinent part, in the following three ways: (1) "The effect of this instruction is, of course, to transfer the burden of proof to Pall regarding false deception of Porous's customers and *the fact of harm* Porous incurred by reason of the deception (*id.* at 1333, emphasis in original), (2) "the jury was instructed that upon a finding that Pall had engaged in deliberate deception in its comparative advertising, as a major part of its marketing effort, Porous was entitled to a presumption that Pall's statements *had caused injury*" (*id.* at 1333, emphasis added) and (3) the "presumption of *causation and injury*[] instructed the jury that upon finding that the defendant deliberately deceived the public it could assume that the defendant's statements *caused* harm to the plaintiff,

satisfying the fifth element of the cause of action" (*id.* at 1333, emphasis added).[9]

Also noting the decision of *PPX Enters., Inc., supra,* the Eighth Circuit held, "We find that in comparative advertising cases where money damages are sought and where there exists proof of willful deception, as here, the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable." *Porous Media Corp.*, 110 F.3d at 1336. While observing that the plaintiff still needed to prove any monetary recovery, the Eighth Circuit concluded, "A predicate finding of intentional deception, as a major part of the defendant's marketing efforts, *contained in comparative advertising*, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact." *Id.* (emphasis in original).

Thus, under the facts of this case, Uretek is entitled to prove causation of its Lanham Act lost profits damages through the presumptions which apply if the jury finds that YKK engaged in deliberately false advertising (as Uretek alleges and as YKK does not currently contest).

**B.    Other evidence exists to demonstrate causation in support of Uretek's Lanham Act lost profits claim.**

The United States Supreme Court recently held (1) that a plaintiff can establish injury where "there is likely to be something very close to a 1:1 relationship" between the choice of the effected customer and the plaintiff's lost sales and (2) that "[w]here the injury alleged is so integral an aspect of the violation alleged, there can be no question that proximate cause is satisfied." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 139 (2014) (internal quotation marks omitted).

---

[9] The court also recited jury Instruction 20 stating that Porous had the burden of proving damages by a preponderance of the evidence. *Id.* at 1333. That jury instruction correctly applied to the plaintiff's Lanham Act claim generally, including in the event the jury did not find any false advertising to have been deliberate. Once the jury found deliberately false statements, the presumption stated in jury Instruction 19 could be used to satisfy the burden of proof described in jury Instruction 20. Porous, of course, still needed to prove the amount of its damages.

As noted above, YKK's false advertising is material under the Lanham Act because the false statements "concern[] YKK's very right to sell the zippers." ECF No. 425 at 35-36. As the Second Circuit has observed:

> While the materiality of the falsity and the likelihood of injury to the plaintiff resulting from the defendant's falsity are separate essential elements, in many cases the evidence and findings by the court that a plaintiff has been injured or is likely to suffer injury will satisfy the materiality standard – especially where the defendant and plaintiff are competitors in the same market and the falsity of the defendant's advertising is likely to mislead consumers to prefer the defendant's product over the plaintiff's. … If consumers, faced with the choice to purchase either the plaintiff's product or the defendant's, are likely to prefer the defendant's product by reason of the defendant's false advertising, the falsity of the defendant's advertising is material to the plaintiff's Lanham Act claim.

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 70-71 (2d Cir. 2016).

Further, the Lanham Act does not require that a plaintiff prove every purchase of the defendant's product was caused by the false statements.[10] *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 773 (2d Cir. 1984) ("there is no evidence that if [the defendant's] advertising had been revealed as false an appreciable number of its customers would have shifted their business to [the plaintiff]"); *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, 2018 WL 4253181, *13 (S.D.N.Y. 2018) ("plaintiff must prove a diversion of some sales from plaintiff to defendant, essentially establishing a nexus between a competitor's false advertising and a diversion of sales, but need not individually prove every single buyer who was diverted to the false advertising competitor"); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,

---

[10] The *TrueCar* decisions (YKK Mem. at 7 & 10) are distinguishable because the parties were not competitors, and the plaintiff utterly failed to prove any injury linked to the false advertisement. *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 349 & 353 (S.D.N.Y. 2019); *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368, 375 (S.D.N.Y. 2019).

880 F. Supp. 1005, 1023 (S.D.N.Y. 1994) ("a plaintiff must show that he or she suffered some damage as a result of the defendant's misrepresentations"); *see generally* 5 McCarthy on Trademarks and Unfair Competition § 27:42 (5th ed.) ("[P]laintiff must prove that at least some customers have been actually deceived, and that plaintiff has been injured in some way as a result of actual consumer reliance on the false advertising").

Even when the above-described legal presumption does not apply, a Lanham Act plaintiff "does not have to negate every conceivable intervening factor which might have caused a decline in sales. Once plaintiff has made a prima facie showing of causation, defendant has the burden of proving, if it can, that plaintiff's losses were caused by something other than defendant's false advertising." 5 McCarthy on Trademarks and Unfair Competition § 27:41 (5th ed.). Related hereto, and contrary to any suggestion that Uretek must offer communications directly from YKK's customers to establish causation (YKK Mem. at 9-10), "no support [exists for any contention that a plaintiff is] required to prove this causal link with direct rather than circumstantial evidence."[11] *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 740 (8th Cir. 2000).

Here, Masayuki Sarumaru ("Sarumaru") of YKK admitted that YKK's false advertisements were used for the very purpose of providing them to customers in connection

---

[11] *See also* ECF No. 523-1 at 35 (Stipulated Jury Instruction No. 16B, "Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more"). "One of those conventional rules [of civil litigation] is that in any lawsuit, the plaintiff may prove his case by direct *or* circumstantial evidence. .... Juries are frequently (and correctly) instructed, as they were here, that [t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1184 (2d Cir. 1992) (emphasis in original, internal quotation marks and citations omitted). "Circumstantial evidence, it should be noted, if relied upon by the jury, is of no lesser probative value than direct evidence. It is the role of a jury to draw reasonable inferences or conclusions from facts which the jury determines the evidence establishes." *United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989) (internal citation omitted). "[C]ircumstantial evidence may be accorded equal weight with direct evidence, and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (internal citation omitted).

with sales of the subject water resistant zippers.[12]  *See* ECF No. 591 ¶¶ 813-816.  Emails sent by

Akinobu Shibata ("Shibata"), then of YKK (U.S.A.) Inc. ("YKK USA"), also confirm that *the*

*very false advertising still at issue* was drafted by YKK's United States-based legal department

and was circulated worldwide by Shibata for the very purpose of pressuring YKK's major

customers who were sensitive to patent-related issues to switch to YKK-laminated zippers from

infringing water resistant zippers sold by other manufacturers.

Specifically, documents entitled "Customer Notice" signed by Jack Sasaki, then of YKK

USA, were created shortly after the License Agreement was entered and read, in pertinent part:

> YKK is pleased to announce that we are now the <u>exclusive licensee</u> of the
> water repellant slide fastener technology embodied in U.S. Patent No. 6,105,214
> and its corresponding foreign patents.
>
> As I'm sure you are aware, *this means that YKK has the exclusive right to*
> *manufacture, use, sell, and import zippers incorporating this water repellant*
> *technology.  Using zippers that are not manufactured by YKK under authority of*
> *the exclusive license could lead to potential difficulties with regard to*
> *infringement.*

*See, e.g.,* PX-115 & PX-118 (emphasis added).

As stated by Shibata in his April 11, 2002 email to Sarumaru, with a subject line of

"Reconfirmation of water repellent [zipper] sales policy," this language was prepared by "[t]he

Legal Dept. at the USA company."  PX-115.  Shibata also stated that this letter would be sent to

"major customers [] who are using other companies' products," such as The North Face,

Ambercrombie & Fitch, Marmot, and Helly Hansen, accompanied by an explanation "directly by

sales personnel."  *Id.*  Shibata's aforesaid April 2002 email followed Shibata's earlier March 29,

---

[12] Consistent with YKK's approach to many issues, YKK does not affirmatively state to which customers YKK claims the offending statements were not circulated.  The only fact witness appearing anywhere on YKK's trial witness list disclosed to testify concerning the "marketing of water resistant zippers" is YKK's "May Call" witness Kenji Miyamoto, whose only identified position is with YKK Canada Inc.  ECF No. 492-3.

2002 email in which Shibata confirmed, "This is the letter I will send *to all over the world*."  PX-118 (emphasis added).

James Reed ("Reed") of YKK further admitted that YKK recognized that YKK's advertising was "sufficient" only if YKK sold its Excluded Market customers the Uretek-laminated zippers (ECF No. 591 ¶ 820); in other words, once YKK's Excluded Market customers had decided that they wanted to purchase a patented water resistant zipper, YKK had the ability to surreptitiously steer such customers away from the Uretek-laminated zippers because YKK's advertising never made clear that only Uretek-laminated zippers could be sold by YKK for its customers' use in the Excluded Markets.  In fact, prior to Uretek ever even threatening a false advertising claim, Reed himself acknowledged that YKK's failure to disclose such limitation on YKK's license rights "could be used to strengthen an argument that YKK Corp. misled customers into thinking buying YKK products would not infringe Uretek's patent" (*id.* ¶ 844).  Successful implementation of YKK's false advertising marketing strategy is evidenced by the increase in unlicensed YKK-laminated zipper sales and the corresponding decrease in Excluded Market sales of Uretek-laminated zippers.  *See, e.g.,* ECF Nos. 590-130, 590-131 & 590-137 (example customer sales).

Because YKK has not complied with the rules governing motions for summary judgment, Uretek identifies the foregoing as a non-exhaustive description of the available direct and circumstantial evidence from which the jury permissibly could conclude that Uretek is entitled to its claimed Lanham Act lost profits.  In addition to whatever additional fact discovery will be forthcoming from the fact deposition of Mr. Blunt (among others), Uretek notes the direct and circumstantial evidence previously identified (ECF No. 589 at 19-21) which would permit the jury to conclude that, if YKK truthfully had informed these customers that YKK could not

legally sell YKK-laminated zippers for Excluded Market uses (including without exposing those customers to intentional patent infringement claims in the United States and abroad), the customers would have purchased Uretek-laminated zippers (the only other acceptable non-infringing, reverse coil water resistant zippers available on the market).

Overall, Uretek's evidence of a causal link between YKK's false advertising and the Excluded Market sales is sufficient to proceed to a jury trial on the issue. As noted above, the United States Supreme Court itself has held (1) that a plaintiff can establish injury where "there is likely to be something very close to a 1:1 relationship" between the choice of the effected customer and the plaintiff's lost sales and (2) that "[w]here the injury alleged is so integral an aspect of the violation alleged, there can be no question that proximate cause is satisfied." *Lexmark Int'l, Inc.*, 572 U.S. at 139 (internal quotation marks omitted). Numerous other cases across the country have found analogous evidentiary records sufficient to establish causation.

In *PPX Enters., Inc., supra,* the Second Circuit found the jury's verdict supported simply by the facts of "the egregious nature of [defendant's] actions," the false advertising and the successful sales of the subject product. *PPX Enters., Inc.,* 818 F.2d at 272-273. And in *Church & Dwight Co., Inc., supra,* the Southern District of New York found sufficient that the defendant "clearly knew that consumers would [be confused, and] Plaintiffs' market share decreased, while Defendant's share increased." *Church & Dwight Co., Inc.,* 2018 WL 4253181, at *14-*15 (accepting as reasonable the assumption, for calculating the plaintiff's lost profits, that all sales by the defendant were attributable to the false advertising).

Similarly, in *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013), the Southern District of New York found that causation had been "adequately demonstrated" in light of the defendant's business strategy, the fact that the parties were

16

competitors and the timing of the decrease in the plaintiff's sales. *Id.* at 428-29. Further, that court accepted a lost profits calculation based upon all of the defendant's sales despite recognizing that some sales might have been diverted by the entrance into the market of another competitor if defendant's sales had not occurred. *Id.* at 429-30. In doing so, the court correctly reasoned (1) that the plaintiff "based its assessment of lost profits on actual sales *made by [the defendant]*, and not those *lost by [the plaintiff]* and (2) the "close nexus" between the defendant's sales and the plaintiff's losses, as well as the admonition that any doubts concerning the amount of damages must be resolved against the infringer, suggested that the defendant's sales were an appropriate estimate for the plaintiff's actual damages. *Id.* (emphasis in original)*; cf.* 5 McCarthy on Trademarks and Unfair Competition § 30:79 (5th ed.) ("One possible measure of a trademark owner's lost profits is to multiply the trademark owner's profit margin times the number of infringing items sold by a competitive infringer"); 9/8/2020 Tr. at 43:18-22 (this Court, in precluding any evidence, testimony or argument regarding Uretek's failure to pursue third-party infringers, noting that "[t]he damages at issue here are those related to YKK sales of the allegedly infringing zippers, not the potential sales of third-party infringers").

The First Circuit in *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002), found causation to have been proven when the defendant's ability to sell the offending products derived from the false advertising. *Id.* at 318-319. There, the defendant garment manufacturer was able to sell garments at a lower cost (1) because it falsely advertised to customers that the garments were made of better materials than the garments actually were and (2) because the defendant's costs were lower due to its use of the inferior materials. *Id.* Here, YKK was able to maintain a higher profit margin by selling the YKK-laminated zippers at a lower sales price (1) because YKK falsely advertised an unrestricted exclusive right to sell the

subject zippers laminated, for example, by YKK in Japan and (2) because YKK's costs were lower due to YKK not contracting with Uretek to laminate the zippers sold in the Excluded Markets.[13]  In both circumstances, the defendants sold products that were "represented as something more valuable" (in one case the quality of the materials used, in the other the legality of the sale itself), conduct which "would generally create a substantial competitive advantage by undercutting competitors who correctly represent their products."  *Id.*

Finally, but without limitation, the Eighth Circuit in *EFCO Corp., supra,* found causation adequately established as follows:

> Through [its damages expert], EFCO presented evidence of an erosion of its revenues during the period of misconduct.  During this same period, Symons' revenues increased at a nearly identical rate.  Further, EFCO produced evidence that its sales force was losing clients to Symons.  Taken together, this evidence supports an inference that the shift in the companies' market shares was due to Symons' misconduct, and the jury did not err in so finding.

*EFCO Corp.,* 219 F.3d at 740 (internal footnote omitted).  The Eighth Circuit further noted that the defendant's criticism of the plaintiff's alleged failure to account for all possible market forces more appropriately related to the amount of damages suffered "rather than whether Symons' caused the loss in the first instance."  *Id.* n. 5.

Accordingly, regardless of whether the above-described presumption is found to apply to Uretek's lost profits claim in the event the jury determines that YKK engaged in deliberately false advertising, sufficient evidence exists to support a jury finding that YKK's false advertising caused Uretek to suffer the lost profits claimed.

---

[13] As opined by Donohue, YKK could have maintained the same selling price even were the subject zippers laminated by Uretek, with YKK just realizing a lower profit margin.  *See* ECF No. 419 at 47-48 (Judge Netburn denying YKK's *Daubert* motion and finding this theory "not unreasonable").

**IV.**    **Conclusion.**

For the foregoing reasons, YKK's untimely summary judgment and/or *Daubert* motion must be denied in its entirety.


PLAINTIFFS AU NEW HAVEN, LLC, and
TRELLEBORG COATED SYSTEMS US, INC.

By:    *s/ Brian P. Daniels*
    Brian P. Daniels (pro hac vice)
    Sean M. Fisher (SF0251)
    David R. Schaefer (pro hac vice)
    Michael T. Cretella (pro hac vice)
    BRENNER, SALTZMAN & WALLMAN LLP
    271 Whitney Avenue
    New Haven, CT 06511
    Tel.: (203) 772-2600
    Fax: (203) 562-2098
    Email: bpdaniels@bswlaw.com
    Email: dschaefer@bswlaw.com
    Email: sfisher@bswlaw.com
    Email: mcretella@bswlaw.com

    Norman H. Zivin (NZ6053)
    Tonia A. Sayour (TS7208)
    WOLF, GREENFIELD & SACKS, P.C.
    605 Third Avenue
    New York, New York 10158
    Tel.: (212) 697-7890
    Fax: (617) 646-8646
    Email: norman.zivin@wolfgreenfield.com
    Email: tonia.sayour@wolfgreenfield.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2020 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.


_____*s/ Brian P. Daniels*_____
Brian P. Daniels (pro hac vice)


10S3859.doc