UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/2/2023
```

-------------------------------------------------------------------- X
                   :

AU NEW HAVEN, LLC, *et al.*,          :
                   :

               Plaintiffs,    :          1:15-cv-3411-GHW
                   :

           -against-           :      MEMORANDUM OPINION &
                   :                ORDER
YKK CORPORATION, *et al.*,        :
             Defendants.    :
                   :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      The latest chapter in this long-running case involves a pretrial dispute about the use of witnesses. Specifically, after Plaintiffs Au New Haven, LLC and Trelleborg Coated Systems US, Inc. served subpoenas on two of Defendants' prospective witnesses for this case's upcoming trial, Defendants—YKK Corporation and many of its subsidiaries—moved to quash those subpoenas. Plaintiffs conceded that the subpoenas were invalid, but pivoted via a cross-motion to a new argument: that this Court should exercise its power under the Federal Rules of Evidence to preclude Defendants from introducing the live testimony of witnesses that Defendants will not make available for Plaintiffs' case-in-chief. Because granting Plaintiffs' request could create a moral hazard issue and lead to trial inefficiencies, and because the Court has better tools available to ensure that the jury hears probative evidence at trial, Plaintiffs' cross-motion is DENIED.

## I.     BACKGROUND

      The Court refers the reader to the Court's previous opinions for a complete recitation of the facts. *See* Dkt. No. 171, Dkt. No. 611, Dkt. No. 794, Dkt. No. 831, Dkt. No. 918, Dkt. No. 952. The facts in this order are only those particularly pertinent to the parties' current dispute.

      Trial in this case was bifurcated. *See* Dkt. No. 831. At the first trial, which occurred in January 2023, the jury was tasked with interpreting an ambiguous phrase in a licensing agreement

between the parties. *See* Dkt. No. 918 (jury verdict form from first trial). The second trial, to determine liability and damages in the case, is set to begin on July 31, 2023. *See* Dkt. No. 952.

Leading up to the first trial, during multiple conferences and hearings, the parties argued at length about whether the Court could compel the testimony and attendance of Defendants' prospective witnesses. For example, during a May 28, 2020 hearing on the parties' motions *in limine*, Plaintiffs attempted to convince Defendants to make witnesses on Defendants' "will-call" list, but outside of the Court's subpoena power, available for Plaintiffs' case-in-chief. Dkt. No. 609 at 15:10–16:6. Defendants refused to do so and reasoned that while the witnesses were on their will-call list, Defendants were "not obligated to call anybody in [their] case until [they] see [Plaintiffs'] case and what [they] need to rebut." *Id.* at 16:21–22. The Court agreed and stated that "[this Court] won't compel [D]efendants to call [their witnesses] if [Defendants] don't wish to do so on their own initiative." *Id.* at 17:24–18:1.

At the final pretrial conference on December 15, 2022, the parties took up the same issue. In discussing their application to sequester fact witnesses, Plaintiffs complained about Defendants' elusiveness around which witnesses they would call and requested that Defendants make their witnesses available for Plaintiffs' case-in-chief. Dec. 15, 2022 Hr'g Tr. at 51:21–52:2. Defendants insisted that "[a]s to who will be here, who we're going to call, we don't know at this point . . . because a lot depends on the case [Plaintiffs] put in." *Id.* at 54:11–14. The Court commented that Defendants "have full latitude to assess the case in chief that's been presented by their adversary and then to determine what the nature of the evidence that they wish to present will be." *Id.* at 59:5–8. Thus, the Court would not "direct[ ] [D]efendants to do anything in particular." *Id.* at 59:21-22. At the first trial, and after witnessing Plaintiffs' case-in-chief, Defendants ultimately decided to call only YKK Corporation Chairman Masayuki Sarumaru—and not any other may-call or will-call witnesses—to the stand. *See* Dkt. No. 949 ("Defs' Opp.") at 8.

The procedural history of this motion originated with Plaintiffs' attempt on January 25, 2023—during the first trial—to serve trial subpoenas on Mr. Sarumaru and Terrence McCullough, a Sales Engineering Manager at YKK (USA) Inc. and YKK's corporate representative at trial. *See* Dkt. No. 944 ¶ 3. After the first trial concluded, Defendants moved to quash the subpoenas, arguing that Messrs. Sarumaru and McCullough were outside of the Court's subpoena power under Federal Rule of Civil Procedure 45(c). Dkt. No. 920; *see* Dkt. No. 921 (memorandum in support). Plaintiffs admitted that they could not support the validity of the subpoenas and withdrew them. Dkt. No. 943 ("Cross-Motion") at 1. But they also cross-moved, under Federal Rule of Evidence 611(a), to "preclude [Defendants] from introducing live testimony of any witnesses that [Defendants] refuse[ ] to produce to testify live as part of [Plaintiffs'] case-in-chief." *Id.* at 1, 4. Defendants opposed the cross-motion, arguing that it should be denied as an "untimely motion for reconsideration" under Local Rule 6.3 and as an attempt to circumvent Rule 45(c). Defs' Opp. at 2. Plaintiffs replied to Defendants' opposition. Dkt. No. 953 ("Reply").

## II.   DISCUSSION

Because Plaintiffs' argument about Defendants' witnesses is distinct from those previously presented to or examined by the Court, Plaintiffs' cross-motion does not represent a motion for reconsideration. But because granting Plaintiffs' cross-motion could undermine the discovery process and lead to trial inefficiencies, and because the Court can otherwise ensure that probative evidence is presented to the jury, Plaintiffs' cross-motion will be denied.

### A.   Motion for Reconsideration

Plaintiffs' cross-motion is not a motion for reconsideration because it raises a distinct issue that the Court has not examined in previous proceedings. Only issues previously litigated and decided are subject to motions for reconsideration. *See Pilkington N.A., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 501 (S.D.N.Y. 2020) (refusing to treat a party's motion as a motion for

reconsideration under Rule 59 because the court had not previously examined the issue raised). Defendants argue that Plaintiffs' motion to preclude testimony under Federal Rule of Evidence 611(a) is a motion for reconsideration of the Court's prior orders declining, under Federal Rule of Civil Procedure 45(c), to compel the attendance or participation at trial of some of Defendants' witnesses. *See* Defs' Opp. at 6–8; *see also, e.g.*, Dkt. No. 609 at 17:24–18:1 (this Court stating that it would not compel Defendants to call any particular witnesses).

But the Court's power to compel witness attendance under Rule 45(c) presents a distinct issue from its power to control the presentation of evidence and witnesses under Rule 611(a)—and, specifically, from its power to preclude Defendants from calling certain witnesses if they decline to make them available to Plaintiffs. *See Buchwald v. Renco Grp., Inc.*, No. 13-cv-7948, 2014 WL 4207113, at *2 (S.D.N.Y. Aug. 25, 2014) (Nathan, J.) (recognizing the court's power to compel witness testimony at trial presents a "very different issue" from "a court's authority to control the testimony of witnesses who will already be at trial"); *Iorio v. Allianz Life Ins. Co.*, No. 05-cv-633, 2009 WL 3415689, at *2–6 (S.D. Cal. Oct. 21, 2009) (quashing, under Rule 45(c), plaintiffs' subpoenas to compel attendance of certain of defendants' witnesses, but nonetheless granting plaintiffs' request to preclude defendants' from using live testimony of those witnesses if defendants refuse to produce them for plaintiffs' case-in-chief); *see also* Reply at 1 (Plaintiffs here are "not seeking to *compel* the testimony of any YKK-affiliated witnesses, but rather to *preclude* YKK from presenting live any witness it will not make available for [Plaintiffs'] case-in-chief"). While the Court addressed its limited power to compel witness attendance under Rule 45(c) during the May 2020 Hearing and December 2022 Conference, the Court has not considered the Court's authority under Rule 611(a).

*See* Dkt. No. 609 at 17:24–18:1; Dec. 15, 2022 Hr'g Tr. at 59:1–22.[1]  As a result, Plaintiffs' cross-motion is not a motion for reconsideration, and the Court will consider it *de novo*.[2]

## B.    Preclusion of Witnesses' Live Testimony

Though Plaintiffs' cross-motion is not a motion for reconsideration, the Court nonetheless declines to grant it.  Plaintiffs ask the Court to preclude Defendants from presenting live testimony of any witness that Defendants will not make available to Plaintiffs for direct examination during Plaintiffs' case.  *See* Cross-Motion at 4.  To be sure, this Court—as other courts both in this Circuit and elsewhere have recognized—has the authority to grant that request.  *See Buchwald*, 2014 WL 4207113, at *1 (collecting cases).  That authority stems from Federal Rule of Evidence 611(a), which grants trial judges power over "the mode and order of interrogating witnesses and presenting evidence so as to:  (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a).  Courts have exercised their discretion under this rule to "preclude parties who refuse to honor a reasonable request for production of a key witness subject to their control, and thereby force an opponent to use a deposition, from calling the witness to testify personally during their presentation of evidence."  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991) (citing 1 Moore's Federal Practice, *Manual for Complex Litigation* 2d § 22.23 at 127 (1986 ed.)).

But that the Court has the power to grant Plaintiffs' request does not mean that the Court ought to exercise that power.  And the Court concludes that granting Plaintiffs' cross-motion in this case would be unwise.  As an initial matter, routinely granting requests like Plaintiffs' here could

[1] Nor does the Court's ruling on an adverse witness instruction, *see* Defs' Opp. at 4, represent a ruling on the issue presented here.

[2] The Court also questions whether its comments at the May 2020 Hearing or December 2022 Conference could properly be considered "a court order determining a motion" or an "order resulting in a judgment" subject to the local rule on reconsideration, or an entered "judgment" subject to the analogous federal rule.  *See* Southern District of New York Local Rule 6.3; Fed. R. Civ. P. 59(e).  In any event, because Plaintiffs' motion presents a distinct issue from what was considered at the May 2020 Hearing and December 2022 conferences, it is not properly viewed as a motion for reconsideration.

create a moral hazard concerning the discovery and deposition process. "Modern discovery rules are meant to facilitate 'fair and expeditious preparation of cases.'" *Schiller v. City of New York*, Nos. 04-cv-7921, 04-cv-7922, 2008 WL 4525341, at *5 (S.D.N.Y. Oct. 9, 2008) (quoting *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970)); *see also Hickman v. Taylor*, 329 U.S. 495, 500 (1947) (noting that depositions and other related discovery rules serve "(1) as [] device[s] . . . to narrow and clarify the basic issues between the parties, and (2) as [] device[s] for ascertaining the facts . . . relative to those issues"). And parties know, specifically, that they are subject to Federal Rule of Civil Procedure 45(c)'s limitations such that a court can compel only the attendance of those witnesses who live, reside, or regularly transact business within 100 miles of the courthouse (or, in limited circumstances, those who live, reside, or regularly transact business in the same state as the courthouse). Fed. R. Civ. P. 45(c)(1). As a result, a party bearing the burden of proof at trial—like Plaintiffs here—must normally be prepared to meet its burden with a combination of (a) the information it has gathered during discovery, (b) witness testimony it can expect to use consistent with Rule 45(c), and (c) any stipulated facts.

If courts were to routinely approve requests like Plaintiffs' here, by contrast, parties would be incentivized to either not take depositions or not take them seriously; they could instead rely on Rule 611(a) to get access to the in-person testimony of witnesses they know their adversary is likely or certain to call at trial. In that way, parties could functionally evade the geographic limits of Rule 45—which is what provoked Plaintiffs' pivot here. It would excuse the party's failure to secure testimony, through depositions, of witnesses who live far from the courthouse. In some cases, the effect could be significant, particularly if in the absence of the testimony a party could not meet its burden of proof and would lose a Rule 50 motion at the close of its case-in-chief. In short, if a party could rely on Rule 611(a) to guarantee access to its adversary's witnesses at trial as a matter of

course, the limitations of Rule 45 and the discovery process central to modern litigation could be significantly undermined.

This case is an exemplar. Discovery here was extraordinarily lengthy. *See, e.g.*, Dkt. No. 30 (initial case management plan, setting a deadline of July 1, 2016 for the close of fact discovery and August 15, 2016 for the close of expert discovery); Dkt. No. 218 (after several extensions, further extending some fact discovery to July 31, 2017—over a year after the initial deadline—and extending expert discovery to September 15, 2017 (a deadline that would be extended once more to late September 2017)). It was also reopened to allow Plaintiffs to conduct further depositions after Defendants improperly withheld certain documents. Despite this ample period to conduct depositions or otherwise generate admissible evidence, it has been apparent for some time that Plaintiffs may not have properly laid the foundation for all of the documents they now seek to introduce at trial. *See, e.g.*, Dkt. No. 632 (denying Plaintiffs' request to reopen discovery for the purpose of conducting depositions to establish the foundation of certain documents); Dkt. No. 630 at 3–4 (showing that, during depositions, Plaintiffs were on notice that there may be foundation issues with their evidence). Granting Plaintiffs' motion now would put Defendants to the choice of (a) either not calling key witnesses or (b) knowing that any called witness could be used by Plaintiffs in their case-in-chief to fill gaps in Plaintiffs' development of admissible evidence during discovery. The use of the Court's authority under Rule 611(a) in this way would not be fair, as Plaintiffs' argue; it would unfairly provide one party the opportunity to cure deficiencies in the development of case for trial. The Court would essentially be covering for Plaintiffs' tactical errors during the discovery period—which is not the Court's proper role.

And there are other case-specific reasons why the Court is disinclined to grant Plaintiffs' request. First, the breadth of Plaintiffs' request differs from cases where courts have granted similar motions under Rule 611(a). In those cases—unlike here—a party was requesting a court to either

7

preclude the testimony of or make available a specified set of identified witnesses. The core disputed issues made it easy for the court and parties to deduce which witnesses would have to be called by each side. *See, e.g., In re Gulf Oil/Cities*, 776 F. Supp. at 839 (interpreting Rule 611(a) as potentially applying to "parties who refuse to honor a reasonable request for production of *a key witness subject to their control*" (emphasis added)); *Buchwald*, 2014 WL 4207113, at *1 (requiring defendants to either "permit its opponent to directly examine" "five [identified] witnesses" that defendants "indicate[d] that they 'presently intend[ed]' to call" and who were "already be bearing the burden and expense of traveling to New York for trial," or otherwise to "rely [themselves] on the witness[es] deposition testimony"); *Maran Coal Corp. v. Societe General De Surveillance S.A.*, No. 92-cv-8728, 1996 WL 11230, at *1 (S.D.N.Y. Jan. 10, 1996) (precluding one party from introducing the live testimony of two identified witnesses if they were not produced to testify live for the other party); *Iorio*, 2009 WL 3415689, at *6 (doing the same with respect to eight identified witnesses). In those cases, because there were certain identified witnesses whom could be either precluded from testifying or produced to the other party, the courts granting the requests knew, at least roughly, the magnitude of the impact that their orders would have on the parties and the trial. Here, by contrast, Plaintiffs' have asked the Court to "preclude [Defendants] from presenting *any* live witness it withholds from [Plaintiffs] for its case-in-chief." Cross-Motion at 4 (emphasis added). As a result, with neither party having committed to call (or not call) any specific witnesses, it is difficult to assess the impact that granting Plaintiffs' cross-motion would have at trial—which makes the Court reluctant to grant Plaintiffs' request.

Second, granting Plaintiffs' cross-motion would likely lead to practical inefficiencies at trial. This trial, as the parties are aware, implicates multiple topics, and certain witnesses may have knowledge of more than one of them. As a result, the Court does not believe that it could structure trial efficiently consistent with Plaintiffs' request. For instance, suppose a certain witness has

8

knowledge of "Topic A" and "Topic B."  Suppose further that, during their case-in-chief, Plaintiffs choose only to question that witness about Topic A.  And finally, suppose that Defendants wish to elicit testimony from this witness about Topic B.  The Court would be left with two options, neither of which would be efficient.  The Court could limit Defendants' cross-examination of the witness during Plaintiffs' case-in-chief to Topic A and have Defendants' re-call the witness during their case-in-chief to discuss Topic B.  But that scenario would require calling a witness twice, which—given that a lengthy trial is already likely—the Court wishes to avoid.  As an alternative, the Court could permit Defendants, during Plaintiffs' case-in-chief, to not only cross-examine the witness about Topic A, but also to conduct direct examination about Topic B.  *Cf. Buchwald*, 2014 WL 4207113, at *2 (adopting this approach in what appears to have been a less complex case by having "each witness" "take the stand only once," and allowing plaintiff and defendants to "elicit testimony for their cases in chief").  But while that structure would avoid having to call the witness twice, it would have the effect of moving much of Defendants' affirmative case into Plaintiffs' case-in-chief, which could be both unfair to Plaintiffs and confusing to the jury.

This concern is far from hypothetical.  Mr. Sarumaru, for instance, is a witness whom the Court expects has knowledge on multiple topics relevant to the trial.  So structuring his testimony—if the Court granted Plaintiffs' motion and Defendants chose to put him on the stand—would lead to the inefficiencies just described.  Moreover, the Court expects that Plaintiffs would use any opportunity to question witnesses during their case-in-chief that arose from this order as a *supplement to*, rather than a *replacement for*, the deposition testimony that they have already obtained.  That reality signals another potential inefficiency that could result from granting Plaintiffs' motion, and further counsels against doing so.

Third and finally, this response to Plaintiffs' motion does not undermine the truth-finding function of the trial.  Plaintiffs will be able to cross-examine any witnesses called by Defendants.

They will have to opportunity to examine them with respect to their direct testimony. And under Federal Rule of Evidence 611(b), while "[c]ross-examination should not go beyond the matters of direct examination and matters affecting the witness's credibility," "[t]he court may allow"—in its discretion—"inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b); *see also* Reply at 6 n.3 (noting the Court's ability to permit cross-examination beyond the scope of direct examination). The Court recognizes the possibility that Defendants may choose, in their case-in-chief, not to elicit information from their witnesses that is crucial to the jury's evaluation of the issues presented. To the extent that this happens, it could justify the Court permitting Plaintiffs, in examining Defendants' witnesses during Defendants' case-in-chief, to engage in inquiry into those crucial matters beyond the scope of Defendants' direct examination. *See Maran*, 1996 WL 11230 at *2 (noting the importance of hearing "the testimony of [certain] witnesses" that was "critical to the jury's understanding of the issues"). Allowing Plaintiffs to elicit key testimony this way—rather than by potentially having access to Defendants' witnesses during their own case-in-chief to bolster their claims before Rule 50 motion practice at the close of their case-in-chief—is both more efficient than the alternative and eliminates the moral hazard identified by the Court above.

## III.    CONCLUSION

For the reasons explained above, Plaintiffs' cross-motion is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 920.

SO ORDERED.

Dated: May 2, 2023
New York, New York

GREGORY H. WOODS
United States District Judge